OGONNA M. ATAMOH, ESQ.
Nevada Bar No. 7589
E-mail: oatamoh@nevadafirm.com
F. THOMAS EDWARDS, ESQ.
Nevada Bar No. 9549
E-mail: tedwards@nevadafirm.com
NATHAN R. HENDERSON, ESQ.
Nevada Bar No. 13145
E-mail: nhenderson@nevadafirm.com
HOLLEY, DRIGGS, WALCH,
PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MAX RUHLMAN and ERIC SAMBOLD,<br><br>        Plaintiffs,<br><br>    v.<br><br>GLENN RUDOLFSKY, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII; KIM D. RUDOLFSKY, AKA KIM DAPOLITO, individually; and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII,<br><br>        Defendants. | CASE NO.:    2:14-cv-00879-RFB-NJK<br><br>**MOTION TO STAY CASE** |

Defendants, Glenn Rudolfsky ("Mr. Rudolfsky") and Kim Rudolfsky ("Mrs. Rudolfsky") (collectively "Defendants"), by and through their undersigned counsel, hereby move this Court to stay this case pursuant to Fed. R. Civ. P. 26(c)(1).  Currently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and *Forum Non Conveniens* (Doc. 14).  This Motion is made and based upon the papers and pleadings on file herein, the following points and authorities and any oral argument on this matter.

///

///

10304-01/1386353.doc

**POINTS AND AUTHORITIES**

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 6, 2014, Max Ruhlman and Eric Sambold (collectively "Plaintiffs") filed the present action, alleging various torts and breaches by Defendants (Doc. 1) (the "Complaint"). On August 1, 2014, Defendants filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction and *Forum Non Conveniens* (Doc. 14) (the "MTD"). Plaintiffs filed an Opposition to Defendants' Motion on August 29, 2014 (Doc. 21) and Defendants filed a Reply in Support of Defendants' Motion on September 8, 2014 (Doc. 23).

The allegations of the Complaint revolve around the purchase of a property located in Hawaii on the island of Kauai (the "Property"). See, Complaint ¶ 7. In order to facilitate the purchase of the Property, a mortgage (the "Mortgage") and note (the "Note") (collectively the "Loan Documents") were prepared in Princeville, Hawaii with Defendants and Plaintiff Eric Sambold ("Sambold") as parties thereto. See, Declaration of Glenn Rudolfsky attached to the MTD as Exhibit "A" at ¶¶ 7-9; Declaration of Kim Rudolfsky attached to the MTD as Exhibit "B" at ¶¶ 7-9. Sambold "is now, and at all times mentioned in this Complaint was domiciled in and a citizen of the State of California." Complaint ¶ 2. Defendants now and all times relevant to the complaint have principally resided in New York. See, MTD Ex. A at ¶ 5; the Motion Ex. B at ¶ 5. Mr. Rudolfsky is legally a resident of Hawaii and Mrs. Rudolfsky is legally a resident of New York. See, MTD Ex. A at ¶ 6; MTD Ex. B at ¶ 6.

The Loan Documents were signed by Sambold in the State of California and by Defendants in the State of New York. See, MTD Ex. A at ¶ 10; MTD Ex. B at ¶ 10. Paragraph 23 of the Mortgage states that the Mortgage shall be governed by the laws of the State of Hawaii. A true and correct copy of the Mortgage is attached to the MTD as Exhibit "C". Article XI of the Note also states that the Note shall be governed by the laws of the State of Hawaii. A true and correct copy of the Note is attached to the MTD as Exhibit "D". The Property was subsequently leased as a vacation property in Hawaii and managed from New York. See, MTD Ex. A at ¶ 11.

