UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MAX RUHLMANN, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>GLENN RUDOLFSKY, *et al.*,<br><br>    Defendants. | Case No. 2:14-cv-00879-RFB-NJK<br><br>**ORDER** |

**I.    INTRODUCTION**

Plaintiffs Max Ruhlmann, a Nevada resident, and Eric Sambold, a California resident, have filed suit in the District of Nevada against Defendants Glenn Rudolfsky and Kim D. Rudolfsky, residents of New York, regarding a joint venture investment property in Hawaii. Defendants claim they lack contacts with Nevada sufficient to subject them to personal jurisdiction here, and have accordingly moved to dismiss the complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Court finds this matter appropriate for resolution on the parties' written submissions.[1] For the reasons discussed below, the Court finds that Plaintiffs have made a *prima facie* showing that Defendants are subject to personal jurisdiction in Nevada, and denies Defendants' Motion to Dismiss on that basis.

**II.    BACKGROUND**

**A. Alleged Facts**

The parties dispute many of the jurisdictional facts in this case. As the Court finds this motion appropriate for resolution based on written submissions, it will therefore resolve factual

---

[1] Accordingly, the Court denies Plaintiffs' request for oral argument on this matter (ECF No. 31).

disputes (as it must) in favor of Plaintiffs.[2]

Plaintiffs allege the following uncontroverted facts in their Complaint. Plaintiffs and Defendants agreed to the terms of a joint venture under which a five-acre property on the Hawaiian Island of Kauai was to be purchased, improved, and rented to vacationers for profit. Compl. ¶¶ 7, 8, 11. This property, known as "Ke Aloha," was purchased using capital from Plaintiffs Ruhlmann and Sambold and Defendant Rudolfsky.[3] Id. ¶¶ 10, 14-16. The purchase was made with the understanding that Plaintiffs would be 50% owners of the Ke Aloha property and would receive distributions of profits according to this one-half interest. Id. ¶¶ 11, 14, 19. At the time of their investment, Plaintiffs also believed they had agreed with Defendants that profits from renting the property would be held by a Limited Liability Company (LLC) (in which Rudolfsky and Plaintiffs would be members) and then paid out as distributions according to each member's share. Id. ¶¶ 9-11. Plaintiffs invested $550,000 into the alleged joint venture. Id. ¶ 14. To date, Defendants have not placed title to the Ke Aloha property in the LLC. Id. ¶ 17.

Plaintiffs allege additional facts in their Opposition to the Motion to Dismiss and accompanying exhibits. Although many of these facts are disputed, for purposes of this motion the Court accepts as true the following facts relevant to jurisdiction, as alleged in Ruhlmann's affidavit attached to Plaintiffs' Opposition.

In September and October of 2011, Rudolfsky sent Ruhlmann several e-mails asking whether Ruhlmann would be interested in investing in the Ke Aloha property. Aff. of James "Max" Ruhlmann ¶¶ 6-8, Opp'n Mot. Dismiss, Aug. 28, 2014, ECF No. 18 ("Ruhlmann Aff."). Ruhlmann and Rudolfsky had a telephone conversation about the potential investment on October 9, 2011. Id. ¶ 9. On December 20, 2011, Rudolfsky e-mailed Ruhlmann saying that

---

[2] See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (where, as here, the Court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss," and the Court must accept as true the undisputed allegations in the plaintiff's complaint and resolve disputed facts in the parties' affidavits in favor of the plaintiff) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)).

[3] "Rudolfsky" refers to Defendant Glenn Rudolfsky, not Kim Rudolfsky, throughout this Order unless otherwise noted.

1  Rudolfsky's bid for the property had been accepted and giving more details on the property,
2  including projected rental income. Id. ¶ 10. In this e-mail, Rudolfsky also stated that he would
3  consider traveling to Las Vegas, Nevada to meet with Ruhlmann so the two could get to know
4  each other. Id. Ruhlmann then informed Rudolfsky that he intended to involve Sambold in the
5  discussions as well. Id. ¶ 11.

