**HOWARD & HOWARD ATTORNEYS PLLC**
Jay Young, Esq., Bar No. 5562
Robert Hernquist, Esq., Bar No. 10616
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Phone: 702.257.1483
Fax: 702.567.1568
jay@h2law.com
rwh@h2law.com

*Attorneys for Defendants*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| MAX RUHLMAN and ERIC SAMBOLD,<br><br>Plaintiffs,<br><br>v.<br><br>GLENN RUDOLFSKY, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII; KIM D. RUDOLFSKY, AKA KIM DAPOLITO, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DRAMS HAWAII,<br><br>Defendants. | Case No.  2:14-cv-00879-MMD-NJK |

### <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants GLENN RUDOLFSKY ("Mr. Rudolfsky") and KIM D. RUDOLFSKY ("Mrs. Rudolfsky"), (collectively "Defendants") by and through their counsel, the law firm of Howard & Howard Attorneys PLLC, respectfully move this court to dismiss this matter, as it is void pursuant to the statute of frauds, and for failure to plead fraud with specificity.

/ / /

/ / /

/ / /

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Defendants base this motion on the pleadings and records on file herein, the Points and Authorities set forth below, and the oral argument of counsel, if any.

Dated this 19th day of October, 2015

**HOWARD & HOWARD ATTORNEYS PLLC**

By: _____
Jay Young, Esq., Bar No. 5562
Robert Hernquist, Esq., Bar No. 10616
Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada  89169
*Attorneys for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    OVERVIEW AND RELIEF REQUESTED**

Plaintiffs complain that they entered into an oral agreement and some written agreements with Defendants.  The only written agreements alleged between the parties document a private mortgage whereby Plaintiffs loaned money to Defendants securing the subject real property in Hawaii.[1]  The oral agreement allegedly required Defendants to transfer that same property to an LLC in which Plaintiffs and Defendants would each have an interest. The alleged oral agreement also required that Defendants share in their profits from the real estate every quarter year from 2012 to the present time, a period of over 3 years.[2]

Public policy has recognized since 1677 that oral agreements for the transfer of an interest in real property is fraught with opportunities to defraud through perjured testimony. That policy also recognized the same dangers regarding oral contracts where the performance

---

[1] Complaint at ¶ 18.

[2] Id. at ¶¶ 22-23.

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

cannot be completed in one year.  That policy was enacted as the Statute of Frauds by the Parliament of England in 1677.  Nevada codified the statute of frauds at NRS 111.205, and declares as void, the exact kinds of oral agreements alleged by Plaintiffs in this matter.  This Court should dismiss the action as violating the statute of frauds.

Plaintiffs additionally claim fraud in the inducement, but fail to meet the rigorous pleading standards required of fraud claims.  Plaintiffs fail to aver the time, the place, the identity of the parties involved, and the nature of the fraud or mistake, requiring that claim to be dismissed.

## II.   **FACTS RELEVANT TO THIS MOTION**

Plaintiffs admit to entering into a set of written agreements with Defendants—they carry a mortgage against the property at issue here - - a five acre estate in Hawaii.  Complaint at ¶ 18.[3]  Now, three years later, Plaintiffs conveniently want the court to ignore the existence of the mortgage arrangement and instead claim the existence of a joint venture ("hereinafter "JV"), which allegedly required the Defendants to transfer the real property.  But the Complaint reveals there is no written agreement to that end.  Specifically, the Complaint alleges the following **oral** agreements to transfer real property:

- Mr. Rudolfsky proposed a joint venture to Ruhlmann on September 26, 2011. Complaint at ¶ 7.
- Plaintiffs and Mr. Rudolfsky agreed "that the joint venture to [Sic] purchase, own, renovate, and rent the five acre estate" through an LLC. Id. at ¶ 8.
- Plaintiffs invested $550,000 into the JV "with the understanding that Plaintiffs would own half of the five acre Kalihiwa Ridge Estate." Id. at ¶ 14.
- Plaintiffs initially agreed to have the five acre estate titled in defendants' names. Id. at ¶ 15.
- Defendants met with Plaintiffs in Las Vegas in January 2012 and shook hands on the JV to purchase the five acre estate together.  Id. at ¶ 16.

---

[3] See Exhibits 1-3 attached hereto and incorporated herein by this reference.  Documents referenced in a complaint are not considered matters outside the pleadings.  See In re: Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 986 (9th Cir. 1999).

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Plaintiffs made only one factual allegation against Defendant Mrs. Rudolfsky individually—that she lives in New York. Id. at ¶ 3. No factual allegation was made against Defendants House of Dreams Hawaii or House of Dreams Kauai and House. No specific representation is alleged to have been made by Mrs. Rudolfsky, House of Dreams Hawaii, or House of Dreams Kauai (the "No Misrepresentation Defendants"). The No Misrepresentation Defendants are only connected to the remaining allegations in the Complaint by the lone allegation that all defendants acted as agent and employee of each other and were acting in that capacity at all times. Id. at ¶ 6.

Further, Plaintiffs allege fraud in the inducement against the "defendants". Id. at ¶¶ 39-48. The actual factual predicates regarding the "misrepresentations" are completely lacking against the No Misrepresentation Defendants.   As to Mr. Rudolfsky, the allegations of representations still fall far short of the legal requirement to plead time, place, and specific content of the alleged false representations with specificity.   The following constitutes all Plaintiffs allege regarding time, place, and content:

- Plaintiffs and Mr. Rudolfsky agreed (without reference to the time and place) that Ke Aloha, LLC of which Plaintiffs and Mr. Rudolfsky would be members, "would hold the title to the five acre Kauai estate." Id. at ¶ 9.
- On March 1, 2012 (at an unalleged location), Mr. Rudolfsky "agreed to the Nevada LLC structure" outlined in the complaint. Id. at ¶ 13.
- Mr. Rudolfsky (without reference to place) wrote to Plaintiffs "stating that the title company would only allow the Defendants, who were the original bidders in the short sale, to be on the title at closing, but that title *could* be transferred to Plaintiff, Eric Sambold, at closing for an additional fee of $230.00." Id. at ¶ 15 (emphasis added).
- All other factual allegations are against the "defendants" as a group without identifying which defendant made any particular representation. Id. at ¶¶ 6, 14, 16, 40-45.

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

### III.   ARGUMENT

Plaintiffs' complaint must be dismissed, as the non-fraud claims arise out of a transaction which violates the statute of frauds.  Further, as to the fraud in the inducement claim, the same is not pled with specificity and there are no allegations against the No Misrepresentation Defendants.  The claim must therefore be dismissed.

### A.   THIS COURT'S STANDARD ON A MOTION TO DISMISS

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citation omitted).  In Iqbal, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id.

Second, a court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 679.  A claim is facially plausible when the plaintiff's

complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679 (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. Twombly, 550 U.S. at 570.

The Ninth Circuit addressed post-Iqbal pleading standards in Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). The Starr court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Id.

Concerning claims for fraud (or in this case fraud in the inducement), the Court's standard is elevated. To succeed on a claim for fraud in the inducement, one must plead and prove: 1) a false representation made by Defendant(s); 2) Defendants knew or believed that the representation was false (or knew that had an insufficient basis for making the representation); 3) Defendants must have intended to induce Plaintiffs to consent to the formation of contract; 4) Plaintiffs justifiably relied upon the misrepresentation; and 5) damage to Plaintiffs resulting from such reliance. A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc., 120 Nev. 277 (2004); Lubbe v. Barba, 91 Nev. 596, 598; 540 P.2d 115, 118 (1975).

Furthermore, a claim of "fraud or mistake" must be alleged "with particularity." Fed.R.Civ.P. 9(b). A complaint alleging fraud or mistake must therefore include allegations of

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

the time, place, and specific content of the alleged false representations and the identities of the parties involved. See Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." (Id.) (internal quotations omitted). The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct alleged so that they can defend against the charge. Less v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

### B. PLAINTIFF'S CLAIMS ARE VOID BECAUSE THE ALLEGED AGREEMENTS TO CREATE A JOINT VENTURE AND FOR PLAINTIFFS TO OWN THE PROPERTY VIOLATE THE STATUTE OF FRAUDS.

A Motion to Dismiss is appropriate where a contract is allegedly breached, but that contract is void under the Statute of Frauds. Porter v. Chetal, No. 3:13-CV-00661-LRH-VP, 2014 WL 5307964, at *2 (D. Nev. Oct. 16, 2014) (citing Am. Int'l Enters. v. F.D.I.C., 3 F.3d 1263, 1270 (9th Cir. 1993); Phillips v. Dignified Transition Solutions, No. 2:13–cv–2237, 2014 WL 4294972, at *4 (D.Nev. Aug. 28, 2014)).  Plaintiffs here allege an **oral agreement** between the parties to enter into a JV (Complaint at ¶ 7) that the JV would "purchase, own, renovate, and rent the five acre estate" through an LLC Id. at ¶ 8.  Further, Plaintiffs invested $550,000 into the JV "with the understanding that Plaintiffs would own half of the five acre [parcel]" (Id. at ¶ 14) and would initially be titled in Defendants' names. Id. at ¶ 15. Defendants met with Plaintiffs in Las Vegas in January 2012 and "shook hands on the joint venture" agreement to purchase the five acre estate together. Id. at ¶ 16.  Plaintiffs claim that

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Defendants agreed to modify the mortgage into ownership in an LLC, but produce no writing to that end. [4]

Plaintiffs do not plead that a written agreement exists for the transfer of the property; rather, they claim that an oral agreement gives them the right to have the property conveyed to them. Even if defendants had breached an agreement, Nevada's statute of frauds provides that every contract for the sale of land is void unless the contract is in writing, and thus, oral agreements to convey real property cannot be enforced. Nevada's statute of frauds provides that every contract for the sale of land is void unless the contract is in writing, and thus, oral agreements to convey real property cannot be enforced. See Butler v. Lovoll, 96 Nev. 931, 934–35, 620 P.2d 1251, 1253 (1980).

> NRS 111.210. Contracts for sale or lease of land for periods in excess of 1 year void unless in writing
> 1. Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made.

