ELIZABETH J. FOLEY
NEVADA BAR 1509
ELIZABETH J. FOLEY LAWYER, LTD.
601 So. Rancho Drive, Suite A-1
Las Vegas, Nevada   89106
Phone: (702) 363-2323
Fax: (702)380-4035
Email: Efoleylawyer@gmail.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAX RUHLMANN and ERIC SAMBOLD, | CASE NO.: 2:14-cv-00879-RFB-NJK |
| Plaintiffs, | |
| v. | |
| GLENN RUDOLFSKY, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII; KIM D. RUDOLFSKY, AKA KIMI DAPOLITO, individually; and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

The Plaintiffs, Max Ruhlmann and Eric Sambold, (collectively "Plaintiffs") by and through their counsel, ELIZABETH J. FOLEY, respectfully oppose the Defendants' Motion to Dismiss this matter pursuant to the statute of frauds and for failure to plead fraud with specificity. Plaintiffs base this Opposition on the pleadings and documents on file herein, the Points and Authorities set forth below, and the oral argument of counsel, if any.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**OVERVIEW AND REQUESTED RELIEF**

The parties communicated primarily by email due to their diverse residences. Mr. Ruhlmann sent and received emails from Nevada, Mr. Sambold sent and received emails from

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

California and the Rudolfskys sent email and post office correspondence from New York. Appendices of email writings were submitted to the Court in conjunction with the Defendants' first Motion to Dismiss. Documents 19-1; Document 36-1 through 36-13.

The terms of the joint venture agreement are set forth in many email writings and other written correspondence. The statute of frauds has no application to this case based on the existence of such writings and the doctrine of part performance. The Defendants were able to understand the allegations of the Plaintiff's ten page Complaint filed herein on June 6, 2014, well enough to file their own Complaint addressing the same issues in Hawaii, which was dismissed on October 9, 2015. (See Exhibit 1 hereto, Defendants' Hawaii Complaint and Order of Dismissal). The Plaintiffs request that they be allowed to amend their Complaint after initial discovery has been completed. Plaintiffs respectfully request denial of the instant Motion to Dismiss.

## II.

## FACTS RELEVANT TO THIS MOTION

Plaintiffs and Defendants agreed to the terms of a joint venture under which a five-acre property on the Hawaiian Island of Kauai was to be purchased, improved, and rented to vacationers for profit. This property, know as "Ke Aloha," was purchased using capital from Plaintiffs Ruhlmann and Sambold and Defendant Rudolfsky. The purchase was made with the understanding that Plaintiffs would be 50% ownership of the Ke Aloha property and would receive distributions of profits according to this one-half interest. At the time of their investment, Plaintiffs also believed they had agreed with Defendants that profits from renting the property and the property itself, would be held by a Limited Liability Company (LLC) (in which Rudolfsky and Plaintiffs would be members) and then paid out as distributions according to each member's share. Plaintiffs invested $550,000 into the alleged joint venture. To date, Defendants have not placed title to the Ke Aloha property in the LLC. Compl. 7-17.

ELIZABETH I. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 • Fax: (702) 380-4035

In September and October of 2011, Rudolfsky sent Ruhlmann several e-mails asking whether Ruhlmann would be interested in investing in the Ke Aloha property. (Aff of "Max" Ruhlmann 6-8, Opp'n Mot. Dismiss, Aug. 28, 2014, ECF No. 18 ("Ruhlmann Aff.").)  On October 6, 2011, Mr. Rudolfsky informed Mr. Ruhlmann that he could not personally qualify for financing to purchase the Ke Aloha property without other investors because lenders regarded his income as a commodity trader as speculative.  (Document 36-3).  Ruhlmann and Rudolfsky had a telephone conversation about the potential investment on October 9, 2011.  On December 20, 2011, Rudolfsky e-mailed Ruhlmann saying that Rudolfsky's bid for the property had been accepted and giving more details on the property, including projected rental income.  In this e-mail, Rudolfsky also stated that he would consider traveling to Las Vegas, Nevada to meet with Ruhlmann so the two could get to know each other.   Ruhlmann then informed Rudolfsky that he intended to involve Sambold in the discussions as well.

