ELIZABETH J. FOLEY
NEVADA BAR 1509
ELIZABETH J. FOLEY LAWYER, LTD.
601 So. Rancho Drive, Suite A-1
Las Vegas, Nevada 89106
Phone: (702) 363-2323
Fax: (702)380-4035
Email: Efoleylawyer@gmail.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAX RUHLMANN and ERIC SAMBOLD,<br><br>Plaintiffs,<br><br>v.<br><br>GLENN RUDOLFSKY, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII; KIM D. RUDOLFSKY, AKA KIMI DAPOLITO, individually; and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII<br><br>Defendants. | CASE NO.: 2:14-cv-00879-RFB-NJK<br><br>**OPPOSITION TO MOTION TO BIFURCATE TRIAL PURSUANT TO FED. R. CIV. P. 42(B)** |

Plaintiffs Max Ruhlmann and Eric Sambold by and through their attorneys ELIZABETH J. FOLEY and MARGARET G. FOLEY respectfully submit the following Memorandum of Points and Authorities in Opposition to Defendants' Motion to Bifurcate Trial Pursuant to Fed. R. Civ. P. 42 (b). This Opposition is also based on the Plaintiffs' Appendix filed concurrently with this document, hereafter to as "App"; and the Declaration of Plaintiff Eric Sambold filed separately herein; and Plaintiffs' briefs concerning the other pending motions.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**PRELIMINARY STATEMENT**

Plaintiffs have demanded a jury trial on their Complaint against the Rudolfskys and House of Dreams Kauai. (Doc. 1). The Plaintiffs would respectfully request that this case be

tried to a single jury after ordinary written discovery as to all unprivileged matters with depositions followed by expert report submissions, all as set forth in the Discovery Plan filed herein on June 2, 2016. (Doc. 75).

There is no good cause for bifurcation under Federal Rule of Civil Procedure 42(b). Moreover, the Court is required to preserve any federal right to jury trial when deciding issues involving bifurcation.

## II.

## FACTUAL BACKGROUND

Commodity trader, Glenn Rudolfsky, sent an email solicitation to Plaintiff Max Ruhlmann on September 26, 2011 in which he offered to sell up to fifty percent (50%) of the five-acre vacation rental property to investors (such as Max Ruhlmann) with the expectation of a solid ten to fifteen (10-15%) percent after management fees and all expenses. (App. RS019). Mr. Rudolfsky urged Mr. Ruhlmann to read the PDF file he enclosed with the solicitation. The Namahana PDF (App. RS002-024) touts the fact that the home has been an active vacation rental for many years and has enjoyed great success, renting for a range of $5,000 to $7,000 per week, depending on the season and quantity of guests. (App. RS020).

Mr. Rudolfsky projected that the gross revenue would amount to $237,000 for the second year, at which time the property could be flipped. (App. RS024). Conspicuously absent from the solicitation is any mention of a mortgage or interest rates. The joint venture was clearly pitched as an equity investment. Mr. Rudolfsky has been a licensed commodity trader in New York City for many years and is a very sophisticated businessman. His feigned confusion about a mortgage will not likely be believed by a jury.

The five-acre vacation rental property, which is the subject of this litigation, is located in/near Princeville in Kauai County, Hawaii. Princeville is a 9,000 acre upscale, unincorporated master planned community of vacation homes and condos on the north shore of the island of Kauai in Kauai County, Hawaii. (App. RS164-166).

House of Dreams Kauai offers 28 rental properties in the Princeville area, including Ke Aloha, the subject of this litigation. See RS154-166, "Princeville Vacation Rentals" by House of Dreams Kauai". Mr. Rudolfsky refers to Ke Aloha as a "luxury rental". (App. RS157). The 2016-2017 rental rates are $1,100 per night (off peak) to $1,750 per night (Christmas/New Years), with the peak summer rate (Memorial Day through Labor Day) of $1,350 to $1,450 per night. Minimum stays for peak and holiday periods are seven nights, and for off peak periods, five nights. (App. RS157).