During negotiations preceding the purchase of the Property and the execution of the Loan Documents, Defendants and Plaintiffs expressed an interest in forming a Limited Liability Company ("LLC").  See, Id. at ¶ 12.  Plaintiffs took the position that an LLC should be filed in Nevada and Defendants insisted that any LLC agreement be written by their attorney in New York.  See, Id. at ¶ 13.  Since no terms or agreements were ever made or written, Defendants did not agree to file an LLC in any state.  See, Id.  Other issues regarding the organization of the LLC and how Defendants and Plaintiffs would move forward in their contemplated business remained in contention and an agreement was never reached on these issues.  See, Id. at ¶ 14.

On September 19, 2012, Plaintiffs unilaterally registered Ke Aloha LLC with the Secretary of State of Nevada, listing Mr. Rudolfsky as the sole managing member.  See, Articles of Organization of Ke Aloha LLC, attached to the MTD as Ex. "E"; MTD Ex. A at ¶ 15.  Neither of Defendants ever agreed to or signed any documents forming Ke Aloha LLC.  See, MTD Ex. A at ¶ 18; MTD Ex. B at ¶ 12.  On October 9, 2012, an Initial List of Managers or Managing Members (the "Initial List") was filed for Ke Aloha LLC listing Mr. Rudolfsky as the managing member.  See, Initial List of Managers or Managing Members attached to the MTD as Exhibit "F".  The Managing Member line of the Initial List was not signed by Mr. Rudolfsky, but rather by John H. Brebbia, an attorney who does not now, nor has ever, represented Mr. Rudolfsky.  See, Id.; MTD Ex. A at ¶ 19.  The Defendants only learned of Ke Aloha LLC when the Nevada Secretary of State sent a bill to Mr. Rudolfsky in October of 2013.  See, MTD Ex. A at ¶ 20; MTD Ex. B at ¶ 13.  Mr. Rudolfsky then filed papers to dissolve Ke Aloha LLC so as to avoid the liability that might accompany the existence and operation of an LLC with which Mr. Rudolfsky has no connection.  See, MTD Ex. A at ¶ 21.

On January 6, 2012, Defendants had dinner with Plaintiffs in Las Vegas, Nevada.  See, Id. at ¶ 22; MTD Ex. B at ¶ 14.  Nothing relative to this litigation was discussed at that dinner.  See, MTD. Ex. A at ¶ 23; MTD Ex. B at ¶15.  On the following day, January 7, 2012, Mr. Rudolfsky and Plaintiffs met for lunch and discussed some matters relevant to this dispute, though no terms were agreed to or contracts made at that meeting.  See, MTD Ex. A at ¶ 24.  Mrs. Rudolfsky was not present for that lunch and never participated in any discussions with

1   Plaintiffs relevant to this dispute in Nevada.  See, MTD Ex. A at ¶ 25; MTD Ex. B at ¶ 16.

2          Mr. Sambold expressly stated that no agreements or promises were made in Las Vegas.

3   Specifically, Mr. Sambold stated in an email:

4          Keep in mind that in Vegas we were discussing things as adults do from time to
           time without making promises but simply with the intent of discussing options
5          and ideas to see if we could come up with mutually beneficial ideas.  This process
           can be discribed [*sic*] as "Spitballing" or "Brainstorming". . . **We certainly never**
6          **agreed on any terms and conditions nor made any promises.**

7   See Email from Sambold to G. Rudolfsky dated March 19, 2013, attached to the MTD as Exhibit

8   "G" (emphasis added).  Extensive negotiations were later conducted in person in the State of

9   Hawaii and by email and phone with the Defendants and Plaintiffs in different locations.  See,

10  MTD Ex. A at ¶ 26.  Defendants never again set foot in Nevada for any of these additional

11  negotiations.  See, Id. at ¶ 27.

12                                            **II.**

13              **THIS CASE SHOULD BE STAYED UNTIL THE**
          **DETERMINATION OF DEFENDANTS' MOTION TO DISMISS**

14          A.  The Standard for a Stay of Discovery

15          "When evaluating a motion to stay discovery while a dispositive motion is pending, the

16  court initially considers the goal of Federal Rule of Civil Procedure 1.  The guiding premise of

17  the Rules is that the Rules 'should be construed and administered to secure the just, speedy, and

18  inexpensive determination of every action.'"  Rosenstein v. Clark County Sch. Dist., 2:13-cv-

19  1443, 2014 U.S. Dist. LEXIS 85019, *6 (D. Nev. June 23, 2014) (quoting Fed. R. Civ. P. 1).