6  On December 26, 2011, Rudolfsky e-mailed Ruhlmann asking whether he and Sambold
7  would be able to meet in Las Vegas the weekend of January 5, 2012. Id. ¶ 12. On approximately
8  January 6-7, 2012, both Plaintiffs and both Defendants met in Las Vegas. Id. ¶ 13. During that
9  meeting, Plaintiffs and Defendants agreed that they would each contribute half of the money for
10 the Ke Aloha property. Id. Ruhlmann states that Kim Rudolfsky (Glenn Rudolfsky's wife)
11 participated in the Las Vegas meeting, that she served as the bookkeeper for Glenn Rudolfsky's
12 real estate interests, and that she is listed on the Ke Aloha deed. Id. ¶ 22. Thereafter, on January
13 27, 2011, Rudolfsky informed Plaintiffs in an e-mail that it would not be possible to have names
14 other than his and Kim Rudolfsky's on the deed at closing. Id. ¶ 14.

15 Ruhlmann contacted his attorney in Las Vegas in February 2012 to inquire about forming
16 a Limited Liability Company (LLC) in which Plaintiffs anticipated the Ke Aloha property would
17 be placed after closing. Id. ¶ 16. On February 22, 2012, Ruhlmann sent an e-mail to Rudolfsky
18 and Sambold and enclosed a document entitled "Plans for Ke Aloha." Id. ¶ 18. In this document,
19 item 2 stated "Form a Nevada LLC" and item 3 stated "Name Glenn as Manager and Glenn, Eric
20 and Max as members." Id. ¶ 24. In his e-mail, Ruhlmann stated that once Rudolfsky and
21 Sambold had reviewed the document and had the opportunity to make changes to it, Ruhlmann
22 would send it to his attorney to create an LLC. Id.

23 On March 4, 2012, Rudolfsky wrote to Sambold stating that he "[did] not see much in the
24 way of differences" in his first reading of the "Plans for Ke Aloha" document, but that he would
25 review it again in detail. Id. ¶ 21. Rudolfsky then e-mailed Ruhlmann and Sambold on March 13,
26 2012, stating "I have reviewed the LLC suggestions from [Ruhlmann] and added my input as
27 well." Id. ¶ 24. Rudolfsky attached an edited version of the "Plans for Ke Aloha" document to
28 this e-mail. Id. Next to item 2 ("Form a Nevada LLC") and item 3 ("Name Glenn as Manager

and Glenn, Eric and Max as members"), Rudolfsky wrote "Good." Id.

The next day, on March 14, 2014, Ruhlmann e-mailed Rudolfsky and Sambold stating that he intended to revise the "Plans for Ke Aloha" document according to what they had agreed on. Id. ¶ 25. Rudolfsky responded, indicating that his lawyer would be available to rewrite the document and stating "You can form the LLC in Vegas but at least we will not have to pay the extra legal fees." Id. Rudolfsky, through e-mail, requested an update on the status of the LLC on May 22, 2013. Id. ¶ 31. The next day, Ruhlmann sent an e-mail asking Sambold and Rudolfsky to give the addresses they wanted to be listed with the LLC and whether they had preferences for the name. Id. ¶ 32. Rudolfsky replied, stating that he did not have a preference for the name and providing his New York home address for the LLC. Id.

On September 7, 2013, Ruhlmann instructed his attorney to file with the Nevada Secretary of State to open Ke Aloha LLC, and to list Rudolfsky as manager and Rudolfsky, Ruhlmann, and Sambold as members. Id. ¶ 33. Rudolfsky was to have a 50% share, while Ruhlmann and Sambold were to each have a 25% share. Id. Ruhlmann e-mailed Rudolfsky on September 18, 2012, informing him that LLCs registered in Nevada had to have an English translation for their names and proposing "the loved one" as a translation. Id. ¶ 34. Rudolfsky replied the next day, approving the suggested translation. Id. ¶ 35. That same day, on September 19, 2012, the Articles of Organization for Ke Aloha LLC were filed with the Nevada Secretary of State. Id.