See also NRS 111.205(1); Khan v. Bakhsh, 129 Nev. Adv. Op. 57, 306 P.3d 411, 413 (2013). All claims which rely on the oral agreement[5] for Plaintiffs' claim to ownership in the land are therefore void and must be dismissed.

---

[4] Where Plaintiffs desire to enforce an oral agreement to modify their mortgage agreements, this Court has the authority to find the same void. "No interest in lands shall be surrendered unless by conveyance in writing subscribed by the party surrendering the same or by his lawful agent thereunto authorized in writing." Summa Corp. v. Greenspun, 96 Nev. 247, 251–52 (Nev.1980) (citing Nev.Rev.Stat. § 111.205) (as quoted in Wang v. U.S. Bank, NA, No. 2:10-CV-01741-KJD, 2011 WL 2222792, at *2 (D. Nev. June 7, 2011)). Notes secured by a deed of trust are covered by the statute of frauds, In re Desert Enterprises, 87 B.R. 631, 634 (Bankr.D.Nev.1988), so this Court has found that oral agreements to modify such notes are generally disallowed, Tomax v. Wells Fargo Home Mortg., 2011 WL 1157285, at *2 (D.Nev. Mar. 29, 2011); see also 37 C.J.S. Stat. Frauds 95; Powell on Real Property, Section 81.02[2][d] ("oral modification of a written agreement to convey an interest in property generally fails"). Courts have recognized that even a forbearance agreement is subject to the statute of frauds. See Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2, 84 Cal.Rptr.3d 275, 282–83 (Cal.Ct. App.2008).

[5] First Claim for Relief—Accounting for Profits of JV, Complaint at ¶¶ 20-23 (the claims for an accounting do not exist without a JV formed by oral agreement to take the property); Second Claim for Relief—Breach of JV Agreement and Specific Performance, Id. at ¶¶ 24-29 ("under the terms of the Joint Venture Agreement,

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Further, not only does the alleged agreement violate the statute of frauds because it portends the transfer of real property, but the purported agreement required performance for a period in excess of a calendar year. Only those oral agreements which are capable of being fully performed within a year from execution are not void under the Statute of Frauds. NRS 111.220; see also Stanley v. A. Levy & J. Zentner Co., 60 Nev. 432, 112 P.2d 1047, 1052 (1941). Plaintiffs allege that Mr. Rudolfsky first proposed the JV on September 26, 2011. Complaint at ¶ 7. Plaintiffs further allege that Mr. Rudolfsky agreed to the Nevada LLC structure on March 13, 2012. Plaintiffs do not even allege that the Defendants ever agreed to transfer the property by any particular deadline. Rather, they carefully dance around this issue in Paragraph 15, wherein they alleges that Mr. Rudolfsky stated on January 27, 2012 that "title **could** be transferred" to Sambold "at closing **for an additional fee of $230.00**" (emphasis added).

Notice there is not even an allegation that any of the defendants promised that the property would be transferred at the close of escrow. So, if the proposal was made in September 2011, the "contract" the parties allegedly entered into would have had to have been completed on or before September 25, 2012 in order to escape the effects of the statute of frauds (which is to avoid frivolous claims such as those at bar here). But Plaintiffs' own complaint suggests that it never intended the "contract" to be completed in a year. They allege that profits were to be paid to them quarterly (Id. at ¶ 11), and Plaintiffs are seeking an accounting and for profits made with the property since 2012 (Id. at ¶¶ 21-23), which is a period in excess of 3 years. Moreover, Plaintiffs anticipate, by this action, future acts in

---

Defendants were obligated **to transfer and convey the title**" to the property. Id. at ¶ 26 (emphasis added); Third Claim for Relief—Specific Performance, Id. at ¶¶ 30-35 (Plaintiffs claim an entitlement to have the property conveyed to them); Sixth Claim for Relief—Breach of the Implied Covenant of Good Faith and Fair Dealing, Id. at ¶¶ 49-52 (the covenant is based on the alleged oral agreement to form a JV by transferring the property to Plaintiffs).

furtherance to the JV "agreement." Therefore, the performance could not have been completed within a year and the "agreement" violates the statute of frauds.

Plaintiffs have alleged that the parties intended to form a JV. Although JVs and partnerships are similar, they are not identical. Hook v. Giuricich, 108 Nev. 29, 31, 823 P.2d 294, 296 (1992). Despite the distinction, Nevada caselaw provides that the principles of partnership law apply to JVs. In re Cay Clubs, 130 Nev. Adv. Op. 92, 340 P.3d 563, 569 (2014) (citing Radaker v. Scott, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993)); Haertel v. Sonshine Carpet Co., 102 Nev. 614, 616, 730 P.2d 428, 429 (1986).

Accordingly, Plaintiffs' claims based upon contract should be dismissed because the verbal contract alleged by Plaintiff is barred as a matter of law. See Saeme v. Levine, 502 F. App'x 849, 853 (11th Cir. 2012) (holding that claims for breach of contract, breach of fiduciary duty and conversion based upon oral partnership agreement were barred by the statute of frauds because the two partners intended that performance of their agreement take longer than one year); Harrington v. Murray, 169 A.D.2d 580, 581, 564 N.Y.S.2d 738, 740 (1991) (holding that claim based upon purported oral partnership agreement was barred by the statute of frauds); Gano v. Jamail, 678 S.W.2d 152, 154 (Tex. App. 1984) (holding that oral partnership agreement between lawyers was barred by statute of frauds because the objective of the partnership could not be completed within one year).

Moreover, Plaintiffs ask the Court to determine that a JV/partnership exists. Pursuant to Nevada law, determination of whether a partnership exists must be performed pursuant to statute. See NRS 87.070 & NRS 87.4322. When an indeterminate oral partnership or JV/agreement as alleged by Plaintiffs exists, the JV/partnership is deemed to be "at will" and the partnership may be dissolved at any time upon a "partner's express will to withdraw as a

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

partner," here manifest when the parties entered into what Plaintiffs term a "bridge mortgage" instead of transferring the property.  Complaint at ¶ 18; see also Exhibits 1-3;  NRS  87.4307 & 87.4351(1).   Thus, termination of the JV/partnership by either Plaintiff or Defendants would not constitute a "breach" of any oral agreement.  Instead, it would simply constitute an exercise of that party's statutory rights and all that would remain is a determination of the parties' respective duties, rights and obligations during the winding up process.  NRS 87.4352-87.4357.  These rights were expressed when the parties entered into a mortgage arrangement instead of any other arrangement complained of.

## C.  PLAINTIFFS FRAUD IN THE INDUCEMENT CLAIM FAILS FOR LACK OF SPECIFICITY.

Plaintiffs' complaint fails to allege the requisite who, what, where, when and how of a fraud in the inducement claim.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  In actions involving fraud, the circumstances of the fraud are required to be stated with particularity.  Brown v. Kellar, 97 Nev. 582, 583-84, 636 P.2d 874, 874 (1981).  "The circumstances that must be detailed include averments to the time, the place, the identity of the parties involved, and the nature of the fraud or mistake."  Id.  And even then, each Defendant's misrepresentation must be spelled out with particularity.  Swartz v. KPMG LLP, 476 F.3d at 764.

Here, the Complaint does not contain any of the required specificity.  Plaintiff has not alleged specifically what was said, when it was said, the place it was said or who was present.  The bare allegations set forth in Plaintiff's fraud claim fail to meet the heighted pleading standard required by Rule 9(b), and in the unlikely event the claim withstands dismissal Plaintiff should be required to restate the claim in conformance with Nevada law.

Plaintiffs come closest to providing specificity in paragraphs 9, 13, and 15.  Sadly, even these allegations fall far short of the pleading standard in this jurisdiction.  In Paragraph 9, Plaintiffs allege Mr. Rudolfsky agreed (without reference to the time and place, or to the exact

recipient) that Ke Aloha, LLC of which Plaintiffs and Mr. Rudolfsky would be members, and "would hold the title to the five acre Kauai estate." Paragraph 13 alleges a March 1, 2012 communication without the required location or recipient of the communication. Paragraph 15 lacks the requisite reference to place of the communication. All remaining allegations as to representations fail to name which Defendant made the representation, what the representation was, where it was delivered, when it was delivered and to whom it was delivered. Plaintiffs have no allegations against the No Misreprentation Defendants that they made any representations at all. They should therefore not be required to defend this action.

## IV.    CONCLUSION

This Court should hold that Plaintiffs' claims are void, as they violate the statute or frauds. Similarly, the fraud in the inducement claim is not pled with specificity. Therefore, Defendants respectfully request that this Court dismiss Plaintiffs' complaint with prejudice.