On December 26, 2011, Rudolfsky e-mailed Ruhlmann asking whether he and Sambold would be able to meet in Las Vegas the weekend of January 5, 2012.  On approximately January 6-7, 2012, both Plaintiffs and both Defendants met in Las Vegas.  During that meeting, Plaintiffs and Defendants agreed that they would each contribute half of the money for the Ke Aloha property.  Ruhlmann states that Kim Rudolfsky (Glenn Rudolfsky's wife) participated in the Las Vegas meeting, that she served as the bookkeeper for Glenn Rudolfsky's real estate interests, and that she is listed on the Ke Aloha deed.  Thereafter, on January 27, 2011, Rudolfsky informed Plaintiffs in an e-mail that it would not be possible to have names other than his and Kim Rudolfsky's on the deed at closing.

Ruhlmann contacted his attorney in Las Vegas in February 2012 to inquire about forming a Limited Liability Company (LLC) in which Plaintiffs anticipated the Ke Aloha property would be placed after closing.  On February 22, 2012, Ruhlmann sent an e-mail to Rudolfsky and Sambold and enclosed a document entitled "Plans for Ke Aloha."  In this document, item 2 stated "Form a Nevada LLC" and item 3 stated "Name Glenn as Manager and Glenn, Eric and Max as

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

members."  In his e-mail, Ruhlmann stated that once Rudolfsky and Sambold had reviewed the document and had the opportunity to make changes to it, Ruhlmann would send it to his attorney to create an LLC.

On March 4, 2012, Rudolfsky wrote to Sambold stating that he "[did] not see much in the way of differences" in his first reading of the "Plans for Ke Aloha" document, but that he would review it again in detail. Rudolfsky then e-mailed Ruhlmann and Sambold on March 13, 2012, stating "I have reviewed the LLC suggestions from [Ruhlmann] and added my input as well." Rudolfsky attached an edited version of the "Plans for Ke Aloha" document to this e-mail.  Next to item 2 ("Form a Nevada LLC") and item 3 ("Name Glenn as Manager and Glenn, Eric and Max as members"), Rudolfsky wrote "Good."

The next day, on March 14, 2014, Ruhlmann e-mailed Rudolfsky and Sambold stating that he intended to revise the "Plans for Ke Aloha" document according to what they had agreed on.  Rudolfsky responded, indicating that his lawyer would be available to rewrite the document and stating, "You can form the LLC in Vegas but at least we will not have to pay the extra legal fees."  Rudolfsky, through e-mail, requested an update on the status of the LLC on May 22, 2013. The next day, Ruhlmann sent an e-mail asking Sambold and Rudolfsky to give the addresses they wanted to be listed with the LLC and whether they had preferences for the name.  Rudolfsky replied, stating that he did not have a preference for the name and providing his New York home address for the LLC.

On September 7, 2013, Ruhlmann instructed his attorney to file with the Nevada Secretary of State to open Ke Aloha LLC, and to list Rudolfsky as manager and Rudolfsky, Ruhlmann, and Sambold as members.  Rudolfsky was to have 50% share, while Ruhlmann and Sambold were to each have a 25% share.  Ruhlmann e-mailed Rudolfsky on September 18, 2012, informing him that LLCs registered in Nevada had to have an English translation for their names and proposing "the loved one" as a translation.  Rudolfsky replied the next day, approving the suggested translation.  That same day, on September 29, 2012, the Articles of Organization for

- 4 -

Ke Aloha LLC were filed with the Nevada Secretary of State.

Throughout 2013, Rudolfsky sent shareholders reports to Ruhlmann regarding the Ke Aloha property. In March 2014, Rudolfsky informed Ruhlmann and Sambold that he was raising his management fee from 20% to 25% and that Kim Rudolfsky would receive a bonus out of the Ke Aloha funds. Ruhlmann states that thereafter, Rudolfsky began resisting Plaintiffs' attempts to add their names to the Ke Aloha deed or have the property conveyed to the Nevada LLC. Rudolfsky has also refused Plaintiffs' demand for an accounting and has kept the Ke Aloha funds in his own personal bank account. (Document 39, Order, pages 2-5).