Defendant Glenn Rudolfsky informed the Plaintiffs that he did not have the credit to purchase Ke Aloha himself which is why he needed their participation as investors/partners. (App. RS028-29). Mr. Rudolfsky explained that "as a commodity trader, banks regard my income as speculative". (App. RS029).

The Court found the following facts in its Order of September 27, 2015. (Doc. 39).

> Plaintiffs allege the following uncontroverted facts in their Complaint. Plaintiffs and Defendants agreed to the terms of a joint venture under which a five-acre property on the Hawaiian Island of Kauai was to be purchased, improved, and rented to vacationers for profit. Compl. ¶ 7, 8, 11. This property, known as "Ke Aloha," was purchased using capital from Plaintiffs Ruhlmann and Sambold and Defendant Rudolfsky. Id. ¶¶ 10, 14-16. The purchase was made with the understanding that Plaintiffs would be 50% owners of the Ke Aloha property and would receive distributions of profits according to this one-half interest. Id. ¶¶ 11, 14, 19. At the time of their investment, Plaintiffs also believed they had agreed with Defendants that profits from renting the property would be held by a Limited Liability Company (LLC) (in which Rudolfsky and Plaintiffs would be members) and then paid out as distributions according to each member's share. Id. ¶¶ 9-11. Plaintiffs invested $550,000 into the alleged joint venture. Id. ¶ 14. To date, Defendants have not placed title to the Ke Aloha Property in the LLC. Id. ¶ 17.
>
> Plaintiffs allege additional facts in their Opposition to the Motion to Dismiss and accompanying exhibits. Although many of these facts are disputed, for purposes of this motion the Court accepts as true the following facts relevant to jurisdiction, as alleged in Ruhlmann's affidavit attached to Plaintiffs' Opposition.

In September and October of 2011, Rudolfsky sent Ruhlmann several e-mails asking whether Ruhlmann would be interested in investing in the Ke Aloha property. Aff. of James "Max" Ruhlmann ¶¶ 6-8, Opp'n Mot. Dismiss, Aug. 28, 2014, ECF No. 18 ("Ruhlmann Aff."). Ruhlmann and Rudolfsky had a telephone conversation about the potential investment on October 9, 2011. Id. ¶ 9. On December 20, 2011, Rudolfsky e-mailed Ruhlmann saying that Rudolfsky's bid for the property had been accepted and giving more details on the property, including projected rental income. Id. ¶¶ 10. In this e-mail, Rudolfsky also stated that he would consider traveling to Las Vegas, Nevada to meet with Ruhlmann so the two could get to know each other. Id. Ruhlmann then informed Rudolfsky that he intended to involve Sambold in the discussions as well. Id. ¶ 11.

On December 26, 2011, Rudolfsky e-mailed Ruhlmann asking whether he and Sambold would be able to meet in Ls Vegas the weekend of January 5, 2012. Id. ¶ 12. On approximately January 6-7, 2012, both Plaintiffs and both Defendants met in Las Vegas. Id. ¶ 13. During that meeting, Plaintiffs and Defendants agreed that they would each contribute half of the money for the Ke Aloha property. Id. Ruhlmann states that Kim Rudolfsky (Glenn Rudolfsky's wife) participated in the Las Vegas meeting, that she served as the bookkeeper for Glenn Rudolfsky's real estate interests, and that she is listed on the Ke Aloha deed. 22. Thereafter, on January 27, 2011, Rudolfsky informed Plaintiffs in an e-mail that it would not be possible to have names other than his and Kim Rudolfsky's on the deed at closing. Id. ¶ 14.