20  "Discovery is expensive.  The Supreme Court has long mandated that trial courts should resolve

21  civil matters fairly but without undue cost."  Id. (citing Brown Shoe Co. v. United States, 370

22  U.S. 294, 306, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962)).  "This directive is echoed by Rule 26,

23  which instructs the court to balance the expense of discovery against its likely benefit.  See Fed.

24  R. Civ. P. 26(b)(2)(C)(iii)."  Id.

25          "Consistent with the Supreme Court's mandate that trial courts should balance fairness

26  and cost, the Rules do not provide for automatic or blanket stays of discovery when a potentially

27  dispositive motion is pending."  Id.  Federal Rule of Civil Procedure 26(c)(1) states, "[t]he court

28

10304-01/1386353.doc

may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "This rule authorizes the court to stay discovery." Rosenstein, 2014 U.S. Dist. LEXIS 85019, *7.

Whether to grant a stay is within the discretion of the court. Munoz-Santana v. U.S. I.N.S., 742 F.2d 561, 562 (9th Cir. 1984). "Generally, imposing a stay of discovery pending a motion to dismiss is permissible if there are no factual issues raised by the motion to dismiss, discovery is not required to address the issues raised by the motion to dismiss, and the court is 'convinced' that the plaintiff is unable to state a claim for relief." Rosenstein, 2014 U.S. Dist. LEXIS 85019, *7 (citing Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir. 1984)). "Typical situations in which staying discovery pending a ruling on a dispositive motion are appropriate would be where the dispositive motion raises issues of jurisdiction, venue, or immunity." Id. (citing TradeBay, LLC v. Ebay, Inc., 278 F.R.D. 597, 600 (D. Nev. 2011)).

> Courts in the District of Nevada apply a two-part test when evaluating whether a discovery stay should be imposed. First, the pending motion must be potentially dispositive of the entire case or at least the issue on which discovery is sought. Second, the court must determine whether the pending motion to dismiss can be decided without additional discovery. When applying this test, the court must take a 'preliminary peek' at the merits of the pending dispositive motion to assess whether a stay is warranted. The purpose of the 'preliminary peek' is not to prejudge the outcome of the motion to dismiss. Rather, the court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1.

Rosenstein, 2014 U.S. Dist. LEXIS 85019, *7 (internal citation omitted); see also, Kabo Tools Co. v. Porauto Indus. Co., Ltd., 2:12-cv-01859-LDG-NJK, 2013 U.S. Dist. LEXIS 156928, *4 (D. Nev. Oct. 31, 2013).

B. A Stay of Discovery is Appropriate

Motions to dismiss based upon jurisdiction, such as the MTD, necessarily have the potential to be dispositive of the entire case. As such, the U.S. District Court, District of Nevada, has routinely found that a stay of discovery is appropriate when such a motion is brought. See, e.g., Best Odds Corp. v. iBus Media Ltd., 2:13-cv-2008, 2014 U.S. Dist. LEXIS 66927, *24 (D. Nev. May 9, 2014); Grand Canyon Skywalk Dev. LLC v. Steele, 2:13-cv-00596, 2014 U.S. Dist. LEXIS 1550, *14 (D. Nev. Jan. 6, 2014); Money v. Health, 3:11-cv-00800, 2012 U.S. Dist.