Throughout 2013, Rudolfsky sent shareholders reports to Ruhlmann regarding the Ke Aloha property. Id. ¶ 37. In March 2014, Rudolfsky informed Ruhlmann and Sambold that he was raising his management fee from 20% to 25% and that Kim Rudolfsky would receive a bonus out of the Ke Aloha funds. Id. ¶ 38. Ruhlmann states that thereafter, Rudolfsky began resisting Plaintiffs' attempts to add their names to the Ke Aloha deed or have the property conveyed to the Nevada LLC. Id. ¶ 40. Rudolfsky has also refused Plaintiffs' demand for an accounting and has kept the Ke Aloha funds in his own bank account. Id.

On June 6, 2014, Plaintiffs filed a Complaint against Defendants in this Court, alleging that Defendants failed to transfer title to the Ke Aloha property to the Ke Aloha LLC as

originally agreed. ECF No. 1. In their Complaint, Plaintiffs allege the following causes of action: Breach of Joint Venture Agreement; Unjust Enrichment; Fraud in the Inducement; and Breach of the Implied Covenant of Good Faith and Fair Dealing. Plaintiffs also seek an accounting for profits of the joint venture agreement as well as specific performance of the agreement.

On August 1, 2014, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens*. ECF No. 14. In their Motion, Defendants argue that they are not subject to personal jurisdiction in Nevada, or in the alternative, that Hawaii is an adequate alternative forum and that the balance of interests in this case weighs in favor of dismissal.

### III.   LEGAL STANDARD

A plaintiff bears the burden of establishing personal jurisdiction. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1168 (9th Cir. 2006). Where, as here, the Court resolves a motion to dismiss based only on written submissions, a plaintiff must make a *prima facie* showing of facts that would support personal jurisdiction. Id. That is, the plaintiff "need only demonstrate facts that if true would support jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir.1995). When evaluating the plaintiff's *prima facie* showing of jurisdiction, "uncontroverted allegations in . . . [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in . . . [plaintiff's] favor." Brayton Purcell, 606 F.3d at 1128 (quoting Rio Props., Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002)).

To establish that personal jurisdiction over an out-of-state defendant is proper, a plaintiff must show (1) that the forum state's long-arm statute confers personal jurisdiction and (2) that the exercise of jurisdiction comports with the constitutional principles of due process. Rio Props., Inc., 284 F.3d at 1019. Because Nevada permits its courts to exercise jurisdiction to the same extent as the Constitution, this Court need only consider the constitutional principles of due process. Nev. Rev. Stat. § 14.065; Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014).

**IV. DISCUSSION**

The Court has considered the briefs and exhibits submitted by the parties to the extent necessary for resolution of this motion. For the reasons given below, the Court concludes that Plaintiffs have met their burden of demonstrating facts supporting a finding of specific personal jurisdiction. The Court also declines to dismiss this case based on *forum non conveniens*. Defendants' Motion to Dismiss is therefore denied.

**A. Personal Jurisdiction**

1. General Jurisdiction

Personal jurisdiction can be general or specific. General jurisdiction requires a defendant be "domiciled in the forum state," Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998), or that he engage in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state, Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Id. Ownership of property within a forum state, where the underlying litigation is not related to the property, does not by itself establish personal jurisdiction over that individual. Shaffer v. Heitner, 433 U.S. 186, 212 (1977).

Based upon the alleged facts, Nevada, and hence the Court, does not have general jurisdiction over Defendants. Rudolfsky acknowledges having joint ownership of his mother's condominium in Nevada; however, that property is unrelated to this case and no party alleges that he uses the condominium as a domicile or even as an occasional living space for himself. Similarly, Rudolfsky's business contacts in Nevada do not amount to a finding of general jurisdiction. Rudolfsky has a business relationship with Rulhmann and holds the position of managing partner in Ke Aloha LLC. These contacts, while not insubstantial, do not "approximate physical presence." Schwarzenegger, 374 F.3d at 801. The Court therefore finds the Defendants' connections to Nevada insufficient to establish general jurisdiction.