Dated: October 19, 2015

HOWARD & HOWARD ATTORNEYS PLLC


By: _____
Jay Young, Esq., Bar No. 5562
Robert Hernquist, Esq., Bar No. 10616
Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada  89169
*Attorneys for Defendants*

Howard & Howard, Attorneys PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that on the 19 day of October, 2015, I caused the document entitled Defendants' Motion to Dismiss to be served by electronically using CM/ECF System for filing and transmittal to the following:

> Elizabeth J. Foley, Esq.
> efoleylawyer@gmail.com

and to the following, via Untied States Mail, at the following address:

> N/A

An Employee of Howard & Howard Attorneys PLLC

4848-4577-7193, v. 1

**Howard & Howard, Attorneys PLLC**
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 257-1483

# EXHIBIT 1

# EXHIBIT 1





STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED

March 30, 2012 8:01 AM

Doc No(s) A-44720041

/s/ NICKI ANN THOMPSON
REGISTRAR



1    2 / 2    nhtk

B-32037313

LAND COURT SYSTEM                      REGULAR SYSTEM

After Recordation, Return by:  Mail ( XX )   Pickup (   )

Eric R. Sambold, Trustee
8322 Miramar Mall Road
San Diego, CA 92121

Old Republic Title & Escrow
Escrow No. 6828003899 - BJ

This document contains 17 pages

---

TYPE OF DOCUMENT:

### MORTGAGE

---

PARTIES TO DOCUMENT:

MORTGAGOR:      GLENN RUDOLFSKY and KIM RUDOLFSKY,
                husband and wife
                2825 Shore Drive
                Merrick, New York 11566

MORTGAGEE:      ERIC R. SAMBOLD, Trustee of the Eric R. Sambold Trust
                dated September 1, 2002
                8322 Miramar Mall Road
                San Diego, California 92121

---

PROPERTY DESCRIPTION:

                4781 B Kahiliholo Road
                Kilauea, Kauai, Hawaii 96754
                Tax Map Key No. (4) 5-2-017-024   CPR No. 0002

# MORTGAGE

KNOW ALL MEN BY THESE PRESENTS:

That GLENN RUDOLFSKY and KIM RUDOLFSKY, husband and wife, whose mailing address is 2825 Shore Drive, Merrick, New York 11566 (hereinafter called the "Mortgagor"), in order to secure that certain Promissory Note dated February _____, 2012, in favor of ERIC R. SAMBOLD, Trustee of the Eric R. Sambold Trust dated September 1, 2002, whose mailing address is 8322 Miramar Mall Road, San Diego, California 92121 (hereinafter called the "Mortgagee"), in the principal amount of FIVE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($550,000.00), and all renewals, extensions, modifications, amendments and refinancings thereof (hereinafter called the "Note"), and also the repayment of any and all other indebtedness now or as may hereafter be or become owing by the Mortgagor to the Mortgagee, does hereby mortgage, grant, convey, assign, transfer and deliver unto the Mortgagee, his successors and assigns, the property more particularly described in Exhibit "A" attached hereto and made a part hereof, subject, however, to any encumbrances which may be noted therein.

TOGETHER WITH all buildings and other improvements now or hereafter located on the property described in Exhibit "A" and all other goods now owned or hereafter acquired which are or are to become in any manner physically attached to the land or any such improvements, and all additions, accessions and substitutions to any or all of the foregoing, all of which are and shall be a portion of the security for the indebtedness hereby secured.

AND TOGETHER ALSO WITH all rights, easements, tenements, privileges, hereditaments and appurtenances belonging or appertaining to the subject property and the reversions, remainders, rents, issues, profits and proceeds thereof, and all of the estate, right, title and interest of the Mortgagor, both at law and in equity, therein and thereto and all further or additional estates, title or interests which may hereafter be acquired by the Mortgagor in and to the property described in Exhibit "A", all of which are hereinafter referred to as the "Mortgaged Property".

TO HAVE AND TO HOLD the same unto the Mortgagee, forever, with respect to all property held in fee simple or otherwise without time limitation and for the unexpired term of any property held under lease or grant for a term.

THE MORTGAGOR WARRANTS TO AND AGREES WITH THE MORTGAGEE that the Mortgagor is the lawful owner in fee simple of any land hereby mortgaged and is the owner absolutely of all personal property which may be hereby mortgaged; that the Mortgagor has good right and lawful authority to encumber, sell, assign and convey the Mortgaged Property; that the Mortgaged Property is free from all encumbrances except as may be specifically described herein; that the Mortgagee shall quietly enjoy and possess the Mortgaged Property and that the Mortgagor will warrant and defend the same unto the Mortgagee against any and all lawful claims of all persons, except as aforesaid.

PROVIDED, HOWEVER, that if the Mortgagor shall pay all indebtedness secured by this Mortgage pursuant to the Note to the Mortgagee, the terms of which Note are incorporated herein and by reference made a part hereof, and shall discharge any and all other obligations that now are or may hereafter be or become owing directly or contingently by the Mortgagor to the Mortgagee on any and every account, whether or not the same are mature, of which obligations the records of the Mortgagee

- 2 -

shall be prima facie evidence and which obligations are and shall be secured as an additional charge against all the property hereby mortgaged, and shall observe and perform all of the covenants and conditions of this Mortgage and shall pay the costs of its release, THEN THESE PRESENTS SHALL BE VOID.

BUT IN THE EVENT OF DEFAULT in the timely payment of any amount required under the Note or any part thereof, or in the payment of any other indebtedness secured hereby, or in the repayment of any disbursement authorized by the terms of this Mortgage and actually made by any holder of the same; or in the event of default in the performance or observance of any covenant, condition or agreement contained in this Mortgage or in the Note, or in the performance or observance of any other obligation hereby secured and such default shall continue for a period of thirty (30) days after the Mortgagee shall have given the Mortgagor written notice of the default; or if the Mortgagor then holding title to all or any part of the Mortgaged Property (or any of them if there be more than one) shall be adjudicated a bankrupt or shall file any petition or answer seeking relief as a debtor under any law for the relief or aid of debtors, or shall enter into any arrangement or composition with creditors; or if a receiver shall be appointed with respect to the property herein described; or if the Mortgaged Property or any part thereof shall be seized or levied upon under any legal process or under claim of legal right; then in each such event the whole amount of all indebtedness owing by or chargeable to the Mortgagor under this Mortgage or intended to be secured hereby shall, at the option of the Mortgagee, become at once due and payable without notice (any provision or terms thereof to the contrary notwithstanding) or demand, and any delay or failure on the part of the Mortgagee to demand such payment shall not prejudice the right of the Mortgagee thereto. In each such event, with or without foreclosure, the Mortgagee shall have the immediate right to receive and collect all rents, income and profits from the Mortgaged Property whether then due or accrued or to become due without liability for any loss which may arise for uncollectible rents so long as the Mortgagee acts with ordinary prudence, and all rents, income and profits are hereby assigned to the Mortgagee absolutely and not as security for so long as this Mortgage remains in effect, provided that the Mortgagor may collect the rents, income and profits so long as it is not in default hereunder; and the Mortgagee may, in the sole discretion of the Mortgagee, foreclose this Mortgage either by civil action with the immediate right to the appointment of a receiver on ex parte order without bond and with the power to collect all rents, income and profits, or enter into or terminate leases and otherwise manage and operate the Mortgaged Property pending foreclosure, or by advertisement and sale, with or without entry and possession, either as a whole or in parcels, portions or units, and on such terms as to payment, credit and security for payment as the Mortgagee may approve, at public auction in the Island and County of Maui, State of Hawaii, unless at the time of such sale the law requires, notwithstanding this provision, that the sale be held elsewhere, in which event such sale shall be held wherever required by such law, and may, either in the name of the Mortgagee or as the attorney-in-fact of the Mortgagor, give valid receipts for the purchase money and effectually assign, transfer and convey the Mortgaged Property so sold to a purchaser or purchasers absolutely and forever or by any other method then provided by law. Foreclosure in any manner shall forever bar the Mortgagor and all persons claiming under the Mortgagor from all right and interest in the property, notwithstanding any provision of law to the contrary now existing or hereafter enacted, the Mortgagor expressly waiving the benefits thereof. Any foreclosure sale shall not impair or affect the lien of this Mortgage on any portion of the Mortgaged Property remaining or any other remedy of the Mortgagee for the recovery of any indebtedness remaining after application of the proceeds of any foreclosure sale. Out of the proceeds of any foreclosure sale, the Mortgagee may deduct all costs and expenses of any remedy pursued, including attorneys' fees, and may pay and discharge any lien on the Mortgaged Property, either prior or junior to this Mortgage, and retain or be awarded all sums necessary to repay advances authorized hereunder and to satisfy all indebtedness of the Mortgagor to the Mortgagee whether or not then due, rendering to the Mortgagor the surplus, if any. If such proceeds shall be insufficient to discharge the same in full, the Mortgagee shall have any other legal recourse against the

- 3 -

Mortgagor for the deficiency.  This Mortgage shall not prevent nor be deemed to prevent the Mortgagee from pursuing any remedy whatsoever it may have against the Mortgagor for the collection of the indebtedness hereby secured and interest thereon, and the Mortgagee may at its option pursue any other course, successively or concurrently, to collect the indebtedness and interest thereon and may resort to any other assets of the Mortgagor without first resorting to, and without prejudice to the right to later resort, to the Mortgaged Property pursuant to this Mortgage.

Notwithstanding any provision contained herein to the contrary, if Mortgagee invokes the power of sale form of foreclosure, Mortgagee shall:  (i) mail Mortgagor a notice of sale; (ii) publish a notice of sale; and (iii) shall sell the Property at the time and place specified in the notice of sale.  Mortgagee or Mortgagee's designee may purchase the Property at any sale under power of sale or judicial sale.

The proceeds of any sale shall be applied in the following order: (a) to all reasonable costs and expenses of sale, including, but not limited to, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.  **IF THE PROCEEDS SHALL BE INSUFFICIENT TO DISCHARGE THE ENTIRE INDEBTEDNESS OF MORTGAGOR TO MORTGAGEE, THE MORTGAGEE MAY HAVE OTHER LEGAL RECOURSE AGAINST MORTGAGOR FOR THE DEFICIENCY.**

Until any default, the Mortgagor may hold and enjoy the Mortgaged Property and receive the rents, issues, income and profits therefrom.

THE MORTGAGOR HEREBY COVENANTS WITH THE MORTGAGEE THAT:

1.      The Mortgagor will pay when due unto the Mortgagee all installments of principal and interest payable by the terms of the Note hereby secured, and all other indebtedness now or as may hereafter be or become owing by the Mortgagor to the Mortgagee on any and every account, together with interest thereon at the rate applicable thereto, all of which shall be paid in lawful money of the United States of America.

2.      The Mortgagor will punctually pay and discharge when due and payable all taxes and assessments of every kind and nature that may be levied, assessed or imposed upon the Mortgaged Property or any part thereof or any interest therein or with respect to any indebtedness secured hereby notwithstanding any law imposing payment of the whole or any part upon the Mortgagee.  The Mortgagor will, upon request, deposit the receipts therefor with the Mortgagee.  Upon the breach of this covenant or the passage of any law imposing payment of the whole or any part of the foregoing taxes upon the Mortgagee or making this covenant legally inoperative or upon the rendering by any court of last resort of a decision that this covenant is legally inoperative, then and in any such event all indebtedness hereby secured shall immediately become due and payable notwithstanding anything to the contrary contained in this Mortgage or in the Note or other obligations secured hereby or in any law hereinafter enacted.  The Mortgagor will also punctually pay all impositions, duties and charges of every other kind and description that may be levied, assessed or imposed upon the Mortgaged Property or any part thereof or any improvements thereon or income therefrom without any deduction from the indebtedness secured by this Mortgage.