On June 6, 2014, Plaintiffs filed a Complaint against Defendants in this Court, alleging that Defendants failed to transfer title to the Ke Aloha property to the Ke Aloha, LLC as originally agreed. In their Complaint, Plaintiffs allege the following causes of action: Breach of Joint Venture Agreement; Unjust Enrichment; Fraud in the Inducement; and Breach of the Implied Covenant of Good Faith and Fair Dealing. Plaintiffs also seek an accounting for profits of the joint venture agreement as well as specific performance of the agreement. On September 29, 2015, this Court denied Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. Defendants changed counsel and filed a second Motion to Dismiss.

### III.

### ARGUMENT

**A.  Legal Standard for Federal Rule of Civil Procedure 12(b)(6) Motion.**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bill Atlantic Corp. V. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, 949 (2007)).

Plaintiff is not required to provide "detailed factual allegations" in the complaint, but

**ELIZABETH J. FOLEY**
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

must assert "more than labels and conclusions" and more than "a formulaic recitation of the

elements of a cause of action." Bell Atlantic Corp. V. Twombly, 550 U.S. at 555, 127 S.Ct.

1955.  In addition, the facts pled in the complaint "must be enough to raise a right to relief above

the speculative level on the assumption that all the allegations in the complaint are true. Id. A

district court considering a Rule 12(b)(6) motion must accept all factual allegations in the

complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party.

ATSI Commc'ns, Inc. V. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Burnette v.

Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  The Ninth Circuit addressed the Post v. Iqbal

pleading standards in the Starr v. Baca, 652 F3d 1202 (9th Cir. 2011) to require sufficient

allegations of underlying faces to give fair notice and to enable the opposing party to defend

itself.  Additionally, the factual allegations taken as true must plausibly suggest an entitlement to

relief such that it is not unfair to proceed to discovery.


**B. The Part Performance and Estoppel Doctrines Operates to Preclude Application
of the Statute of Frauds.**

The Nevada Supreme Court has applied the doctrines of equitable estoppel and part

performance as a defense against the statute of frauds.  Edwards Industries, Inc. vs. DTE/BTE,

Inc., 112 Nev. 1025, 923 P.2d 569 (1996).  The statute of frauds has been held "inapplicable

where partial performance of an alleged oral agreement occurs".  Nelson vs. Elway, 908 P.2d

102, 116 (Colo. 1995).

The Original statute of frauds adopted by England's parliament in 1677 was entitled an

"Act for Prevention of Frauds and Perjuries".  The act represented a forceful effort to prevent the

perpetration of fraud by the device of perjury.  6 W. Holdsworth, A History of English Law, 379-

97 (1924).  American courts have developed such doctrines as equitable estoppel and part

performance to prevent the statute of frauds from becoming itself a means to perpetrate fraud.

Kiely vs. St. Germain, 670 P.2d 764 (Colo. 1983).

In the instant case, the Plaintiffs have already invested five hundred fifty thousand ($550,000) dollars to purchase their one-half interest in a vacation rental property and business. In 2013, Glenn Rudolfsky estimated that the real estate alone, associated with Ke Aloha, had escalated to 1.8 million dollars, which would have meant a profit to the investors of $775,000. There has been very significant performance on the part of the Plaintiffs, which would defeat the Defendants' statute of frauds defense.  Moreover, the email writings are sufficient to establish the terms of the parties agreement.

The partial performance must be substantial and fairly referable to no other theory besides that contained within the oral agreement.  Nelson vs. Elway, 908 P.2d 102, 108 (Colo. 1995). Mr. Sambold stated in emails that the mortgage was simply a bridge until the Limited Liability Company could be formed.  He only wired the five hundred fifty thousand ($550,000) dollars after he made it clear that he was not simply lending five hundred fifty thousand ($550,000) dollars.

The Defendants here are attempting to utilize the statute of frauds as a means to perpetuity fraud.  The value of the Ke Aloha property has increased dramatically since the purchase at the short sale.  Mr. Rudolfsky estimated that the property alone was worth 1.8 million in 2013.  The Defendants are fraudulently attempting to convert Defendants' fifty percent joint venture equity in the property and business to a mortgage in the amount of $550,000.00 It was expressly stated that a mortgage was not intended and that the mortgage was simply a bridge until the LLC could be formed.