Ruhlmann contacted his attorney in Las Vegas in February 2012 to inquire about forming a Limited Liability Company (LLC) in which Plaintiffs anticipated the Ke Aloha property would be placed after closing. Id. ¶ 16. On February 22, 2012, Ruhlmann sent an e-mail to Rudolfsky and Sambold and enclosed a document entitled "Plans for Ke Aloha." Id. ¶ 18. In this document, item 2 stated, "Form a Nevada LLC" and item 3 stated "Name Glenn as Manager and Glenn, Eric and Max as members." Id. ¶ 24. In his e-mail, Ruhlmann stated that once Rudolfsky and Sambold had reviewed the document and had the opportunity to make changes to it, Ruhlmann would send it to his attorney to create an LLC. Id.

On March 4, 2012, Rudolfsky wrote to Sambold stating that he "[did] not see much in the way of differences" in his first reading of the "Plans for Ke Aloha" document, but that he would review it again in detail Id. ¶ 21. Rudolfsky then e-mailed Ruhlmann and Sambold on March 13, 2011, stating "I have reviewed the LLC suggestions from [Ruhlmann] and added my input as well." Id. ¶ 24. Rudolfsky attached an edited version of the "Plans for Ke Aloha" document to this e-mail. Id. Next to item 2 ("Form a Nevada LLC")

- 4 -

and item 3 ("name Glenn as Manager and Glenn, Eric and Max as members"), Rudolfsky wrote "Good." Id.

The next day, on March 14, 2014, Ruhlmann e-mailed Rudolfsky and Sambold stating that he intended to revise the "Plans for Ke Aloha" document according to what they had agreed on. Id. ¶ 25. Rudolfsky responded, indicating that his lawyer would be available to rewrite the document and stating, "You can form the LLC in Vegas but at least we will not have to pay the extra legal fees." Id. Rudolfsky, through e-mail, requested an update on the status of the LLC on May 22, 2013. Id. ¶ 31. The next day, Ruhlmann sent an e-mail asking Sambold and Rudolfsky to give the addresses they wanted to be listed with the LLC and whether they had preferences for the name. Id. ¶ 32. Rudolfsky replied, stating that he did not have a preference for the name and providing his New York home address for the LLC. Id.

On September 7, 2013, Ruhlmann instructed his attorney to file with the Nevada Secretary of state to open Ke Aloha LLC, and to list Rudolfsky as manager and Rudolfsky, Ruhlmann, and Sambold as members. Id. ¶ 33. Rudolfsky was to have a 50% share, while Ruhlmann and Sambold were to each have a 25% share. Id. Ruhlmann e-mailed Rudolfsky on September 18, 2012, informing him that LLCs registered in Nevada had to have an English translation for their names and proposing "the loved one" as a translation. Id. ¶ 34. Rudolfsky replied the next day, approving the suggested translation. Id. ¶ 35. That same day, on September 19, 2012, the Articles of Organization for Ke Aloha, LLC were filed with the Nevada Secretary of State. Id.

Throughout 2013, Rudolfsky sent shareholders reports to Ruhlmann regarding the Ke Aloha property. Id. ¶ 37. In March 2014, Rudolfsky informed Ruhlmann and Sambold that he was raising his management fee from 20% to 25% and that Kim Rudolfsky would receive a bonus out of the Ke Aloha funds. Id. ¶ 38. Ruhlmann states that thereafter, Rudolfsky began resisting Plaintiffs' attempts to add their names to the Ke Aloha deed or have the property conveyed to the Nevada LLC. Id. ¶ 40. Rudolfsky has also refused Plaintiffs' demand for an accounting and has kept the Ke Aloha funds in his own bank account. Id.

On June 6, 2014, Plaintiffs filed a Complaint against Defendants in this Court, alleging that Defendants failed to transfer title to the Ke Aloha property to the Ke Aloha LLC as originally agreed. ECF No. 1. In their Complaint, Plaintiffs allege the following causes of action: Breach of Joint Venture Agreement; Unjust Enrichment; Fraud in the Inducement; and Breach of the Implied Covenant of Good Faith and Fair Dealing. Plaintiffs also seek an accounting for profits of the joint venture agreement as well as specific performance of the agreement.