LEXIS 49922, *36 (D. Nev. Apr. 9, 2012) (regarding subject matter jurisdiction); Lo v. Golden Gaming, 2:12-cv-01885, 2014 U.S. Dist. LEXIS 24265, *7 (D. Nev. Feb. 26, 2014); Solida v. United States Dep't of Fish & Wildlife, 288 F.R.D. 500, 506-507 (D. Nev. 2013).  This Court has noted that "courts are more inclined to stay discovery pending resolution of a motion to dismiss challenging personal jurisdiction because it presents a 'critical preliminary question.' **The filing of a Rule 12(b)(2) motion to dismiss strongly favors a stay**, or at a minimum, limitations on discovery until the question of jurisdiction is resolved." Kabo Tool Co. v. Porauto Indus. Co., 2013 U.S. Dist. LEXIS 53570 (D. Nev. Apr. 15, 2013) (citations omitted) (emphasis added).  The District of Nevada has recognized the value of stays in the face of a challenge to litigation in light of "the importance of resolving jurisdiction at the earliest possible stage in litigation." Lo, 2014 U.S. Dist. LEXIS 24265, *7.  "The burden of proving jurisdiction rests on the party asserting jurisdiction, and, if a doubt exists, courts are to presume that they lack jurisdiction." Best Odds Corp., 2014 U.S. Dist. LEXIS 66927 at *24 (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936); Turner v. President, Directors, & Co. of Bank of North America, 4 U.S. 8, 11 (U.S. 1799)) (granting a stay on the basis of that presumption).

This motion can be determined without additional discovery.  See, Kabo Tools Co., 2013 U.S. Dist. LEXIS 156928 at *4.  In their Opposition to the MTD, Plaintiffs chose not to argue that any further discovery was necessary to determine jurisdiction.  Plaintiffs have effectively conceded that jurisdiction in this case can be determined based on the pleadings.  The District of Nevada has previously noted that the failure to allege that further discovery is needed "weighs in favor of staying discovery." Solida, 288 F.R.D. at 506.

Discovery in this case would not only be unnecessary, but would place an undue burden on Defendants.  Defendants are of limited financial means and will be unable to meet the burden of financing Nevada attorneys to conduct discovery in Hawaii or to hire additional Hawaiian counsel for the purpose of discovery.  In fact, Plaintiffs have confirmed in an email that they strategically filed the lawsuit in Nevada with fees and costs as the motivating factor.  Plaintiff Sambold stated; "Now that he has a lawyer can we . . . file a lawsuit so he doesn't do it first in

10304-01/1386353.doc

NY.  The way I see it if he files in NY we lose.  Even if we win we lose after fees and travel."  See, May 6, 2014 Email attached hereto as Exhibit "A".  Defendants should not be forced to conduct expensive discovery in a case that will likely be dismissed.

    C.  A Preliminary Peak at the Pleadings

       1.  The Court Lacks Jurisdiction Over Mrs. Rudolfsky, Who is an Essential Party to the Case

To dismiss this action in whole, the Court would only have to find that it lacked personal jurisdiction over Mrs. Rudolfsky.  As the Property to which Plaintiffs claim an interest is owned jointly by Mr. and Mrs. Rudolfsky, Mrs. Rudolfsky is a necessary and indispensable party.  Specifically, Plaintiffs' prayer for relief requests "an Order decreeing that Defendants shall execute and deliver to Plaintiffs and the Ke Aloha, LLC, complete conveyance of the five acre Kauai estate."  See Complaint and Jury Demand, ¶ B [Dkt. No. 6].  If the Court does not have personal jurisdiction over Mrs. Rudolfsky, the Court would be required to dismiss the entire action pursuant to Fed. R. Civ. P. 19(b).