2. Specific Jurisdiction

Specific jurisdiction requires certain "minimum contacts" with the forum state and must

not "offend traditional notions of fair play and substantial justice." Schwarzenegger, 374 F.3d at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This "minimum contacts" test has three requirements: (1) the defendant must have purposefully directed specific activities toward the state forum, (2) the plaintiff's claim must arise out of or relate to those specific forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice—or, in other words, must be reasonable. Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two elements. Id. If the plaintiff does so, the defendant has the burden of presenting a "compelling case" that jurisdiction would be unreasonable. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

The Court finds at this stage of the litigation that Defendants are subject to personal jurisdiction. Plaintiffs have successfully established that Defendants purposefully directed activities into Nevada and that the claims at issue here relate to those activities. Defendants have not met their burden of establishing that jurisdiction would be unreasonable.

### a. Purposeful Direction

The purposeful direction requirement has three necessary elements: the defendant "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Brayton Purcell, 606 F.3d at 1128 (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)).  This is sometimes referred to as the "effects test" or "Calder test." See Calder v. Jones, 465 U.S. 783 (1984).

Here, the Court finds that Plaintiffs have successfully established all three elements of the Calder test. First, the intentional act element requires "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Brayton Purcell, 606 F.3d at 1128 (quoting Schwarzenegger, 374 F.3d at 806). It is undisputed that the Defendants intentionally participated in a business relationship with the Plaintiffs through numerous emails, at least one meeting in person, and an exchange of money and business reports. Plaintiffs also state in an affidavit that Rudolfsky expressly agreed to the formation of a Nevada LLC of which he would be the manager and a member with a 50% share.

1  Kim Rudolfsky was a participant, as bookkeeper, in this relationship and was to receive money
2  from these transactions or directly from the LLC. The Court finds that these acts satisfy the first
3  Calder requirement.
4       Second, express aiming entails more than mere foreseeability; it requires "conduct
5  expressly aimed at the forum." Brayton Purcell, 606 F.3d at 1129. Rudolfsky's alleged express
6  agreement to serve as manager and member of a Nevada LLC easily satisfies this standard.
7  Rudolfsky also allegedly suggested that the parties conduct in-person discussions about the terms
8  of their agreement in Nevada, and he and Kim Rudolfsky traveled to Nevada and allegedly
9  participated in those discussions, which led to an agreement in principle on a joint venture
10 agreement. Kim Rudolfsky was to receive money under this agreement and served as bookkeeper
11 for the joint venture which was organized as a Nevada LLC. The Court therefore finds that
12 Defendant's conduct was sufficiently aimed at Nevada.
13      "The final element requires that [the defendant's] conduct caused harm that it knew was
14 likely to be suffered in the forum," but "does not require that the 'brunt' of the harm be suffered
15 in the forum." Brayton Purcell, 606 F.3d at 1131 (quoting Yahoo!, 433 F.3d at 1206). Ruhlmann
16 is a Nevada resident (a fact known to Defendants, given their travel to the state to allegedly
17 conduct negotiations with Ruhlmann) from whom Rudolfsky accepted a significant sum of
18 money for investment in the Ke Aloha property. Further, Rudolfsky allegedly consented to the
19 formation of a Nevada LLC, of which he would be manager and member, to hold title to Ke
20 Aloha. Both Glenn and Kim Rudolfsky allegedly refused to pay Plaintiffs their agreed-upon
21 share of the Ke Aloha proceeds, and Kim allegedly received a bonus out of funds that were to be
22 paid in part to Plaintiffs. Defendants' alleged actions—which included the failure to pay
23 Plaintiffs their agreed-upon share of the Ke Aloha proceeds, unilateral changing of terms of the
24 joint venture agreement, and failure to transfer title to the Nevada LLC—caused financial harm
25 in the forum to Ruhlmann and the Ke Aloha LLC. Based upon these alleged facts, Defendants
26 therefore caused harm that they knew would be suffered in Nevada.
27          b.  *Relation to Specific Forum Activities*
28      Plaintiffs have also alleged facts sufficient to meet the second prong of the minimum