3.      The Mortgagor will keep the Mortgaged Property in good condition and repair and will not cause or permit any strip or waste or unlawful, improper or offensive use of the premises and will restore and replace all improvements now or hereafter on the premises damaged or destroyed by any

- 4 -

cause whatsoever.  The Mortgagor will also comply with all laws, rules and regulations made by governmental or private authority and applicable thereto.

4.    The Mortgagor will not create or suffer to be created any statutory or other lien or charge upon the Mortgaged Property or any part thereof or the income therefrom which shall be prior to, or on a parity with, the lien of this Mortgage, except liens of taxes or assessments not yet payable or payable without penalty so long as so payable; provided, however, that nothing contained in this paragraph shall be deemed to require the Mortgagor to pay or cause to be paid any tax, assessment or charge, or to satisfy any such lien, or to conform to any such term, covenant, condition or requirement so long as the Mortgagor, in good faith and by appropriate action diligently pursued, shall contest or cause to be contested the validity thereof (provided the security afforded by this Mortgage shall not thereby be subjected to any sale or reasonable probability of forfeiture or loss).  The Mortgagor will not claim any credit on interest payable on the Note or on any other payments secured hereby for any portion of the taxes assessed against the Mortgaged Property and the provisions of any law entitling the Mortgagor to such credit are hereby expressly waived by the Mortgagor.

5.    No building or other property now or hereafter erected and covered by the lien of this Mortgage shall be removed or demolished without the prior written consent of the Mortgagee, except that the Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such furniture, fixtures and equipment as from time to time may become worn out or obsolete, provided that either (a) simultaneously with or prior to such removal, any such furniture, fixtures or equipment shall be replaced with other furniture, fixtures or equipment of a value at least equal to that of the replaced furniture, fixtures or equipment and free from any security interest, chattel lien or other encumbrance and from any reservation of title, and by such removal and replacement, the Mortgagor shall be deemed to have subjected such furniture, fixtures or equipment to the lien of this Mortgage, or (b) any net cash proceeds received from such disposition shall be paid over promptly to the Mortgagee to be applied as a prepayment in accordance with the provisions of the obligations hereby secured.

6.    The Mortgagee shall have the right to enter and inspect the Mortgaged Property, and in the event of failure of the Mortgagor to pay, observe or perform any of the terms, covenants or conditions herein contained or contained in any lease, grant or other instrument referred to herein and on the part of the Mortgagor to be observed and performed, including, without limiting the generality of the foregoing, failure to keep the Mortgaged Property in good condition and repair, or to pay rent, taxes and assessments before the same become delinquent or any interest or penalty accrues thereon, or to effect insurance and deliver the policy or policies aforesaid, or in the event there exists or shall arise at any time any claim, lien or encumbrance on the Mortgaged Property or any part thereof, or in the event any statutory lien shall exist or arise on the Mortgaged Property or any part thereof, the Mortgagee may, without notice or demand and without prejudice to any other right herein contained, perform such term, covenant or condition, including making such repairs as may seem advisable to the Mortgagee, or paying such rent, taxes and assessments or effecting such insurance or paying such claims, liens, encumbrances or statutory liens, or make any other advances the Mortgagee in its discretion deems necessary to protect its security, and any and all sums so advanced shall be immediately due and payable, regardless of the validity of such costs of repair, taxes, assessments, insurance claims, liens, encumbrances or statutory lien, with interest thereon at the rate of interest then charged under the Note from the time of such advance.

7.    The Mortgagor shall maintain or cause to be maintained comprehensive general public liability and general property damage insurance naming the Mortgagee as an additional assured covering all claims for personal injury or death or property damage suffered by others occurring upon, in or about

- 5 -

any Mortgaged Property or upon, in or about adjoining streets and passageways. All such insurance shall be in such amounts and form as may from time to time be required by the Mortgagee and shall contain an agreement by the insurer that the insurance will not be cancelled or changed without at least ten (10) days prior written notice to the Mortgagee.

8.      The Mortgagor shall keep all improvements now on or hereafter erected upon the mortgaged real property and all personal property subject hereto and any rentals derived from the Mortgaged Property insured against hazards of such types and in such amounts and in such forms of insurance as may be from time to time required by the Mortgagee, and except as may be otherwise required by the terms of any lease or instrument senior or prior to this Mortgage, the Mortgagor will cause all policies to be made payable in case of loss to the Mortgagee and will deliver such policies or certificates thereof issued by the insurers as collateral and further security for the payment of the indebtedness hereby secured. All such policies of insurance shall (i) be carried in the name of the Mortgagor (and the lessor under any lease hereby mortgaged, if such lease so provides), (ii) contain a standard mortgagee clause, and (iii) provide that the proceeds of any one loss shall be payable to the Mortgagee (unless any lease hereby mortgaged covering the insured property provides otherwise). All such policies shall also provide that the insurance shall not be invalidated as to the Mortgagee by any act or neglect of any person owning the property insured, or by any foreclosure or other proceedings, or notice of sale, or by any change in the title or ownership of the insured properties, or by occupation of any insured structures for purposes more hazardous than permitted by such policy. All such policies shall to the extent obtainable be without contribution and shall contain an agreement by the insurer that the policy shall not be cancelled or changed without at least ten (10) days' prior written notice to the Mortgagee. If the Mortgagor defaults in so insuring the Mortgaged Property or any portion thereof or in so delivering copies of the policies (or certificates therefor), the Mortgagee may, at the option of the Mortgagee, effect such insurance from year to year and pay the premiums therefor, and the Mortgagor will reimburse the Mortgagee on demand for any premiums so paid with interest from the time of payment at the rate of interest then charged under the Note, and the same shall be secured by this Mortgage. The Mortgagee shall not be responsible for securing such insurance or for the collection of any insurance monies or for the insolvency of any insurer or insurance underwriter. No lien upon any of such policies of insurance or upon any refund or return premium which may be payable on the cancellation or termination thereof shall be given to other than the Mortgagee, except by proper endorsement affixed to such policy and approved by the Mortgagee.

The Mortgagor shall give immediate written notice of loss or physical damage to the Mortgaged Property to the Mortgagee and the Mortgagee may make proof of loss if it is not made promptly by the Mortgagor. Except as may otherwise be provided by law, all insurance proceeds on account of damage or destruction to any Mortgaged Property and all proceeds of any award payable to the Mortgagor for any Mortgaged Property taken by eminent domain which are received by the Mortgagee, less the cost, if any, incurred by the Mortgagee with respect thereto, but excluding proceeds of any rental value, use and occupancy or personal property insurance of the Mortgagor, shall be applied by the Mortgagee at its option to reduce the indebtedness secured hereby or toward the payment of the costs of repairing, restoring or rebuilding the Mortgaged Property so damaged or destroyed or taken (hereinafter referred to as the "work"). In the event the proceeds are applied to such work, they shall be paid out from time to time by the Mortgagee to the Mortgagor as the work progresses, but subject to such reasonable conditions as may be imposed by the Mortgagee, including but not limited to the following:

(a)      In the event the estimated cost of the work shall exceed Fifty Thousand and 00/100 Dollars ($50,000.00), the work shall be in charge of an architect or engineer and before the Mortgagor commences any work, other than temporary work to protect property or prevent interference

- 6 -

with business, the Mortgagee shall have approved the plans and specifications for the work, which approval shall not be unreasonably withheld or delayed.

(b)     Each request for payment shall be made on seven (7) days' prior written notice to the Mortgagee and shall be accompanied by a certificate to be made by such architect or engineer, if one is required under subparagraph (a) of this paragraph, otherwise by the Mortgagor stating (i) that all of the work completed has been done in compliance with the approved plans and specifications, if any be required under clause (a), (ii) that the sum requested is justly required to reimburse the Mortgagor for payments by the Mortgagor to, or is justly due to, the contractor, subcontractors, materialmen, laborers, engineers, architects or other persons rendering services or materials for the work (giving a brief description of such services and materials), and that when added to all sums previously paid out by the Mortgagee does not exceed the value of the work done to the date of such certificate, and (iii) that the amount of such proceeds remaining in the hands of the Mortgagee will be sufficient on completion of the work to pay for the same in full (giving in such reasonable detail as the Mortgagee may require an estimate of the cost of such completion).

(c)     Each request shall be accompanied by a search prepared by a title company or licensed abstractor or by other evidence satisfactory to the Mortgagee that there had not been filed with respect to the Mortgaged Property any mechanic's or other lien or instrument for the retention of title in respect to any part of the work not discharged of record.

(d)     There shall be no default on the part of the Mortgagor under this Mortgage or the Note.

(e)     The request for any payment after the work has been completed shall be accompanied by a copy of any certificate or certificates required by law to render occupancy of the Mortgaged Property lawful.

If the Mortgagor shall procure any other insurance it shall likewise be made payable to and be claimed only by the Mortgagee, and if not made so payable, it may be recovered by the Mortgagee and be similarly applied. In the event of foreclosure or sale of the Mortgaged Property as herein provided, all interest of the Mortgagor in such insurance shall pass to the purchaser of the insured property.

9.     In the event of condemnation of the Mortgaged Property or any part thereof by paramount authority, whether or not the Mortgagor is in default hereunder at the time, all of any condemnation award to which the Mortgagor shall be entitled is hereby assigned by the Mortgagor to the Mortgagee, who is hereby authorized to demand, sue for, collect, receive and receipt for the same, and at the option of the Mortgagee to apply the net proceeds of same, less costs and expenses, either to reduce the indebtedness hereby secured or toward the cost of repairing, restoring or rebuilding the Mortgaged Property. Nothing herein contained shall prevent the Mortgagee from applying at any time the whole or any part of any proceeds referred to in this paragraph and received by the Mortgagee to the curing of any default under this Mortgage or the Note.