Mr. Sambold emailed Mr. Rudolfsky and Mr. Ruhlmann on February 6, 2012 at 2:23 pm stating "This mortgage is simply a bridge until we have a formal structure like an LLC and have decided how the title will be held". (Document 36-8).  Mr. Rudolfsky emailed Mr. Sambold (and Mr. Ruhlmann) on February 6, 2012 at 3:45 pm, "I had though[t] we were just going to quitclaim you and Max onto the house at the closing.  (Document 36-8).  Mr. Sambold responded on February 6, 2012 at 4:49 pm, "Neither Max nor me are in this to lend money at 8%, we want to

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

- 7 -

**ELIZABETH J. FOLEY**
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

be in the vacation rental business". (Document 36-8).  Mr. Sambold specifically wrote to Mr. Rudolfsky on March 13, 2012, "Glenn, as long as we have the understanding that we have a partnership interest and are not just providing a low interest loan, I see no problem in proceeding".  (Document 36-9).  On March 13, 2012, Mr. Rudolfsky agreed in an email writing to form the Nevada Limited Liability Company, with Glenn Rudolfsky as Manager and Member and the Plaintiffs each as Members.

The Defendants forwarded checks to both Plaintiffs for their respective shares of the rental income generated until May 27, 2014 when Mr. Rudolfsky first took the position that the checks were payment for the mortgage.  See Appendix Document 19-1, pages 69-94.  Mr. Rudolfsky's memo to Mr. Sambold regarding the payments being made for the mortgage was accompanied by a check written and signed by Mrs. Rudolfsky.  See Exhibit 2 hereto.  The partial performance by both parties estop the Defendants from using the statute of frauds as a defense in this case.

**C.  Writings Sufficient to Satisfy the Statute of Frauds are Contained in the Emails Between the Parties.**

The statute of frauds is satisfied by evidence of the existence and terms of an allegedly written agreement.  Khan vs. Bakhsh, 129 Nev. Adv Op 57, 306 P.3d 411 (2013).  The parties agreement to enter into a joint venture to acquire and rent a vacation property in Hawaii was documented by myriad email writings.

It has been held by numerous courts that "emails" qualify as "writings" of a kind sufficient to satisfy the statute of frauds.  In re East Airport Development, LLC, 443 B.R. 823 (9th Cir. BAP (Cal) 2011). M. West, Inc. v. Oak Park Mall, LLC, 234 P.3d 833 (Kan. App. 2010). Payoutone v. Coral Mortgage Bankers, 602 F. Supp. 2d 1219 (D. Colo. 2009).  By contrast, an oral contract is one in which a promissor's undertaking is expressed in words which are not reduced to writing.  Firchau vs. Diamond National Corp., 345 F2d 269 (9th Cir. 1965).

The statute of frauds does not require the existence of a formal written contract to

validate a land sale transaction so long as some "note or memorandum" memorializing the transaction exists. Hanneman vs. Downer, 110 Nev. 167, 871 p.2d 279 (1994). Separate writings, considered together, may satisfy statute of frauds even if neither is a sufficient memorandum itself. Pay Motor Lodge vs. Shatz, 80 Nev. 114, 390 P.2d 42, 44 (1964).

In Hanneman vs. Downer, the District Court concluded that the property description in the sales listing "together with the surrounding circumstances of the land sale transaction, created a contract for sale of 5.88 acres". The Nevada Supreme Court in Hanneman considered all of the writings together as satisfying the statute of frauds and evidence of a contract for the sale of the subject property. See also Daniel vs. Hiegel, 96 Nev. 456, 611 P.2d 207 (1980).

The Nevada Supreme Court in Haspray vs. Pasarelli, 79 Nev. 203, 380 P.2d Ala. (1963), allowed the statute of frauds to be avoided by two separate documents which did not expressly refer to each other. Where memoranda refer to the same subject matter or transaction, more than one writing may be used to satisfy the statute of frauds. Pentax Corp. Vs. Boyd, 111 Nev. 1296, 904 P.2d 1024 (1995). Two handwritten documents, when construed together, were deemed sufficient to create an interest in real property which would satisfy the statute of frauds. Butler vs. Lovell, 96 Nev. 931, 620 P.2d 1251 (N3v. 1980). The emails between the parties in this case, together with the Plans for Ke Aloha memorandum were sufficient to satisfy the statute of frauds.

### D. The Plaintiffs Have Sufficiently Stated a Plausible Fraud in the Inducement Claim.

The Complaint contains more than twenty-three paragraphs pleading fraud in the inducement.