## III.
## LEGAL ARGUMENT

The Ninth Circuit Court has ruled in the past that a trial court may not use the power of separate trials to switch a separated issue in a jury case from the jury to the judge. In cases where the factual merits of the case must be considered in deciding the issue, other issues should not be separately tried. *Marks Food Corp. vs. Barbara Ann Baking Co.*, 274 F.2d 934 (9th Cir. 1959).

The merits of the Plaintiffs' contract, bad faith, and misrepresentation claims against the Defendants must be considered in conjunction with Plaintiffs' damages claims against the Defendants by the same jury. Discovery may not be stayed or denied in the manner suggested by the Defendants without impairing Plaintiffs' right to a jury trial. Many of the documents requested will be probative of the merits of Plaintiffs' claims. The course of performance of the parties during 2012 and 2013 will tend to prove the contours of the parties' joint venture agreement to the jury. Even in a case where admiralty and civil claims were joined and could not be segregated, a jury trial, since timely demanded, was required. *Owens-Illinois, Inc. vs. U.S.D.C. (WD. Wash.)*, 698 F.2d 967 (9th Cir. 1983).

The Eleventh Circuit reversed a District Court decision in which the Defendants usurped the Plaintiff's rights with regard to the conduct of trial. *Harrington vs Cleburne County Board of Education,* 251 F.3d 935 (11 Cir. 2001). The District Court was found to have abused its discretion in allowing Defendants to choose in which order the Plaintiff should try her claims. The Circuit Court reasoned: "Even if the order of proof was a matter within the district court's discretion, plaintiff could have fairly expected that on matters touching the core of trial strategy - witnesses order, organization of questioning and the like, the district court would have wielded its power sparingly. The District Court deprived plaintiff of that legitimate expectation with no good reason. Worse yet, the district court left those strategic decisions up to defendants for them to use as they saw fit to advance their cause, possibly to plaintiff's detriment. *Harrington,* at 939.

Defendants' proposed trial plan would force the Plaintiffs to try contract and joint

venture liability issues to one jury, without discovery, then undertake discovery and only then try their damages to another jury, or repeat all the evidence on liability for the second jury. All the while, the Defendants would be pocketing the profits from the Ke Aloha vacation rentals. Nothing could be more prejudicial to the Plaintiffs and consumptive of excess time by the Court than two separate jury trials.

Even where separate trials are had on liability and damages, upon a verdict favorable to Plaintiff on liability, the matter of damages will go the same jury at once. *Bvocik vs. Firestone Tire and Rubber Co. vs Odin Mathieson Chemical Corp.* 277 F. Supp. 210 (ED. Wisc. 1967). Defendants' proposal by staying all damages discovery would make a single jury trial all but impossible.

The New York District Court in *Monaghan vs. SZS33 Associates, LP*, 827 F. Supp. 233 (SDNY 1993), denied separation or bifurcation where, as here, there would be inevitable overlap of witnesses, and documentary evidence central to both claims. The Defendants' claim of "judicial economy" is defeated when two trials are required. It is highly prejudicial to Plaintiffs to require them to try a substantially similar case twice if they prevail on liability.

The ordinary rules of Civil Procedure should be followed culminating in a single jury trial after ordinary discovery of all non-privileged matters.

## IV.

## CONCLUSION

Defendants' Motion for Bifurcation should respectfully be denied.

DATED this 25 day of July, 2016.

ELIZABETH J. FOLEY
601 So. Rancho Drive, Suite A-1
Las Vegas, Nevada  89106
Attorney for Plaintiffs

- 7 -

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that on the 25th day of July, 2016, I caused the document entitled **OPPOSITION TO MOTION TO STAY DISCOVERY PERTAINING TO EQUITABLE ACCOUNTING**, to be served by electronically transmitting the document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

                                                *s/s Debbie Skillin*
                                                An Employee of Elizabeth J. Foley

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 • Fax: (702) 380-4035