Plaintiffs' Opposition to Defendants' Motion to Dismiss (the "Opposition") makes the unsubstantiated allegation that "[b]oth Rudolfsky Defendants have transacted business in Nevada by meeting with the Plaintiffs in Las Vegas and successfully soliciting $550,000 from the Plaintiffs for their fifty percent interest in the Ke Aloha joint venture."  Opp'n at 6.  This allegation is in sharp contrast to the rest of the Opposition which attributes all business activities that took place in Nevada to Mr. Rudolfsky alone, including "the Tortious Acts in Nevada" which are attributed solely to Mr. Rudolfsky and the allegation that only Mr. Rudolfsky "shook hand (sic.) on the joint venture" in Nevada.  See Opp'n at 7, 2.  The affidavits of Mr. Rudolfsky and Mrs. Rudolfsky both explain that all business discussions took place at a lunch which was not attended by Mrs. Rudolfsky, the Plaintiffs have made no response to this fact either to deny it or to claim that Mrs. Rudolfsky participated in business discussions at another time.  See, MTD Ex. A at ¶¶ 22-25; MTD Ex. B at ¶¶ 14-16.  Without giving any detail of her alleged conduct in Nevada, Plaintiffs make unsubstantiated accusations for the sole purpose of establishing jurisdiction where it does not appropriately lie.  See, Holland Am. Line, Inc. v. Wartsila N. Am.,

1    Inc., 485 F.3d 450 (9th Cir. Wash. 2007) ("Such an unsubstantiated and vague statement does

2    not establish a prima facie case for jurisdiction.").

3    　　　　Plaintiffs' only other basis for alleging that Mrs. Rudolfsky has conducted business in

4    Nevada is the shareholder reports that Mrs. Rudolfsky emailed to Ruhlman which he allegedly

5    received in Nevada.  The Ninth Circuit has held that the "use of the mails, telephone or other

6    international communications simply do not qualify as purposeful activity invoking the benefits

7    and protection of the forum state."  Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985).

8    The Ninth Circuit later updated the holding of Peterson to include email.  Sarkis v. Lajca, 425

9    Fed. Appx. 557, 558-559 (9th Cir. 2011) ("While [defendant] contacted [plaintiff] in California

10   through phone and e-mail to negotiate his contract, the 'use of the mails, telephone or other

11   international communications simply do not qualify as purposeful activity invoking the benefits

12   and protection of the forum state.'").  If the receipt of shareholder reports by email was sufficient

13   to establish personal jurisdiction nearly every large company in the United States would be

14   subject to jurisdiction in every state and territory.  As emails cannot create personal jurisdiction

15   over Mrs. Rudolfsky, she is not subject to personal jurisdiction in Nevada and the entire case

16   must be dismissed.

17   　　　　　　2.　Mr. Rudolfsky's Business Activities in Nevada Are Insufficient to Establish

18   　　　　　　　　Jurisdiction

19   　　　　　a.　The January 7, 2012 Meeting

20   　　　　The January 7, 2012 meeting was one of several communications, which combined,

21   shaped the dealings between the Defendants and the Plaintiffs (collectively the "Parties").  See,

22   Opp'n at 2-4.  However, as Sambold confirmed in an email about his meeting with Mr.

23   Rudolfsky in Nevada, the parties "certainly never agreed on any terms and conditions nor made

24   any promises."  See MTD Ex. G.  In order for specific jurisdiction to be established "the claim

25   must arise out of the defendant's forum-related activities."  Gray & Co. v. Firstenberg Machinery

26   Co., 913 F.2d 758, 760 (9th Cir. 1990).  Because the January 7, 2012 meeting was only one of

27   several communications and meetings in the development of the Parties' activities and because

28   that meeting did not produce "any terms and conditions nor . . . any promises," the meeting

10304-01/1386353.doc

cannot accurately be construed as the source of the claim.  See, MTD Ex. G.  In a similar case, the Eleventh Circuit found that a Defendant that had visited the forum three times to train the plaintiff and had communicated by phone and fax repeatedly with the plaintiff while the plaintiff was in the forum had still not developed sufficient minimum contacts to establish specific personal jurisdiction.  See, Primus Corp. v. Centreformat Ltd., 221 Fed. Appx. 492, 493-494 (8th Cir. 2007).  The Eleventh Circuit in Primus Corp. found dispositive the fact that the visits that had occurred within the forum did not include the negotiation or finalizing of the underlying agreement, despite the fact that they related to the business conducted by the parties.  Id. General jurisdiction is also inapplicable as one meeting cannot possibly be considered "affiliations with the State [that] are so 'continuous and systematic' as to render them essentially at home in the forum State" as is necessary to establish general jurisdiction.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011).