contacts test, which requires that the plaintiff's claims arise out of or relate to the defendant's forum-related activities. Schwarzenegger, 374 F.3d at 802. As discussed, Plaintiffs have alleged that both Defendants visited Nevada to discuss the terms of the association that are now in dispute. Plaintiffs have also alleged that Defendants agreed to enter a business association with Plaintiffs which involved the exchange of money and regular correspondence with Plaintiffs, one of whom resides in Nevada. Plaintiffs have further alleged that Rudolfsky agreed to create an LLC organized under Nevada law to hold title to the Ke Aloha property and distribute the profits from the joint venture, and that Rudolfsky also agreed to be the manager and a member of that LLC. Finally, Plaintiffs allege that Kim Rudolfsky performed bookkeeping duties for this joint venture, received money from the joint venture, and was listed on the deed to Ke Aloha. Plaintiffs' claims all relate to the alleged breach of the joint venture agreement or the unjust enrichment or fraudulent activity of Defendants in connection with the proceeds from the Ke Aloha property. Thus, Plaintiffs' claims clearly arise out of Defendants' alleged Nevada activities.

*c.  Reasonableness*

Having established the first two elements of the minimum contacts test, the last consideration for the Court is whether subjecting the defendant to jurisdiction would be unreasonable. In determining reasonableness, the Ninth Circuit balances seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007) (citation omitted).  The burden is on the defendant to "present a compelling case" why jurisdiction would be unreasonable. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 476-78).

Considering the factors set forth in Menken, the Court concludes that Defendants have not demonstrated that jurisdiction would be unreasonable. First, Defendants claim their only "purposeful interjection" into the state was the short trip to Las Vegas, Nevada in which no

explicit promises were made. However, that business meeting was made at the suggestion of Rudolfsky, and Plaintiffs allege they later sent Rudolfsky $550,000 as result of the plans made at that meeting. Therefore, the Las Vegas meeting was a deliberate interjection into Nevada that produced tangible results. Additionally, Rudolfsky assented to managing the business arrangement through the Ke Aloha LLC, of which he was manager and member with a 50% share. Rudolfsky allegedly agreed that the LLC would be organized under Nevada law. Moreover, Kim Rudolfsky (who also allegedly came to the Las Vegas discussions) served as the bookkeeper for the joint venture that was to be formally organized under Nevada law and pay profits to a Nevada resident. Assuming these allegations are true, the Court finds that the Defendants interjected themselves into Nevada's affairs. This factor weighs in favor of Plaintiffs.

Second, Defendants argue the burden of defending in Nevada is great because the forum is far removed from the investment property in Hawaii. But this dispute does not primarily concern the Ke Aloha property itself. Rather, Plaintiffs claim that Defendants breached or acted fraudulently with respect to the parties' joint venture agreement, or that Defendants were unjustly enriched from that purported agreement. This purported agreement was primarily negotiated in Nevada and resulted in the creation of a Nevada LLC to govern the proceeds from the Hawaii property, and Rudolfsky allegedly consented to the creation of that LLC and to serve as manager of it. The Court sees no compelling reason why it would be unduly burdensome for Defendants to defend against this action in Nevada when Defendants allegedly negotiated a business venture here, agreed to structure their formal business arrangement according to Nevada's laws, took actions that caused harm they knew was likely to be suffered in Nevada, and where the litigation arises out of those activities. This factor weighs in Plaintiffs' favor.

Defendants do not make any argument as to the third factor. As it is Defendants' burden to make a showing of unreasonableness and nothing in the record indicates that litigating this case in Nevada would conflict with the sovereignty of New York (Defendants' state of residence), this factor weighs in favor of Plaintiffs.

Fourth, Defendants contend that Nevada has no interest in a dispute about property located in Hawaii. As previously stated, however, this case is actually a dispute regarding the

1 terms of an alleged joint venture agreement that was substantially negotiated in Nevada and caused harm to a Nevada LLC and one of its residents. Nevada has "a strong interest in providing an effective means of redress for its residents who [may be] tortuously injured" in such matters. Core–Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1489 (9th Cir. 1993).