10.    In the event any of the Mortgaged Property is subject to an easement or other interest with respect to which the Mortgagor has specific conditions or obligations to observe or perform, the Mortgagor shall observe and perform all of such other conditions or obligations and will indemnify the Mortgagee against all actions, proceedings, costs (including attorneys' fees), demands and damages which may be incurred by reason of failure to do so. The Mortgagor further covenants with the Mortgagee not to amend cancel or terminate any grant of easement or other instrument creating an interest

- 7 -

subject hereto without the prior written consent of the Mortgagee. The Mortgagor will (a) promptly notify the Mortgagee in writing of any default by the Mortgagor under such instrument or of the occurrence of any event which, with the passage of time, would constitute a default thereunder; and (b) in case any proceeds of insurance upon the Mortgaged Property or any part thereof or the proceeds of any award for the taking in eminent domain of the Mortgaged Property or any part thereof are deposited with any person other than the Mortgagee, promptly notify the Mortgagee in writing of the name and address of the person with whom such proceeds have been deposited and the amount so deposited.

11.     Upon demand of the Mortgagee, the Mortgagor will pay monthly to the Mortgagee, in addition to payments of principal and interest payable under the Note or other indebtedness secured hereby, a sum equal to the taxes, assessments, rentals, if any, and insurance premiums next due with respect to the Mortgaged Property or any interest therein which are required to be paid by the Mortgagor (all as estimated by the Mortgagee), less all sums already paid therefor, divided, in each case, by the number of months to the date upon which each such tax, assessment, rental, if any, or insurance premium will become due and payable, such payments to satisfy to the extent thereof the obligations hereunder of the Mortgagor with respect to such payments. Such sums will be held by the Mortgagee, without interest, to pay such obligations before they become delinquent and the Mortgagee shall have the right to commingle such funds with other funds and use such funds for any purpose without liability to the Mortgagor, even though subsequent owners of the Mortgaged Property may benefit therefrom. If the total of the payments made by the Mortgagor to the Mortgagee with respect to taxes, assessments, rentals, if any, and insurance premiums shall be insufficient to pay them in full when due and payable, the Mortgagor shall pay any amount necessary to make up the deficiency on or before the due date. In the event of default hereunder, then and in any such event any such reserve funds held by the Mortgagee may be applied to any part of the indebtedness secured hereby and in refunding any part of the reserve funds may deal with whomever is then represented as the owner of the Mortgaged Property.

12.     Any and all advances made by the Mortgagee to or for the account of the Mortgagor after the date hereof, together with interest thereon, shall be secured by this Mortgage and all of the covenants and agreements of this Mortgage shall apply to such advances as well as to all other indebtedness secured hereby, whether or not at the time such advance or advances are made there shall be then any outstanding indebtedness owing by the Mortgagor to the Mortgagee, unless a release of this Mortgage shall have been executed by the Mortgagee prior to the time of such advance or advances.

13.     Upon the commencement of any proceedings to collect the indebtedness or disbursements secured hereby in whole or part, whether by foreclosure of this Mortgage or otherwise and whether or not such proceedings are subsequently abandoned, there shall become due, and the Mortgagor agrees to pay in addition to the costs and charges allowed by law, a reasonable sum as and for attorneys' fees as an additional indebtedness hereunder and which shall be secured hereby. The Mortgagor will also pay any amount the Mortgagee may incur or pay for any evidence of title subsequent to this date on any of the property covered hereby and this Mortgage shall secure payment thereof.

14.     The Mortgagee or any person in behalf of the Mortgagee may purchase at any foreclosure sale, and the purchaser shall not be answerable for the application of the purchase money. The Mortgagee shall have the right to enforce one or more remedies hereunder or any other lawful remedy the Mortgagee may have, successively or concurrently, without impairing the lien of this Mortgage or the remedies of the Mortgagee and the Mortgagee is hereby appointed the attorney-in-fact for the Mortgagor for the purpose of demanding, collecting (by civil action or otherwise), receiving and accepting for rents, issues, income and profits from the Mortgaged Property, compromising and settling claims for rent on terms it deems appropriate, entering into, renewing or terminating leases or subleases and transferring title to the

Mortgaged Property upon foreclosure or sales.  The Mortgagee shall have the right and is hereby expressly authorized to make application of any payments made to it, or any rents, income and profits collected by it upon any indebtedness of the Mortgagor to the Mortgagee as provided herein regardless of the date thereof.  The Mortgagee's acceptance of any payment shall not be deemed a waiver of any default of the Mortgagor then existing, except to the extent cured by such payment, nor as a waiver of any right to declare all indebtedness secured hereby at once due and payable because of any default then existing and not cured by such payment.

15.     In the event of a sale of the Mortgaged Property or any part or parts thereof by virtue of this Mortgage, the purchaser or purchasers shall have immediate and peaceable possession, and if the Mortgagor remains in possession after the effective date of such sale, such possession shall be construed as a trespass giving unto the purchaser all remedies conferred by law in such case.

16.     If, without the prior written consent of the Mortgagee (which consent may be withheld in the sole discretion of Mortgagee) any of the property subject to this Mortgage shall be sold, conveyed, assigned, encumbered, leased or transferred, including any transfer by way of agreement of sale or as security, by the Mortgagor to any other party, other than by will or intestate succession, then and in any such event all of the indebtedness hereby secured shall at once become due and payable at the option of the Mortgagee (any provision or term thereof to the contrary notwithstanding), and delay or failure on the part of the Mortgagee to demand such payment shall be without prejudice to the Mortgagee's rights hereunder.  If the Mortgagor holding title to all or any part of the Mortgaged Property (or any of them if there be more than one) shall be a corporation, any sale, assignment, transfer (other than by will or intestate succession) or exchange of any of the shares of the capital or common stock of the Mortgagor, or any issuance of any new shares of stock of any class of such Mortgagor, or any merger or consolidation of such Mortgagor with or into any other corporation by which the shareholders of such Mortgagor immediately prior to such event (or their heirs or legatees) shall fail to own and control one hundred percent (100%) of the voting stock of such Mortgagor shall be deemed a conveyance or assignment of the Mortgagor's interest in the Mortgaged Property for purposes of this paragraph and shall require the prior written consent of the Mortgagee.  The provisions of this paragraph shall constitute a continuing covenant or condition and any failure on the part of the Mortgagee to exercise its option to declare all indebtedness due and payable on the occurrence of any one event hereinabove mentioned shall not prejudice the right of the Mortgagee to declare the indebtedness hereby secured at once due and payable on the occurrence of any other event hereinabove mentioned.

17.     In the event the ownership of any interest in the Mortgaged Property in whole or part becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor or any intervening successor, deal with a successor or successors in interest with reference to this Mortgage and the debt hereby secured in the same manner as with the Mortgagor without discharging or in any way affecting the liability of the Mortgagor or any successor or successors in interest hereunder or upon any indebtedness hereby secured, and the Mortgagor (and each of them if there be more than one) and any successor in interest to the whole or any part of the Mortgaged Property, hereby waive diligence, presentment, demand and notice of dishonor and consent to extensions of time, surrender or substitution of security, failure to apply deposit or other forbearance, without notice, with respect to any indebtedness hereby secured, such waiver or consent to be effective regardless of whether or not he, she, it or they is or are at such time the owner or owners of the Mortgaged Property.

18.     The Mortgagor, upon request, shall certify in a writing duly acknowledged to the Mortgagee or to any proposed assignee of this Mortgage, the amount of principal and interest then owing on this Mortgage and whether any offsets or defenses exist against the mortgage debt, within five (5) days

- 9 -

in case the request is made personally, or within ten (10) days after the mailing of such request in case the request is made by mail.

19.     Every requirement hereunder for the giving of notice, demand or request shall be deemed fulfilled when written notice, demand or request is personally served on one or more of the persons who shall at the time hold the record title to the Mortgaged Property, or on their heirs or successors, or is mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope addressed to such person or persons, or their heirs or successors, at his, their or its address last known to the Mortgagee.

20.     The Mortgagor will within five (5) days after written request from the Mortgagee execute alone or with the Mortgagee, and deliver, file and/or record any financing statements, mortgages or other instruments, and do such further acts as the Mortgagee may request to carry out more effectively the purpose of this Mortgage and to establish and maintain the lien hereof and the perfection of the security interests of the Mortgagee in the Mortgaged Property, including all renewals, additions, substitutions and improvements, and to protect the same against rights and interests of third parties.  The Mortgagor will pay all expenses, including reasonable attorneys' fees, incurred by the Mortgagee, whether in litigation or otherwise, to sustain the lien or priority of this Mortgage, or to protect or enforce any of the Mortgagee's rights hereunder, or for any title insurance policy covering the Mortgaged Property, all such sums to be paid on demand, together with interest thereon at the rate of interest then charged under the Note from the date of demand, all of which shall be secured hereby.

21.     In the event of the existence at the date of this instrument or the adoption hereafter of any law of the United States of America or the State of Hawaii, or of any other taxing jurisdiction, which in any way shall impose a tax on mortgages or debts secured by mortgages to the end that directly or indirectly the Mortgagee shall be required to pay on account of this Mortgage, the Note or any other indebtedness secured hereby, a tax other than a tax on, according to, or measured by net income, or any existing franchise tax applicable to the Mortgagee, the Mortgagee may give at any time written notice to the Mortgagor that the Mortgagee elects to have the indebtedness secured by this Mortgage become due and payable six (6) months from the giving of such notice (if the indebtedness is not sooner due and payable) unless the Mortgagor, within the six-month period, shall agree in writing to pay the amount of such taxes. If the Mortgagor so agrees to pay the amount of such taxes, such agreement shall be deemed to be a covenant and obligation of the Mortgagor under this Mortgage for all purposes.  If the Mortgagor fails to so agree, the indebtedness secured by this Mortgage shall become due and payable upon the last day of the six-month period.  If at any time the Mortgagor's agreement to pay the amount of such taxes shall be prohibited by law or the payment of such taxes by the Mortgagor would make the transaction usurious, then the indebtedness secured hereby shall become due and payable six (6) months after the giving of written notice (if the indebtedness is not sooner due and payable) by the holder of this Mortgage and the Note secured hereby that it elects to have the indebtedness secured hereby become due and payable.