1. On or about September 26, 2011, Defendant GLENN RUDOLFSKY contacted Plaintiff MAX RUHLMANN and proposed a joint venture to purchase a five acre Kalihiwai Ridge Estate on the Hawaiian Island of Kauai for $1,025,000 (One Million Twenty-Five Thousand Dollars). Rudolfsky stated: "I am willing to sell up to 50% of the property".

- 9 -

2.  It was agreed between the Plaintiffs and the Defendant GLENN RUDOLFSKY that the joint venture to purchase, own, renovate, and rent the five acre Kauai estate would operate through a Nevada Limited Liability Company in which they would all share ownership of the estate through the limited liability company.

3.  The Plaintiffs and Defendant GLENN RUDOLFSKY agreed that the Nevada Limited Liability Company, which would hold the title to the five acre Kauai estate would be named Ke Aloha, LLC and that Defendant GLENN RUDOLFSKY and the Plaintiffs would all be members of the Ke Aloha, LLC.

4.  The Nevada Ke Aloha, LLC was to be funded with equal amounts from the Defendants and from the Plaintiffs.

5.  Cash Distributions of profits were to be paid quarterly to the members of the LLC proportionally based upon their shares.

6.  Defendants were to handle the day to day management of rentals for fees to be paid by the Limited Liability Company.

7.  On March 13, 2012, Defendant GLENN RUDOLFSKY agreed to the Nevada LLC structure outlined above.

8.  The Plaintiffs invested $550,000 (Five Hundred Fifty Thousand Dollars) into the joint venture with the understanding that Plaintiffs would own half of the five acre Kalihiwai Ridge Estate.

9.  The Plaintiffs only agreed to having the five acre estate initially titled in the Defendants' names because Defendant GLENN RUDOLFSKY wrote to Plaintiffs on January 27, 2012 stating that the title company would only allow the Defendants, who were the original bidders in the short sale, to be on the title at closing, but that title could be transferred to the Plaintiff, ERIC SAMBOLD, at closing for an additional fee of $230.00 (Two Hundred Thirty Dollars).

**ELIZABETH J. FOLEY**
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

- 10 -

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

10.  The Defendants met with Plaintiffs in Las Vegas in January of  2012, and shook hands on the joint venture to purchase together the five acre estate on Hawaii.

11.  The Defendants have failed to place the Kauai estate in the name of the Nevada LLC.

12.  Prior to the closing of the short sale, a bridge mortgage was executed and recorded until the formal structure, the limited liability company, was finalized to hold the title to the Kauai estate.

13.  Plaintiffs have made demand on Defendants for an accounting of the profits and for Plaintiff's one half interest in the proceeds received by the Defendants, but Defendants have failed and refused and still fail and refuse to account for such proceeds or to pay the Plaintiffs' just share of such proceeds to Plaintiffs.

14.  Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 38 of the Complaint as though fully set forth herein.

15.  Defendants falsely and fraudulently represented to the Plaintiffs that they would receive one half of the interest in a five acre Kauai estate by paying the amount of $550,000 (Five Hundred Fifty Thousand Dollars), which was to be utilized to purchase the property through a short sale.

16.  The representations made by the Defendants were false in that Defendants never intended to convey to the Plaintiffs their half interest in the Kauai property.

17.  When the Defendants made these representations, Defendants knew them to be false, and these representations were made by the Defendants with the intent to defraud and deceive the Plaintiffs and with the intent to induce the Plaintiffs to forward to the Defendants the sum of  $550,000 (Five Hundred Fifty Thousand Dollars).  At the time Defendants made the promises to Plaintiffs, Defendants had no intention of performing them.

18.  Plaintiffs, at the time these representations were made by Defendants, and at

- 11 -

the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and believed them to be true.

19.  At the time when the Plaintiffs forwarded to the Defendants the $550,000 (Five Hundred Fifty Thousand Dollars) to purchase the Kauai estate, Plaintiffs were ignorant of Defendants' secret intention not to perform the Joint Venture and Plaintiffs could not in the exercise of reasonable diligence have discovered Defendants' secret intention.

20.  In reliance on Dependants' representations that Plaintiffs would own half of the Kauai estate purchased with their $550,000 (Five Hundred Fifty Thousand Dollars), Plaintiffs were induced to and did forward the funds to the Defendants and cause the Ke Aloha, LLC to be formed in Nevada to hold title to the Kauai estate.