b.  Mr. Rudolfsky's Emails

Plaintiffs rely on emails sent from Mr. Rudolfsky in other jurisdictions which were allegedly received by Ruhlman in Nevada to establish jurisdiction.  As explained above, the Ninth Circuit has held that emails "simply do not qualify as purposeful activity invoking the benefits and protection of the forum state."  Peterson, 771 F.2d at 1262; see also, Sarkis, 425 Fed. Appx. at 559.  The emails that Ruhlman allegedly received in Nevada do nothing to establish jurisdiction over Mr. Rudolfsky.

c.  The Nevada LLC

Mr. Rudolfsky was illegitimately listed as the managing member of Ke Aloha LLC with the Nevada Secretary of State without his knowledge or consent.  Even if this Court were to put credence in Ke Aloha LLC's filing, such a filing is insufficient to establish general personal jurisdiction.  This Court has previously stated that "membership in a single LLC or being a director of a single corporation may not constitute sufficient contact with Nevada" to establish jurisdiction.  Gala v. Britt, 2:10-cv-00079-RLH-RJJ, 2010 U.S. Dist. LEXIS 133429 (D. Nev. Dec. 15, 2010).

///

- 9 -

10304-01/1386353.doc

3.   Mr. Rudolfsky's Alleged Tortious Actions Do Not Establish Jurisdiction

The Ninth Circuit has held that in tort cases the court should "inquire whether a defendant purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.   The "effects" test . . . requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218 (9th Cir. Cal. 2011) (citations omitted).  The tort that is alleged here deals with the purchase, ownership and management of a Hawaii property. All of the effects arising from this purported tort would be aimed at and suffered exclusively in Hawaii.  None of the effects would be aimed at or suffered in Nevada and as such this Court cannot have jurisdiction to hear such a tort.

4.   Mr. Rudolfsky's Ownership of Property Does Not Establish Jurisdiction

Plaintiffs allege jurisdiction over Mr. Rudolfsky based on his ownership of property in Nevada.  The Nevada property in question (Mr. Rudolfsky's "Mother's Home") was purchased by Mr. Rudolfsky's parents in 1991. See, Declaration of Glenn Rudolfsky attached to the Reply in Support of Defendants' Motion as Exhibit "1" at ¶ 5.  Following the death of his father in 1999, Mr. Rudolfsky was added as a joint tenant of his Mother's Home in 2000. Id. at ¶ 6.  This was done solely for estate planning purposes. Id.  Mr. Rudolfsky visited his mother at his Mother's Home when he came to Nevada for the January 7, 2012 meeting. Id. at ¶ 7.  That visit is the only time since his father's funeral in 1999 that he has been to his Mother's Home or been in Nevada. Id. at ¶ 8.  The Supreme Court has explained that "although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction." See, Shaffer v. Heitner, 433 U.S. 186, 209 (1977).  Plaintiffs have failed to allege any basis for why the joint ownership of the Mother's Home should suggest any other ties between Mr. Rudolfsky and Nevada.  The mere ownership of the property cannot be construed to support jurisdiction. See, Id.

- 10 -

1      5. Under the Alternative, Transfer to Hawaii is Appropriate as Hawaii is a Superior

2   Alternative Forum

3      Section 1404(a) states that "a district court may transfer any civil action to any other

4   district or division where it might have been brought" for "the convenience of the parties and

5   witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a).  A motion to transfer an action

6   pursuant to this authority presents two basic questions: (1) whether the action sought to be

7   transferred "might have been brought" in the proposed transferee district; and (2) whether the

8   transfer would be "(f)or the 'convenience of parties and witnesses, in the interest of justice.'"