Fifth, Defendants argue that Nevada is an inefficient forum because the case will turn on the interpretation of Hawaii law, which governs the loan documents related to the mortgage on the property in Hawaii and the Defendants' Promissory Note to Plaintiff Sambold from receipt of the $550,000 investment sum. Defendants' argument with respect to this factor is misplaced. In evaluating the efficiency factor, courts are primarily concerned with "where the witnesses and the evidence are likely to be located." Menken, 503 F.3d at 1060-61 (quoting Core-Vent, 11 F.3d at 1489). Here, each Plaintiff is a resident of a different state, and neither is a resident of the same state as Defendants. However, to the extent that there are any witnesses to the negotiation of the joint venture agreement or creation of the Nevada LLC, it is likely that they will be located in Nevada as that is the only place where the parties allegedly met in person and is where the LLC was formed. Therefore, this factor weighs slightly in favor of Plaintiffs.[4]

Sixth, Defendants argue that Plaintiffs gain nothing from litigating in this forum over any other. This factor is "not of paramount importance" to courts within the Ninth Circuit. Dole Food Co. v. Watts, 303 F.3d 1104, 1116 (9th Cir. 2002). However, Ruhlmann is a Nevada resident; therefore, while this factor is not of great importance, it nonetheless slightly favors Plaintiffs given the convenience to him of litigating this case in Nevada.

Finally, Defendants argue that Hawaii is a superior alternative forum. The plaintiff "bears the burden of proving the unavailability of an alternative forum." Menken, 503 F.3d at 1061. Plaintiffs have not met that burden here; instead, they merely argue why it would be

---

[4] Even if the Court were to consider it, Defendants' argument regarding the application of Hawaii law is unpersuasive. The Plaintiffs' claims do not directly involve the loan documents, but rather the terms of the alleged joint venture agreement between them and Defendants—an agreement substantially negotiated in Nevada and that the parties allegedly agreed to formalize through the formation of a Nevada LLC. Moreover, in the event that the dispute necessitates reference to Hawaii law, this Court is no less capable of applying Hawaii law to any appropriate issues. See, e.g., Reding v. Texaco, 598 F.2d 513, 517 (9th Cir. 1979) (applying Wyoming law to a dispute brought in California by diverse parties).

inconvenient to litigate this case in Hawaii. Therefore, this factor weighs in Defendants' favor.

Balancing the seven reasonableness factors, the Court concludes that Defendants have not presented a compelling case for why exercising jurisdiction in this case would be unreasonable. Therefore, the requirements for specific personal jurisdiction are satisfied, and this Court possesses jurisdiction over Defendants.

### B. Forum Non Conveniens

Defendants also move to dismiss this case based on the doctrine of *forum non conveniens*. "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). However, this doctrine does not apply where the proposed alternative forum is also within the United States:

> Rather than requiring dismissal and refiling of a suit where the alternative forum is another federal court, [28 U.S.C.] § 1404(a) now allows transfer of a case from one federal district court to another "for the convenience of parties and witnesses in the interest of justice." Section 1404(a) thus serves as a statutory substitute for forum non conveniens in federal court when the alternative forum is within the territory of the United States. The doctrine of forum non conveniens survives in federal court only when the alternative forum is in a foreign country.

Ravelo Monegro v. Rosa, 211 F.3d 509, 512-13 (9th Cir. 2000) (citation omitted).

Here, Defendants argue that this case should be dismissed under *forum non conveniens* because Hawaii is a more convenient forum. Because Defendants do not seek dismissal based on an alternative forum located in a foreign country, the doctrine of *forum non conveniens* is inapposite here.

In sum, Plaintiffs have made a *prima facie* showing that Defendants are subject to specific personal jurisdiction in this Court, and the doctrine of *forum non conveniens* does not apply. Therefore, Defendants' Motion to Dismiss must be denied.

. . .

. . .

. . .

. . .

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* (ECF No. 14) is DENIED. This denial is without prejudice to Defendants' ability to renew the issue at a later stage in the proceedings.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Hearing (ECF No. 31) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Determination of Personal Jurisdiction and Convenient Forum Issues (ECF No. 36) is DENIED AS MOOT.

DATED: September 27, 2015.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**