22.     With respect to any grant of easement or other instrument referred to herein and under which the Mortgagor has an estate or interest which is less than fee simple or absolute, the term "Mortgaged Property" and similar terms shall include such grant of easement or other instrument, and all the estate, right, title and interest of the Mortgagor in and to the property covered thereby and in and to all tenements, hereditaments, rights, easements, privileges and appurtenances belonging or in anywise appertaining to such property, and in and to all buildings, structures, fixtures and other improvements now on or which may hereafter be on such property.  The terms "advances", "costs" and "expenses", whenever herein used, shall include reasonable attorneys' fees and recording fees whenever incurred.

- 10 -

The term "indebtedness" and similar terms as used herein shall mean and include all notes, loans, advances, interest, claims, demands, obligations and liabilities whatsoever, however arising, and whether owing by the Mortgagor (or any of them if there be more than one) individually or jointly with others, and whether absolute or contingent, liquidated or unliquidated and whenever contracted, accrued or payable. If there is more than one Mortgagor, all obligations hereunder shall be binding upon them jointly and severally. If the Mortgagor is married, the execution hereof by the spouse shall bind the spouse individually and constitute a quitclaim and release to the Mortgagee of all interest of the spouse in the Mortgaged Property by way of dower, elective share, curtesy, community property or otherwise. These presents shall be equally binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Mortgagor and the Mortgagee, respectively, and shall be construed so that the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, and the use of a pronoun of any gender shall include either or both of the other genders.

23.     This Mortgage is governed by and shall be construed in accordance with the laws of the State of Hawaii. In the event that any interest rate set herein or in the Note or in any other instrument of indebtedness hereby secured, or applicable to any other indebtedness hereby secured, together with any late charge, fees or other charges applicable thereto, shall be in excess of the permissible rate under any applicable usury statute or similar law governing maximum rates of interest, fees or charges, then such rate of interest and/or late charges, fees or other charges shall be reduced to the maximum permitted by law, anything herein or in the Note or other instrument to the contrary notwithstanding.

24.     THIS MORTGAGE CONSTITUTES AND THE MORTGAGOR ACKNOWLEDGES THAT IT HAS RECEIVED WRITTEN NOTICE THAT THE MORTGAGOR MAY PURCHASE ANY REQUIRED INSURANCE FROM AN INSURER OR AGENT OF THE MORTGAGOR'S CHOICE, SUBJECT ONLY TO THE MORTGAGEE'S RIGHT TO REJECT A GIVEN INSURER OR AGENT BASED ON REASONABLE STANDARDS, UNIFORMLY APPLIED, RELATING TO THE EXTENT OF COVERAGE REQUIRED AND THE FINANCIAL SOUNDNESS AND SERVICES OF THE INSURER OR AGENT.

24.     The Mortgagee agrees that whenever its consent or approval is required under the terms and conditions of this Mortgage, it will not withhold such consent or approval arbitrarily or unreasonably, and it will not charge any money for the granting thereof other than a reasonable fee for the processing of same, including but not limited to a reasonable attorney's fee.

IN WITNESS WHEREOF, the parties have caused this instrument to be duly executed this 14th day of February, 2012.

*Signature pages follow; the remainder of this page is intentionally left blank.*

GLENN RUDOLFSKY

KIM RUDOLFSKY

**Mortgagor**

STATE OF NEW YORK  )
         ) SS:
COUNTY OF _Nassau_  )

   On February _13_, 2012, before me, _Howard K. Pollack_, Notary Public, personally appeared GLENN RUDOLFSKY and KIM RUDOLFSKY, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument, which document consists of seventeen (17) pages, and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

   I certify under **PENALTY OR PERJURY** under the laws of the State of New York that the foregoing paragraph is true and correct.

   WITNESS my hand and official seal.

Notary Public,
State of New York.

HOWARD K. POLLACK
NOTARY PUBLIC, State of New York
No. 4860968
Qualified in County of Nassau
Commission Expires 5-5-14

My commission expires: _5|5|14_

- 12 -

_____

ERIC R. SAMBOLD, Trustee

**Mortgagee**

STATE OF CALIFORNIA       )
                          )     SS:
COUNTY OF _San Diego_     )

On February _15_, 2012, before me, _Veronica G. Rodriguez_, Notary Public, personally appeared ERIC R. SAMBOLD, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, which document consists of seventeen (17) pages, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under **PENALTY OR PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public,
State of California.

My commission expires: _MAY 12, 2013_

VERONICA G. RODRIGUEZ
Commission # 1848841
Notary Public - California
San Diego County
My Comm. Expires May 12, 2013

- 13 -

EXHIBIT "A"

FIRST:

Apartment Unit No. B of that certain Condominium Project known as "MAUKA LANI", as shown on Condominium Map No. 1531, and described in the Declaration of Condominium Property Regime dated July 5, 1991, recorded July 23, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-098349, as the same may be amended.

TOGETHER WITH all structures located on the limited common element of said unit, easements appurtenant to said apartment established by and described in the Declaration, including the following:

Non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for and support, maintenance and repair of said apartment, in the other common elements for use according to their respective purposes, subject always to the exclusive use of the limited common elements as provided in the Declaration, and in all other apartments and limited common elements of the Project for support.

SECOND:

An undivided twenty percent (20%) interest in all common elements of the project and in the land upon which said project is located as established for said apartment by the Declaration, or such other percentage interest as hereinafter established for said apartment by any amendment of the Declaration as tenant in common with the other owners and tenants thereof.

Being all the property described in the following:

Doc A-44720040

APARTMENT DEED                                    March 30, 2012 8:01 AM

Recorded :     February _____, 2012, in the Bureau of Conveyances, State of Hawaii,
               as Document No.:     2012 -- _____
Grantor :      HOWARD C. SAMUELS, a married man as his sole and separate
               property
Grantee :      GLENN RUDOLFSKY and KIM RUDOLFSKY, husband and wife

SUBJECT, HOWEVER, to the following:

1.     Title to all minerals, and metallic mines reserved to the State of Hawaii.

2.     A 150-foot building setback and drainage way as shown on File Plan No. 1934.

3.     A 15-foot building setback and drainage way as shown on File Plan No. 1934.

4.     Easement "E-7" (area 44 square feet)
       For : Electrical purposes
       As shown on File Plan No. 1934

5.     AGREEMENT

       Executed By:   STATE OF HAWAII
       and Between:   C. BREWER AND COMPANY, LIMITED

       On the terms, covenants and conditions contained therein,

       Dated:        March 16, 1977
       Recorded:    in the Bureau of Conveyances, State of Hawaii, in Book 12110,
                    Page 330
       Re:          Use of the land described herein, besides other land, for
                    agricultural purposes

6.     Covenants, Conditions and Restrictions, but omitting any covenants or restrictions if any,
       based upon race, color, religion, sex, handicap, familial status, or national origin unless
       and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the
       United States Code or (b) relates to handicap but does not discriminate against
       handicapped persons, as provided in an instrument.

       Entitled:     DECLARATION
       Dated:        October 3, 1988
       Recorded:    in the Bureau of Conveyances, State of Hawaii, in Book 22452, Page
                    429

       Said Declaration was amended by the following instruments:

       <u>DATED:</u>         <u>DOCUMENT NO.:</u>
       July 5, 1990      90-104733
       March 29, 1999    99-196189

7.     Unrecorded KALIHIWAI RIDGE ENVIRONMENTAL DESIGN RULES AND
       GUIDELINES PURSUANT TO DECLARATION OF PROTECTIVE COVENANTS,
       CONDITIONS AND RESTRICTIONS FOR KALIHIWAI RIDGE dated October 12,
       1988.

8.     AGREEMENT TO INCORPORATE AGRICULTURAL RESTRICTIONS INTO
       INSTRUMENTS OF CONVEYANCE

       Executed By:   C. BREWER PROPERTIES, INC., a Hawaii corporation
       and Between:   COUNTY OF KAUAI PLANNING DEPARTMENT

       On the terms, covenants and conditions contained therein,

       Dated:        September 30, 1988
       Recorded:    in the Bureau of Conveyances, State of Hawaii, in Book 22452,
                    Page 491

9.     Covenants, conditions, restrictions, reservations, agreements, obligations, easements and
       other provisions set forth in DEED dated November 1, 1988, recorded in the Bureau of

Conveyances, State of Hawaii, in Book 22555, Page 521, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or natural origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c) or Section 515-6, HRS.

10.     Agreement for:     FARM DWELLING
         Executed By:     STEVEN T. ROUSH, MARY GAY ROUSH, MICHAEL E. MAYS, MEREDITH S. MURPHY, HOLT H. BLANCHARD, and EARL L. SIMPSON, "Applicants"
         and Between:     COUNTY OF KAUAI Planning Department, "Department"

On the terms, covenants and conditions contained therein,

Dated:     April 3, 1990
Recorded:     in the Bureau of Conveyances, State of Hawaii, as Document No. 90-069221 (re-recorded as Document Nos. 90-070741 and 91-144797)

11.     An easement affecting that portion of said land and for the purposes stated herein and incidental purposes as provided in the following:

Instrument:     GRANT
Granted To:     CITIZENS UTILITIES COMPANY
For:     A perpetual nonexclusive easement to build, construct, reconstruct, rebuild, repair, maintain and operate electrical transformers and underground lines, etc., for the transmission and distribution of electricity, etc.
Dated:     July 5, 1990
Recorded:     in the Bureau of Conveyances, State of Hawaii, as Document No. 90-151401

12.     Condominium Map No. 1531, filed in the Bureau of Conveyances, State of Hawaii.

13.     Matters in an instrument that, among other things, contain or provide for easements, assessments, liens and their subordination; provisions relating to partition, restrictions on severability of component interest, covenants, conditions and restrictions, provision that no violation thereof and no enforcement of any lien provided for therein shall defeat or render invalid the lien of a mortgage or deed of trust made in good faith and for value, but omitting any covenants or restrictions if any, based upon race color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons.