21.  Had Plaintiffs known the actual intentions of Defendants, Plaintiffs would not have forwarded any funds to the Defendants.

22.  As a proximate result of Defendants fraud and deceit and the facts herein alleged, Plaintiffs have been damaged in an amount exceeding $550,000 (Five Hundred Fifty Thousand Dollars).

23.  In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiffs are entitled to punitive damages in excess of $75,000.00 (Seventy-Five Thousand Dollars).

The Complaint devotes more than twenty-three paragraphs stating how the Defendants induced the Plaintiffs to invest $550,000 for a one-half interest in a vacation rental business. There is indeed  pleading regarding every element of fraud in the inducement as set forth in the Nevada case of A. Jones Construction Co. vs. Lehrer McGovern Bovis, Inc., 120 Nev. 27 (2004). Nevada is a notice pleading state, not a claim pleading state.  Nevada Rule of Civil Procedure 8(e)1 specifies: "No technical forms of pleading are required".

The Plaintiffs will be able to describe the Defendants' fraud with even greater

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

particularity after discovery.  Where the details of the fraud are in Defendants' control, as in this case, a Plaintiff is not required to plead with an inordinate degree of particularity prior to undertaking discovery.  Rocker vs. KPMG, 122 Nev. 1185, 148 P.3d 703 (2006), abrogated on other grounds in Buzz Stew vs. NLV, 124 Nev. 224, 181 P.3d 670 (2008).

The Plaintiffs will be better able to describe Mrs. Rudolfsky's precise involvement in the fraudulent scheme after taking her deposition.  Clearly, the documents indicate that Plaintiffs were told she would be acting as the bookkeeper for the Ke Aloha, LLC.  Mrs. Rudolfsky signed the May 27, 2014 uncashed check, in which the Defendants state for the first time that Plaintiffs investment of $550,000 in the Ke Aloha joint venture was simply a mortgage loan.  See Exhibit 2 hereto.

### E.  Amendment Should be Allowed Rather Than Dismissal.

The Defendants failed to file a motion for more definite statement in their initial responsive motion.  The Defendants elected not to file a Motion for a More Definite Statement pursuant to Fed Rule of Civil Procedure 12(e) when they filed their initial responsive motion to the Complaint in 2014.  When a complaint is too vague and ambiguous for defendants to respond to, a party may request a more definite statement prior to pleading, but must point out the defects complained of and the details desired.  If the Court orders a more definite statement, the Plaintiff is given fourteen days to provide the additional detail.  Instead, Defendants elected to challenge this Court's jurisdiction, stay discovery, and file a State Court action in Hawaii.  A copy of the Pleading filed in response to the Court's Complaint in Hawaii is attached hereto as Exhibit 1.  By failing to file a motion for more definite statement in its initial response, and electing to file its own pleading, the Defendants conceded that the Complaint was sufficient.

Moreover, in response to Defendants' first Motion to Dismiss, numerous documents and Plaintiff's Affidavits have been filed which further flush out the fraud for which redress is sought in the 2014 Complaint.  When documents are filed to rebut a motion to dismiss for failure to

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

- 13 -

state a claim, the motion to dismiss becomes a motion for summary judgment.  Fed Rule of Civil

Procedure 12(d).  Clearly, triable issues of fact have been raised.


### F.  Defendants Demand Details Already in the Record of This Court.

Defendants complain that paragraph 13 alleges a March 13, 2012 communication without

the required location or recipient of the communication.  The March 13, 2012 email from

Rudolfsky to the Plaintiffs referred to a paragraph which is on file with this Court as Document

36-11.  Plaintiffs provided a detailed explanation concerning that e-mail to the Court and all

parties in their Brief filed on July 27, 2015 as Document 36, pages 8-9.  The detailed explanation

already on file is as follows:

Mr. Ruhlmann exchanged a series of emails with Mr. Rudolfsky which led to the

formation of the Nevada Limited Liability Company which was entitled "Ke Aloha".  Mr.