9   Int'l Patent Dev. Corp. v. Wyomont Partners, 489 F. Supp. 226, 228 (D. Nev. 1980).

10      The Ninth Circuit has held that, under § 1404(a), a district court must weigh multiple

11   factors in making an "individualized, case-by-case consideration of convenience and fairness."

12   Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000); see also Van Dusen v.

13   Barrack, 376 U.S. 612, 622 (1964).  Factors to be considered include:

14      (1) the location where the relevant agreements were negotiated and executed, (2)
        the state that is most familiar with the governing law, (3) the plaintiff's choice of
15      forum, (4) the respective parties' contacts with the forum, (5) the contacts relating
        to the plaintiff's cause of action in the chosen forum, (6) the differences in the
16      costs of litigation in the two forums, (7) the availability of compulsory process to
        compel attendance of unwilling non-party witnesses, and (8) the ease of access to
17      sources of proof.

18   Jones, 211 F.3d at 498-99.

19      Defendants' affiliations with Hawaii are "so 'continuous and systematic' as to render

20   them essentially at home" there, as such Defendants are subject to Hawaiian jurisdiction and this

21   action could be brought there.  Goodyear, 131 S.Ct. at 2851.  Hawaii is a superior forum as (1) a

22   significant portion of the negotiations at issue in this case took place in Hawaii; (2) the case will

23   turn on the interpretation of Hawaii law as to the Loan Documents; (4) all of the parties either

24   own or have financial interests in property in Hawaii aside from their interests in the Property at

25   dispute in this issue and all parties travel frequently to Hawaii (See, MTD Ex. A at ¶¶ 33-35); (5)

26   as outlined above, the contacts in Nevada relating to this cause of action are sparse; (6) litigation

27   will be substantially less expensive in Hawaii as most if not all necessary witnesses reside in

28   Hawaii (See Declaration of Glenn Rudolfsky attached to Reply in Support of Defendants'

Motion as Exhibit "1" at ¶ 9); (7) compulsory process for unwilling witnesses will be far simpler in the witnesses' resident state of Hawaii and; (8) sources of proof will be far more easily accessed in Hawaii.  Transfer to Hawaii is therefore proper under 28 U.S.C. § 1404(a).

<u>**CONCLUSION**</u>

Cases are frequently granted stays of discovery pending the determination of a motion to dismiss for lack of jurisdiction.  The burden of proving jurisdiction rests on the party asserting jurisdiction, and, if a doubt exists, courts are to presume that they lack jurisdiction.  Plaintiffs cannot meet their burden to establish that Defendants are subject to jurisdiction in Nevada.  A stay is appropriate as the Court is likely to ultimately dismiss this case.

DATED this 23rd day of September, 2014.

**HOLLEY, DRIGGS, WALCH,**
**PUZEY & THOMPSON**


*/s/ F. Thomas Edwards*
OGONNA M. ATAMOH, ESQ.
Nevada Bar No. 7589
F. THOMAS EDWARDS, ESQ.
Nevada Bar No. 9549
NATHAN R. HENDERSON, ESQ.
Nevada Bar No. 13145
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

*Attorneys for Defendants*

10304-01/1386353.doc

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that on the <u>23rd</u> day of September, 2014, I caused the document entitled DEFENDANTS' MOTION TO STAY CASE, to be served by electronically transmitting the document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Elizabeth J. Foley, Esq. – Efoleylawyer@gmail.com


and to the following, via United States Mail, at the below-listed address:

Elizabeth J. Foley, Esq.
ELIZABETH J. FOLEY, LAWYER, LTD.
601 South Rancho Drive, Suite A-1
Las Vegas, Nevada  89106

*Attorney for Plaintiffs*

/s/ Norma S. Moseley
AN EMPLOYEE OF HOLLEY, DRIGGS, WALCH,
   PUZEY & THOMPSON

10304-01/1386353.doc

- 13 -