Entitled:     Declaration of Condominium Property Regime
Recorded:     July 23, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-098349

Said Declaration was amended by the following instruments:

- iii -

| DATED: | RECORDED: | DOCUMENT NO.: |
|---|---|---|
| October 31, 1997 | November 4, 1997 | 97-150831 |
| February 6, 2004 | March 3, 2004 | 2004-044005 |
| July 5, 2005 | July 11, 2005 | 2005-136397 |

Liens and charges for upkeep and maintenance as provided in the above mentioned Covenants, Conditions and Restrictions, if any, where no notice thereof appears on record.

14. By-Laws of the Association of Apartment Owners of MAUKA LANI, recorded July 23, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-098350.

15. An easement affecting that portion of said land and for the purposes stated herein and incidental purposes as provided in the following

| | |
|---|---|
| Instrument : | GRANT |
| Granted To : | CITIZENS UTILITIES COMPANY |
| For : | A perpetual right and easement to build, construct, reconstruct, rebuild, repair, maintain and operate pole and wire lines and/or underground lines, etc. for the transmission and distribution of electricity, etc. |
| Dated : | December 21, 1990 |
| Recorded : | March 11, 1992 in the Bureau of Conveyances, State of Hawaii, as Document No. 92-035491 |

16. Covenants, conditions, restrictions, reservations, agreements, obligations, easements and other provisions set forth in Apartment Deed dated October 28, 1991, recorded November 5, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-151949, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or natural origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c) or Section 515-6, HRS.

17. Any and all easements encumbering the apartment herein mentioned, and/or the common interest appurtenant thereto, as created by or mentioned in said Declaration, as said Declaration may be amended from time to time in accordance with the law and/or in the Apartment Deed, and/or as delineated on said Condominium Map.

### END OF EXHIBIT "A"

# EXHIBIT 2

# EXHIBIT 2

# PROMISSORY NOTE

$550,000.00

Kapaa, Kauai, Hawaii

~~February~~ _____, 2012
March 30

FOR VALUE RECEIVED, GLENN RUDOLFSKY and KIM RUDOLFSKY, as maker, having a mailing address of 2825 Shore Drive, Merrick, New York 11566 (the "Borrower"), hereby unconditionally promise to pay to the order of ERIC R. SAMBOLD, Trustee of the Eric R. Sambold Trust dated September 1, 2002, having a mailing address of 8322 Miramar Mall Road, San Diego, California 92121 (the "Lender"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of FIVE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($550,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Interest Rate (defined below) in accordance with the terms of this Note.

## ARTICLE I

### PAYMENT TERMS

Borrower agrees to pay the entirety of the principal sum and all accrued interest on the six (6) month anniversary of the date of this Note, i.e., ~~August~~ _____, 2012 (the "Maturity Date").
September 30

The interest rate on this Note shall be six percent (6%) per annum.  Interest on the principal sum of this Note shall be calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) a daily rate based on a three hundred sixty (360) day year (that is, the Interest Rate or the Default Rate, as then applicable, divided by 360) by (c) the outstanding principal balance.

## ARTICLE II

### DEFAULT AND ACCELERATION

Borrower covenants and agrees that if (a) any payment required hereunder (other than the payment due on the Maturity Date) is not paid prior to the thirtieth (30th) day after the same is due, or (b) the entire Debt (defined below) is not paid on or before the Maturity Date, or (c) any other Event of Default (as defined in the Mortgage (defined below)) shall occur, then at the option of Lender (i) the whole of the principal sum of this Note, (ii) interest, default interest, late charges and other sums, as provided in this Note and the Mortgage, (iii) all other monies agreed or provided to be paid by Borrower in this Note and the Mortgage, (iv) all sums advanced pursuant to the Mortgage to protect and preserve the Property (defined below) and the lien and the security interest created

thereby, and (v) all sums advanced and costs and expenses incurred by Lender in connection with the Debt or any part thereof or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender (all the sums referred to in (i) through (v) above shall collectively be referred to as the "Debt") shall without notice become immediately due and payable. Whenever any payment to be made under this Note or the Mortgage shall be stated to be due on a day which is not a Business Day (hereinafter defined), the due date thereof shall be the Business Day immediately following such day.  For purposes hereof, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which banks in Honolulu, Hawaii are not open for business.

## ARTICLE III
## DEFAULT INTEREST

Borrower agrees that upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a per annum rate equal to six percent (6%)(the "Default Rate").  The Default Rate shall be computed from the occurrence of the default giving rise to such Event of Default (without regard to any notice or grace period) until the earlier of the date upon which the Event of Default is cured or the date upon which the Debt is paid in full.  Interest calculated at the Default Rate shall be deemed part of the Debt and shall be deemed secured by the Mortgage.  This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

## ARTICLE IV
## LATE CHARGE

If any monthly installment payable under this Note is not paid prior to the fifth (5th) day after the applicable Payment Date, Borrower shall pay to Lender upon demand an amount equal to TWO HUNDRED AND 00/100 DOLLARS ($200.00) to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment and the amount shall be secured by the Mortgage.

## ARTICLE V
## PREPAYMENT

The principal balance of this Note may be prepaid in whole or in part without notice and without penalty.  In such event, any prepayment shall be applied first to fees

and charges, if any, then interest accrued up to the date of prepayment and the remainder shall be applied to principal.

## ARTICLE VI

### SECURITY

This Note is secured by that certain Mortgage dated the date hereof in the principal sum of FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($550,000.00), given by Borrower to (or for the benefit of) Lender covering the real property of Borrower in certain premises located at 4781 B Kahiliholo Road, Kilauea, Kauai, Hawaii 96754, also known by its Tax Map Key Number (4) 5-2-017-024:0002, as more particularly described therein (the "Mortgaged Property") and intended to be duly recorded in the Bureau of Conveyances of the State of Hawaii (the "Mortgage").

## ARTICLE VII

### LOAN CHARGES

This Note and the Mortgage are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay.

## ARTICLE VIII

### WAIVERS

Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note or the Mortgage.  No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note or the Mortgage made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note or the Mortgage.  No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note or the Mortgage.

**ARTICLE IX**

### WAIVER OF TRIAL BY JURY

**BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THIS NOTE, OR THE MORTGAGE OR ANY ACTS OR OMISSIONS OF LENDER OR LENDER'S AGENTS IN CONNECTION THEREWITH.**

**ARTICLE X**

### AUTHORITY

Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note and the Mortgage and that this Note and the Mortgage constitute valid and binding obligations of Borrower.

**ARTICLE XI**

### GOVERNING LAW

This Note shall be governed, construed, applied and enforced in accordance with the laws of the State of Hawaii.

**ARTICLE XII**

### NOTICES

All notices required or permitted hereunder shall be given as provided in the Mortgage.

**ARTICLE XIII**

### INCORPORATION BY REFERENCE

All of the terms, covenants and conditions contained in the Mortgage are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.

**ARTICLE XIV**

## MISCELLANEOUS

(a)   Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable legal fees and disbursements of Lender.  Borrower shall pay to Lender on demand any and all expenses, including legal expenses and reasonable attorneys' fees, incurred or paid by Lender in enforcing this Note, whether or not any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

(b)   This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

(c)   If Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several.

(d)   Whenever used, the singular number shall include the plural, the plural number shall include the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators.

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first above written.

GLENN RUDOLFSKY

KIM RUDOLFSKY
KIM DAPOLITO RUDOLFSKY

# EXHIBIT 3

# EXHIBIT 3



STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
March 30, 2012 8:01 AM
Doc No(s) A-44720040



/s/ NICKI ANN THOMPSON
REGISTRAR

1     1 / 2     nhtk     Conveyance Tax: $4100.00
B-32037313

Return by mail( ) pick-up( )

Tax Map Key No.: **4/ 5-2-017-024, CPR 0002**

## WARRANTY APARTMENT DEED
### (Subject to "As Is" Condition)

THIS WARRANTY APARTMENT DEED (Subject to "As Is" Condition) is dated
2-2-12 . **HOWARD C. SAMUELS, a married man,** of *Los Angeles,*
*California*, hereinafter called the "Grantor", in consideration of the sum of Ten Dollars ($10.00)
and other good and valuable consideration to the Grantor paid by **GLENN RUDOLFSKY and KIM**
**DAPOLITO RUDOLFSKY, husband and wife, whose address is 2825 Shore Drive, Merrick, New**
**York 11566,** hereinafter called the "Grantee", the receipt of which is acknowledged, grants and conveys
unto the Grantee, as **tenants by the entirety, their assigns, and the survivor of the Grantee and his**
**or her heirs, devisees, personal representatives, and assigns,** the property described in the attached
Exhibit "A", hereinafter called the "property".

AND the reversions, remainders, rents, issues and profits and all of the estate, right, title and
interest of the Grantor, both at law and in equity, in and to the property.

TO HAVE AND TO HOLD the property, including the improvements thereon, and all rights,
easements, privileges and appurtenances belonging or appertaining to or held and enjoyed with the
property, unto the Grantee according to the tenancy set forth herein, forever.

1

Grantee acknowledges that the property described in said Exhibit "A" is being conveyed "AS IS" with the knowledge of the conditions disclosed by Grantor and/or discovered during inspection(s) of said property. Grantee understands and agrees that all land and improvements (including but not limited to the roof, walls, foundations, soils, plumbing, electrical and mechanical systems, etc.), real property, and personal property (if any) are being conveyed in their existing "AS IS" CONDITION WITHOUT WARRANTY OR REPRESENTATIONS, EXPRESSED OR IMPLIED. Grantee hereby accepts said property in its "AS IS" condition.

The Grantor covenants with the Grantee that the Grantor is lawfully seised in fee simple of the property and has good right to sell and convey the property; that the property is free and clear of all encumbrances except as set forth herein and except for the lien of real property taxes not yet required by law to be paid; and that the Grantor will warrant and defend the property unto the Grantee against the lawful claims and demands of all persons, except as aforesaid.