Ruhlmann, from his computer in Las Vegas, sent Mr. Rudolfsky and Mr. Sambold an email on

February 22, 2012 entitled "plans for Ke Aloha".  Mr. Ruhlmann clearly state, "Guys, I have

written a draft of a memo for us to submit to the attorney so that he can create an LLC agreement

for us".  (Document 36-10).

Further emails were exchanged which provided as follows:

On February 23, 2012 at 4:16 p.m., Mr. Ruhlmann asked Mr. Rudolfsky and Mr.

Sambold, "Can you guys give me a quick approval to go ahead with the LLC?  Any thoughts on

the name?"  (Document 36-10).  On February 27, 2012, Mr. Rudolfsky provided Mr. Ruhlmann

his Social Security number for the Nevada LLC employer identification number.

On March 13, 2012 at 5:28 p.m., Mr. Rudolfsky emailed Mr. Ruhlmann and Mr. Sambold

stating, "Aloha Gentlemen, I have reviewed the LLC suggestions from Max and added my input

as well.  Kindly review my thoughts and share any opinions you have as well". (Document 36-9).

Attached to Mr. Rudolfsky's March 13, 2012 email is the document drafted by Mr.

- 14 -

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

Ruhlmann entitled, "Plans for Ke Aloha".  The original "Plans for Ke Aloha" document is in

black with Mr. Rudolfsky's comments in red. (Document 36-11, pages 49-55).

Item No. 2 states, "Form a Nevada LLC (Ke Aloha, LLC) to which Mr. Rudolfsky's

response is "Good". (Document 36-11, pages 49-55).

The March 13, 2012 email referenced in Paragraph 13 of the Complaint is on file as

Document 36-9.  The email shows that it was sent from Defendants'

HouseofDreamsKauai@mac.com account.  Mr. Rudolfsky was at some location, known only to

him, where he had access to this email account.  Mr. Rudolfsky's physical location when he sent

the email, if it even matters, is detail within his control.  See Rocker vs KMG. The Plaintiff may

not fairly be required to prove knowledge solely within Defendants' control.

Paragraph 9 of the Complaint refers to Document 36-11, the Plans for Ke Aloha

memorandum and further emails discussing the name of the LLC being named Ke Aloha in

detail.  The dates of such emails are contained in the Appendix filed in Opposition to

Defendants' First Motion to Dismiss. (Document 19-1, see RS67).  The emails discussing the

name are dated September 18 and 19, 2012 and are between Max Ruhlmann in Nevada and

Glenn Rudolfsky at whatever location he was that day.  Defendants appear to have sought these

"details" only to delay this case.

A Motion for a More Definite Statement is generally disfavored because of its dilatory

effect; it is designed to strike at unintelligibility rather than want of detail and allegations that are

unclear due to a lack of specificity are more appropriately clarified by discovery rather than an

order for a more definite statement.  FRCP 12(e) 28 USCA.  In re European Rail Pass Antitrust

Litigation, 166 F. Supp. 2d 836 (SDNY 2001).

A motion for more definite statement should not be granted unless the Complaint is so

excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant

seriously in attempting to answer it.  EEOC v. FPM Group, Ltd., 657 F. Supp. 2d 957 (ED Tenn.

2009).

Allegations of date, place, or time are sufficient, but not necessary, to satisfy Rule 9(b). Plaintiffs need only include some precision and some measure of substantiation in pleading fraud. Gutman v. Howard Sav. Bank, 748 F. Supp. 254 (DNJ 1990).  Allegations that Defendants conduct constituted intentional fraud upon Plaintiffs is sufficient to comply with Rule 9(b). Miller vs. Bargain City USA, Inc., 229 F. Supp. 33 (EDPA 1964).  Motions for more definite statement in fraud action will be denied where it seeks more definite evidentiary facts which could and should be obtained by discovery.  United Ins. Co. Of America vs. BW Rudy, Inc, 42 FRD 398 (EDPA 1967).

Rule 9(b) only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.  Walling vs. Beverly Enterprises, 479 F.2d 257 (9th Cir. 1973).  The Federal Rules of Civil Procedure and the Nevada Rules of Civil Procedure merely require notice pleading.  The pleading contained in official Form 13, Complaint on Claim for Debit and to Set Aside Fraudulent Conveyance Under Rule 18(b), paragraph 4, clearly illustrates that the Federal Rules merely require notice pleading. Powell vs. Abney 20 Fed Rules Serv 2d 263, 83 FRD 482 (SDTX 1979). "Defendant C.D. on or about _____ conveyed all his property, real and personal [or specify and describe] to Defendant EF for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to."