The Grantee does hereby covenant and agree, for the benefit of the owners from time to time of all other apartments in the condominium property regime described in Exhibit "A", to observe and perform at all times all terms, covenants, conditions and restrictions set forth in the Declaration and Bylaws referred to in Exhibit "A", as the same may from time to time be amended, on the Grantee's part to be observed and performed, and when required to do so to indemnify and hold and save harmless the Grantor from any failure so to observe and perform any of such terms, covenants, conditions and restrictions.

This instrument and the covenants of the Grantor shall be binding upon the Grantor and inure to the benefit of the Grantee. The terms "Grantor" and "Grantee" as and when used herein, or any pronouns used in place thereof, shall mean and include the singular or plural number, individuals, partnerships, trustees and corporations, and each of their respective heirs, personal representatives, successors in interest and assigns. All covenants and obligations undertaken by two or more persons shall be deemed to be joint and several.

THE PARTIES agree that this instrument may be executed in counterparts, each of which shall be deemed an original, and said counterparts shall together constitute one and the same agreement, binding all parties. For all purposes, including, without limitation, recordation, filing and delivery of this instrument, duplicate unexecuted and acknowledged pages of the counterparts may be discarded and the remaining pages assembled as one document.

IN WITNESS WHEREOF, the Grantor and Grantee have executed this instrument.

_HOWARD C. SAMUELS_
HOWARD C. SAMUELS

Grantor

State of ~~Hawaii~~ _CALIFORNIA_
County of ~~Kauai~~ _Los Angeles_         )
                                         )  SS.

On _February 2, 2012_ , before me personally appeared **HOWARD C. SAMUELS**, to me personally known, did say that such person(s) executed the foregoing instrument as the free act and deed of such person(s), and if applicable, in the capacities shown, having been duly authorized to execute such instrument in such capacities. By my signature below, I further certify that the above-named executed this _____ page document entitled Warranty Apartment Deed (subject to "As Is" condition) dated _____ in the Fifth Circuit of the State of Hawaii and that this acknowledgement is deemed to include my Notary Certification.

_Mel Miyamoto_
Type or print name:
Notary Public, State of ~~Hawaii~~ _California_
My commission expires: _August 4, 2015_

MEL MIYAMOTO
Commission # 1946682
Notary Public - California
Los Angeles County
My Comm. Expires Aug 4, 2015

3

**GLENN RUDOLFSKY**

**KIM DAPOLITO RUDOLFSKY**

Grantee

State of New York        )
County of _Nassau_        )   SS.

On _February 6, 2012_, before me personally appeared **GLENN RUDOLFSKY**, to me personally known, did say that such person(s) executed the foregoing instrument as the free act and deed of such person(s), and if applicable, in the capacities shown, having been duly authorized to execute such instrument in such capacities.

Type or print name: Sandra Tannenbaum
Notary Public, State of New York
My commission expires: _12/31/14_

SANDRA TANNENBAUM
Notary Public, State Of New York
No. 01TA4708921
Qualified In Nassau County
Commission Expires December 31, 2014

State of New York        )
County of _Nassau_        )   SS.

On _February 6, 2012_, before me personally appeared **KIM DAPOLITO RUDOLFSKY**, to me personally known, did say that such person(s) executed the foregoing instrument as the free act and deed of such person(s), and if applicable, in the capacities shown, having been duly authorized to execute such instrument in such capacities.

Type or print name: Sandra Tannenbaum
Notary Public, State of New York
My commission expires: _12/31/14_

SANDRA TANNENBAUM
Notary Public, State Of New York
No. 01TA4708921
Qualified In Nassau County
Commission Expires December 31, 2014

4

**Exhibit "A"**

FIRST:

Apartment Unit No. B of that certain Condominium Project known as "MAUKA LANI", as shown on Condominium Map No. 1531, and described in the Declaration of Condominium Property Regime dated July 5, 1991, recorded July 23, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-098349, as the same may be amended.

TOGETHER WITH all structures located on the limited common element of said unit, easements appurtenant to said apartment established by and described in the Declaration, including the following:

Non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for and support, maintenance and repair of said apartment, in the other common elements for use according to their respective purposes, subject always to the exclusive use of the limited common elements as provided in the Declaration, and in all other apartments and limited common elements of the Project for support.

SECOND:

An undivided twenty percent (20%) interest in all common elements of the project and in the land upon which said project is located as established for said apartment by the Declaration, or such other percentage interest as hereinafter established for said apartment by any amendment of the Declaration as tenant in common with the other owners and tenants thereof.

Being all the property described in APARTMENT DEED recorded February 1, 2006 in the Bureau of Conveyances, State of Hawaii, as Document No. 2006-021174, to HOWARD C. SAMUELS, a married man as his sole and separate property.

THE LAND UPON WHICH SAID CONDOMINIUM IS LOCATED IS DESCRIBED AS FOLLOWS:

All that certain parcel of land situate at Kalihiwai, Hanalei, Island and County of Kauai, State of Hawaii, described as follows:

Lot 24, area 25.451 acres, more or less, as delineated on the map entitled "KALIHIWAI RIDGE SUBDIVISION", which said map was filed in the Bureau of Conveyances of the State of Hawaii as File Plan No. 1934.

Subject to the following:

1.   Title to all minerals, and metallic mines reserved to the State of Hawaii.

2.   A 150-foot building setback and drainage way as shown on File Plan No. 1934.

3.   A 15-foot building setback and drainage way as shown on File Plan No. 1934.

4.   Easement "E-7" (area 44 square feet), for electrical purposes, as shown on File Plan No. 1934.

5

5. AGREEMENT executed by STATE OF HAWAII, and between C. BREWER AND COMPANY, LIMITED, on the terms, covenants and conditions contained therein, dated March 16, 1977, recorded in the Bureau of Conveyances, State of Hawaii, in Book 12110, Page 330, regarding use of the land described herein, besides other land, for agricultural purposes.

6. Covenants, Conditions and Restrictions, but omitting any covenants or restrictions if any, based upon race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons, as provided in DECLARATION dated October 3, 1988, recorded in the Bureau of Conveyances, State of Hawaii, in Book 22452, Page 429, as amended.

7. Unrecorded KALIHIWAI RIDGE ENVIRONMENTAL DESIGN RULES AND GUIDELINES PURSUANT TO DECLARATION OF PROTECTIVE COVENANTS, CONDITIONS AND RESTRICTIONS FOR KALIHIWAI RIDGE dated October 12, 1988.

8. AGREEMENT TO INCORPORATE AGRICULTURAL RESTRICTIONS INTO INSTRUMENTS OF CONVEYANCE, executed by C. BREWER PROPERTIES, INC., a Hawaii corporation, and between COUNTY OF KAUAI PLANNING DEPARTMENT, on the terms, covenants and conditions contained therein, dated September 30, 1988, recorded in the Bureau of Conveyances, State of Hawaii, in Book 22452, Page 491.

9. Covenants, conditions, restrictions, reservations, agreements, obligations, easements and other provisions set forth in DEED dated November 1, 1988, recorded in the Bureau of Conveyances, State of Hawaii, in Book 22555, Page 521, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or natural origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c) or Section 515-6, HRS.

10. Agreement for FARM DWELLING, executed by STEVEN T. ROUSH, MARY GAY ROUSH, MICHAEL E. MAYS, MEREDITH S. MURPHY, HOLT H. BLANCHARD, and EARL L. SIMPSON, "Applicants", and between COUNTY OF KAUAI Planning Department, "Department", on the terms, covenants and conditions contained therein, dated April 3, 1990, recorded in the Bureau of Conveyances, State of Hawaii, as Document No. 90-069221 (re-recorded as Document Nos. 90-070741 and 91-144797).

11. An easement affecting that portion of said land and for the purposes stated herein and incidental purposes as provided in GRANT, granted to CITIZENS UTILITIES COMPANY, for a perpetual nonexclusive easement to build, construct, reconstruct, rebuild, repair, maintain and operate electrical transformers and underground lines, etc., for the transmission and distribution of electricity, etc., dated July 5, 1990, recorded in the Bureau of Conveyances, State of Hawaii, as Document No. 90-151401.

12. Condominium Map No. 1531, filed in the Bureau of Conveyances, State of Hawaii.

13. Matters in an instrument that, among other things, contain or provide for easements, assessments, liens and their subordination; provisions relating to partition, restrictions on severability of component interest, covenants, conditions and restrictions, provision that no violation thereof and no enforcement of any lien provided for therein shall defeat or render invalid the lien of a mortgage or deed of trust made in good faith and for value, but omitting any covenants or restrictions if any, based upon race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons, as set forth in *Declaration of Condominium Property Regime* recorded July 23, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-098349, as amended.

14. By-Laws of the Association of Apartment Owners of MAUKA LANI, recorded July 23, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-098350.

15. An easement affecting that portion of said land and for the purposes stated herein and incidental purposes as provided in GRANT, granted to CITIZENS UTILITIES COMPANY, for a perpetual right and easement to build, construct, reconstruct, rebuild, repair, maintain and operate pole and wire lines and/or underground lines, etc. for the transmission and distribution of electricity, etc., dated December 21, 1990, recorded March 11, 1992 in the Bureau of Conveyances, State of Hawaii, as Document No. 92-035491.

16. Covenants, conditions, restrictions, reservations, agreements, obligations, easements and other provisions set forth in Apartment Deed dated October 28, 1991, recorded November 5, 1991 in the Bureau of Conveyances, State of Hawaii, as Document No. 91-151949, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or natural origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c) or Section 515-6, HRS.

17. Any and all easements encumbering the apartment herein mentioned, and/or the common interest appurtenant thereto, as created by or mentioned in said Declaration, as said Declaration may be amended from time to time in accordance with the law and/or in the Apartment Deed, and/or as delineated on said Condominium Map.

TOGETHER ALSO WITH all built-in furniture, attached existing fixtures, built-in appliances, water heater, electrical and/or gas and plumbing fixtures, attached carpeting, disposal, pool equipment (all), TV cable outlet, ceiling fan, dryer, range, smoke detectors, washer, existing window coverings, dishwasher and refrigerator, presently situate in or used in connection with the residence located upon the above described real property.

**End of Exhibit "A"**