**G.   Plaintiffs Will Amend the Complaint After Discovery to Provide Detail Concerning the House of Dreams Defendants.**

House of Dreams Kauai, Inc., is a New York Corporation of which Glenn Rudolfsky is the Chief Executive Officer.  See Exhibit 3 from the New York State Division of Corporations. Mr. Rudolfsky can provide his own defense counsel with any information concerning this corporation as it is within his own knowledge or possession.  Rocker vs. KPMG, 148 P.3d 703.

Similarly, Mr. Rudolfsky and Mrs. Rudolfsky can explain why they do business under the name House of Dreams Hawaii.  Plaintiffs would respectfully request that they be allowed to

amend with respect of the House of Dreams Defendants after obtaining discovery from the Defendants.

### H.  Partnership Law is Not Applicable to This Joint Venture/LLC.

The Complaint alleges only that the parties relationship was that of a joint venture.  The requirements for a joint venture are defined in <u>Hook vs. Giuricich</u>, 108 Nev. 29, 823 P.2d 294, (1992) and are distinguishable from a partnership on numerous counts.  A Nevada joint venture is defined as follows:

> This court has defined a joint venture as "a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses."  <u>Bruttomesso vs. Las Vegas Met. Police</u>, 95 Nev. 151, 154, 591 P.2d 254, 256 (1979).  A joint venture is a less formal relationship than a partnership and is typically an association entered into to perform a more limited business objective for a more brief period of time.  <u>Fredrickson v. Kluever</u>, 82 S.D. 579, 152 N.W.2d 346, 348 (1967).  A joint venture is less permanent than a partnership and is usually limited to a single business project.  <u>Baker Farmers Co. V. Harter</u>, 28 Ill App. 3d 393, 328 N.E.2d 369, 372, cert. Denied, 423 U.S. 928 (1975).

Partnership law is not applicable to this joint venture which was to be formalized as a Limited Liability Company.  The <u>Hook v. Giuricich</u> case defined joint venture and determined that triable issues of fact remained for resolution on remand.  In this case, the joint venture property was to be held in an LLC.  Partnership was never contemplated and the partnership statutes and cases have no applicability.  The Uniform Partnership Act provides that "any association formed under any other statue of this state is not a partnership under NRS 87.016 to 87.430.  Nev Rev Stat 87.060(2).  See <u>Borol vs. Platinum Condominium Development</u>, (U.S. District Court Nev., July 10, 2012).

...
...
...
...
...
...

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ELIZABETH J. FOLEY**
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 • Fax: (702) 380-4035

**IV.**

**CONCLUSION**

The Defendants' Motion to Dismiss for Failure to State a Claim should respectfully be denied on the following grounds:

1. There are numerous material issues of fact and law pursuant to Federal Rule of Civil Procedure 56 which would preclude the granting of the Defendants' Motion;

2. There are multiple writings between the parties which, when construed together, show the terms of a valid contract for the Plaintiffs to acquire a fifty percent interest in the five-acre estate and the vacation rental business associated with the Ke Aloha property;

3. The doctrines of estoppel and partial performance are present in this case and can overcome the statute of frauds defense;

4. The Complaint is pled with sufficient particularity to provide the Defendants with notice of the claim sufficient for Defendants to plead, once again, in response to the Complaint;

5. If a more definite statement is required, the Plaintiffs should be permitted to amend the Complaint after discovery has been completed as to matters under the Defendants' control;

6. Partnership law should not be applied to this joint venture that was agreed would be formalized as a Limited Liability Company.

Dated this 5th day of November, 2015.

By: ___s/s *Elizabeth J. Foley*___
Elizabeth J. Foley
Nevada Bar No.: 1509
601 So. Rancho Dr., Suite A-1
Las Vegas, Nevada  89106
*Attorney for Plaintiffs*

CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that on the 5th day of November, 2015, I caused the document entitled Opposition to Defendants' Motion to Dismiss, to be served by electronically transmitting the document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

_s/s Debbie Skillin_
An Employee of Elizabeth J. Foley

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 ● Fax: (702) 380-4035

- 19 -