ELIZABETH J. FOLEY
NEVADA BAR 1509
ELIZABETH J. FOLEY LAWYER, LTD.
601 So. Rancho Drive, Suite A-1
Las Vegas, Nevada 89106
Phone: (702) 363-2323
Fax: (702)380-4035
Email: Efoleylawyer@gmail.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAX RUHLMANN and ERIC SAMBOLD,<br><br>Plaintiffs,<br><br>v.<br><br>GLENN RUDOLFSKY, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII; KIM D. RUDOLFSKY, AKA KIMI DAPOLITO, individually; and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII<br><br>Defendants. | CASE NO.: 2:14-cv-00879-RFB-NJK<br><br>**OPPOSITION TO MOTION FOR PROTECTIVE ORDER** |

Plaintiffs Max Ruhlmann and Eric Sambold by and through their attorneys ELIZABETH J. FOLEY and MARGARET G. FOLEY respectfully submit the following Memorandum of Points and Authorities in Opposition to Defendants' Motion for Protective Order. This Opposition is also based on the Plaintiffs' Appendix filed concurrently with this document, hereafter to as "App"; and the Declaration of Plaintiff Eric Sambold filed separately herein; and Plaintiffs' briefs concerning the other pending motions.

## I.

## PRELIMINARY STATEMENT

The Interrogatories and Requests for Production of Documents were first propounded to the Defendants when they were represented by Jay Young, Esq. of Howard and Howard, who was the second counsel for Defendants in this action. The Defendants were initially represented

by Thomas Edwards of Holley Driggs Walch Fine Wray Puzey & Thompson, who withdrew after this Court denied the Defendants' first Motion to Dismiss. (Doc. 40).

Prior to responding to the pending Interrogatories and Requests for Production of Documents, Mr. Young filed a Motion to Withdraw as counsel for the Rudolfskys and their company, House of Dreams Kauai, citing "irreconcilable differences in strategy". (Docs. 54 and 55). A discovery plan was completed, (Doc. 62) and the discovery was propounded again. See Exhibits 1 and 2. The Defendants then retained their present and third counsel to this litigation and responded by filing three motions including a Motion for Protective Order without producing a single document or filing objections to any of the discovery requests or responding to a single Interrogatory. (Docs 77, 78 and 79).

Defendants' third counsel called Plaintiffs' counsel for a discovery conference on July 5, 2016 and Plaintiffs' counsel requested that she respond to each discovery request, and state her objections individually as required by the Rules so that a proper discussion of the objections could be completed before the matter was brought to the Court. See Declaration of ELIZABETH J. FOLEY attached hereto as Exhibit 3. Defendants declined to answer each Interrogatory separately or state objections to each discovery request individually (as Rules 33 and 34 require) and chose instead to burden the Court with three new Motions, including the Motion for Protective Order. The Defendants' Motions for Bifurcation and Discovery Stay are responded to separately.

It should be noted that Defendants specifically promised to provide quarterly reports to the Plaintiffs who had invested $550,000 in the vacation rental property and business which is the subject of this litigation. (App. RS061). Defendants, in fact, produced numerous quarterly reports to Plaintiffs from 2012 through 2014 when the Defendants attempted to increase their management fee beyond the twenty percent which had been agreed to. (App. RS116-149). After the dispute over the management fees, the Defendants ceased providing the agreed upon Quarterly Reports and this litigation was filed.

The Defendants have continued to operate the vacation rental business utilizing Plaintiffs' $550,000 investment since 2014 with Defendants retaining all profits and accounting to no one.

## II.

## FACTUAL BACKGROUND

Commodity trader, Glenn Rudolfsky, sent an email solicitation to Plaintiff Max Ruhlmann ton September 26, 2011 in which he offered to sell up to fifty percent (50%) of the five-acre vacation rental property to investors (such as Max Ruhlmann) with the expectation of a solid ten to fifteen (10-15%) percent after management fees and all expenses. (App. RS019). Mr. Rudolfsky urged Mr. Ruhlmann to read the PDF file he enclosed with the solicitation. The Namahana PDF (App. RS002-024) touts the fact that the home has been an active vacation rental for many years and has enjoyed great success, renting for a range of $5,000 to $7,000 per week, depending on the season and quantity of guests. (App. RS020).

Mr. Rudolfsky projected that the gross revenue would amount to $237,000 for the second year, at which time the property could be flipped. (App. RS024). Conspicuously absent from the solicitation is any mention of a mortgage or interest rates. The joint venture was clearly pitched as an equity investment. Mr. Rudolfsky has been a licensed commodity trader in New York City for many years and is a very sophisticated businessman. His feigned confusion about a mortgage will not likely be believed by a jury.

The five-acre vacation rental property, which is the subject of this litigation, is located in/near Princeville in Kauai County, Hawaii. Princeville is a 9,000 acre upscale, unincorporated master planned community of vacation homes and condos on the north shore of the island of Kauai in Kauai County, Hawaii. (App. RS164-166).

House of Dreams Kauai offers 28 rental properties in the Princeville area, including Ke Aloha, the subject of this litigation. See RS154-166, "Princeville Vacation Rentals" by House of Dreams Kauai". Mr. Rudolfsky refers to Ke Aloha as a "luxury rental". (App. RS157). The 2016-2017 rental rates are $1,100 per night (off peak) to $1,750 per night (Christmas/New

- 3 -

Years), with the peak summer rate (Memorial Day through Labor Day) of $1,350 to $1,450 per night. Minimum stays for peak and holiday periods are seven nights, and for off peak periods, five nights. (App. RS157).

Defendant Glenn Rudolfsky informed the Plaintiffs that he did not have the credit to purchase Ke Aloha himself which is why he needed their participation as investors/partners. (App. RS028-29). Mr. Rudolfsky explained that "as a commodity trader, banks regard my income as speculative". (App. RS029).

The Court found the following facts in its Order of September 27, 2015. (Doc. 39).

> Plaintiffs allege the following uncontroverted facts in their Complaint. Plaintiffs and Defendants agreed to the terms of a joint venture under which a five-acre property on the Hawaiian Island of Kauai was to be purchased, improved, and rented to vacationers for profit. Compl. ¶ 7, 8, 11. This property, known as "Ke Aloha," was purchased using capital from Plaintiffs Ruhlmann and Sambold and Defendant Rudolfsky. Id. ¶¶ 10, 14-16. The purchase was made with the understanding that Plaintiffs would be 50% owners of the Ke Aloha property and would receive distributions of profits according to this one-half interest. Id. ¶¶ 11, 14, 19. At the time of their investment, Plaintiffs also believed they had agreed with Defendants that profits from renting the property would be held by a Limited Liability Company (LLC) (in which Rudolfsky and Plaintiffs would be members) and then paid out as distributions according to each member's share. Id. ¶¶ 9-11. Plaintiffs invested $550,000 into the alleged joint venture. Id. ¶ 14. To date, Defendants have not placed title to the Ke Aloha Property in the LLC. Id. ¶ 17.
>
> Plaintiffs allege additional facts in their Opposition to the Motion to Dismiss and accompanying exhibits. Although many of these facts are disputed, for purposes of this motion the Court accepts as true the following facts relevant to jurisdiction, as alleged in Ruhlmann's affidavit attached to Plaintiffs' Opposition.
>
> In September and October of 2011, Rudolfsky sent Ruhlmann several e-mails asking whether Ruhlmann would be interested in investing in the Ke Aloha property. Aff. of James "Max" Ruhlmann ¶¶ 6-8, Opp'n Mot. Dismiss, Aug. 28, 2014, ECF No. 18 ("Ruhlmann Aff."). Ruhlmann and Rudolfsky had a telephone conversation about the potential investment on October 9, 2011. Id. ¶ 9. On December 20, 2011, Rudolfsky e-mailed Ruhlmann saying that Rudolfsky's bid for the property had been accepted and

- 4 -

giving more details on the property, including projected rental income. Id. ¶¶ 10. In this e-mail, Rudolfsky also stated that he would consider traveling to Las Vegas, Nevada to meet with Ruhlmann so the two could get to know each other. Id. Ruhlmann then informed Rudolfsky that he intended to involve Sambold in the discussions as well. Id. ¶ 11.

On December 26, 2011, Rudolfsky e-mailed Ruhlmann asking whether he and Sambold would be able to meet in Ls Vegas the weekend of January 5, 2012. Id. ¶ 12. On approximately January 6-7, 2012, both Plaintiffs and both Defendants met in Las Vegas. Id. ¶ 13. During that meeting, Plaintiffs and Defendants agreed that they would each contribute half of the money for the Ke Aloha property. Id. Ruhlmann states that Kim Rudolfsky (Glenn Rudolfsky's wife) participated in the Las Vegas meeting, that she served as the bookkeeper for Glenn Rudolfsky's real estate interests, and that she is listed on the Ke Aloha deed. 22. Thereafter, on January 27, 2011, Rudolfsky informed Plaintiffs in an e-mail that it would not be possible to have names other than his and Kim Rudolfsky's on the deed at closing. Id. ¶ 14.

Ruhlmann contacted his attorney in Las Vegas in February 2012 to inquire about forming a Limited Liability Company (LLC) in which Plaintiffs anticipated the Ke Aloha property would be placed after closing. Id. ¶ 16. On February 22, 2012, Ruhlmann sent an e-mail to Rudolfsky and Sambold and enclosed a document entitled "Plans for Ke Aloha." Id. ¶ 18. In this document, item 2 stated, "Form a Nevada LLC" and item 3 stated "Name Glenn as Manager and Glenn, Eric and Max as members." Id. ¶ 24. In his e-mail, Ruhlmann stated that once Rudolfsky and Sambold had reviewed the document and had the opportunity to make changes to it, Ruhlmann would send it to his attorney to create an LLC. Id.

On March 4, 2012, Rudolfsky wrote to Sambold stating that he "[did] not see much in the way of differences" in his first reading of the"Plans for Ke Aloha" document, but that he would review it again in detail Id. ¶ 21. Rudolfsky then e-mailed Ruhlmann and Sambold on March 13, 2011, stating "I have reviewed the LLC suggestions from [Ruhlmann] and added my input as well." Id. ¶ 24. Rudolfsky attached an edited version of the "Plans for Ke Aloha" document to this e-mail. Id. Next to item 2 ("Form a Nevada LLC") and item 3 ("name Glenn as Manager and Glenn, Eric and Max as members"), Rudolfsky wrote "Good." Id.

The next day, on March 14, 2014, Ruhlmann e-mailed Rudolfsky and Sambold stating that he intended to revise the "Plans for Ke Aloha" document according to what they had agreed on. Id. ¶ 25. Rudolfsky responded, indicating that his lawyer would be available to rewrite the document and stating, "You can form the LLC in Vegas but at least we will not have to pay

the extra legal fees." Id. Rudolfsky, through e-mail, requested an update on the status of the LLC on May 22, 2013. Id. ¶ 31. The next day, Ruhlmann sent an e-mail asking Sambold and Rudolfsky to give the addresses they wanted to be listed with the LLC and whether they had preferences for the name. Id. ¶ 32. Rudolfsky replied, stating that he did not have a preference for the name and providing his New York home address for the LLC. Id.

On September 7, 2013, Ruhlmann instructed his attorney to file with the Nevada Secretary of state to open Ke Aloha LLC, and to list Rudolfsky as manager and Rudolfsky, Ruhlmann, and Sambold as members. Id. ¶ 33. Rudolfsky was to have a 50% share, while Ruhlmann and Sambold were to each have a 25% share. Id. Ruhlmann e-mailed Rudolfsky on September 18, 2012, informing him that LLCs registered in Nevada had to have an English translation for their names and proposing "the loved one" as a translation. Id. ¶ 34. Rudolfsky replied the next day, approving the suggested translation. Id. ¶ 35. That same day, on September 19, 2012, the Articles of Organization for Ke Aloha, LLC were filed with the Nevada Secretary of State. Id.

Throughout 2013, Rudolfsky sent shareholders reports to Ruhlmann regarding the Ke Aloha property. Id. ¶ 37. In March 2014, Rudolfsky informed Ruhlmann and Sambold that he was raising his management fee from 20% to 25% and that Kim Rudolfsky would receive a bonus out of the Ke Aloha funds. Id. ¶ 38. Ruhlmann states that thereafter, Rudolfsky began resisting Plaintiffs' attempts to add their names to the Ke Aloha deed or have the property conveyed to the Nevada LLC. Id. ¶ 40. Rudolfsky has also refused Plaintiffs' demand for an accounting and has kept the Ke Aloha funds in his own bank account. Id.

On June 6, 2014, Plaintiffs filed a Complaint against Defendants in this Court, alleging that Defendants failed to transfer title to the Ke Aloha property to the Ke Aloha LLC as originally agreed. ECF No. 1. In their Complaint, Plaintiffs allege the following causes of action: Breach of Joint Venture Agreement; Unjust Enrichment; Fraud in the Inducement; and Breach of the Implied Covenant of Good Faith and Fair Dealing. Plaintiffs also seek an accounting for profits of the joint venture agreement as well as specific performance of the agreement.

### III.
### LEGAL ARGUMENT

Federal Rule of Civil Procedure 33(b) governs Answers and Objections to Interrogatories and provides as follows:

- 6 -

(b) Answers and Objections.

(1) *Responding Party.* The interrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

(2) *Time to Respond.* The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(3) *Answering Each Interrogatory.* <u>Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.</u>

(4) *Objections.* The grounds for objecting to an interrogatory must be stated with specificity. <u>Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.</u>

(5) *Signature.* The person who makes the answers must sign them, and the attorney who objects must sign any objections. (Emphasis added).

Federal Rule of Civil Procedure 34(b)(2) governs Responses and Objections to Requests for Production of Documents and provides as follows:

(2) *Responses and Objections.*

(A) *Time to Respond.* The party to whom the request is directed must respond in writing within 30 days after being served or — if the request was delivered under Rule 26(d)(2) — within 30 days after the parties' first Rule 26(f) conference. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) *Responding to Each Item.* <u>For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.</u> The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response. (Emphasis added).

(C) *Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

- 7 -

> Local Court Rule 26-7(b) and (c) provide:
>
> > (b) All motions to compel discovery or for a protective order must set forth in full the text of the discovery originally sought and any response to it.
> >
> > (c) Discovery motions will not be considered unless the movant (1) has made a good-faith effort to meet and confer as defined in LR IA 1-3(f) before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and-confer conference about each disputed discovery request.

The Motion for Protective Order fails to comply with the local rules of this Court. Local Rule 26-7(b) requires: "All motions to compel discovery or for a protective order must set forth in full the text of the discovery originally sought and any response to it". See also *Shuffle Masters vs. Progressive Games,* U.S. Dist. Court, D. Nevada, CV-S-950208-LDG (RJJ) 1996. The Defendants failed to respond to any of the Interrogatories or Requests for Production of Documents despite the fact that many of the items were the subject of the Quarterly Reports initially provided to Plaintiffs by Defendants. Mrs. Rudolfsky, as the bookkeeper for Kauai, is obviously skilled and organized and produces high quality reports which contain the rental income and data required by the property owners and equity stakeholders such as the Plaintiffs. Since she is the bookkeeper for House of Dreams Kauai, which is presently listing approximately ninety-nine vacation rentals (with some duplicates), Mrs. Rudolfsky should be able to easily respond to the Plaintiffs' reasonable discovery requests.

Mr. Rudolfsky refers to Princeville as a "resort town" on his "Glenn (House of Dreams Kauai Rental)' website. (App. RS154-163). On another web page, Princeville is touted as the location of world class golf, tennis and fine dining at the St. Regis Resort, Kauai Westin or Princeville Center. (App. RS160, Hanalei). House of Dreams Kauai offered on their website vacation rentals on the north shore of Hawaii in the following quantities listed by town:

Princeville (including Ke Aloha) - Twenty-eight (28) listings;

Haena- Fifteen (15) listings;

Hanalei - Twenty-eight (28) listings;

Kilauea - Twenty-eight (28) listings

Ke Aloha Total - Ninety-nine (99) listings on both the Princeville KODK website (App. RS162) and the Kilauea website at RS154.

## IV.

## INDIVIDUAL DISCOVERY REQUESTS

### A. PROPERTY TAX DOCUMENTS.

Request for Production of Documents No. 5, simply requests copies of all checks or proof of electronic funds transfers to pay property taxes for Ke Aloha. (See Exhibit 2, at page 2). Again, when the Defendants were reporting quarterly to the Plaintiffs and paying equity checks in 2012-2013, the property taxes were reported. Such information was, and is, readily available to the Defendants and ought to be produced forthwith.

The value of property/real estate component of Ke Aloha vacation rental business is an important aspect of the damages Plaintiffs will be seeking at trial. Property tax amounts are an aspect of the valuation. Mr. Rudolfsky estimated on September 30, 2012, that Ke Aloha had increased 25-45% during the first 6 months of ownership. (App. RS128). Property taxes increased by 50% as was reported October 21, 2013, due to the payment of GET/TAT taxes which lead to a commercial reclassification.

Mr. Rudolfsky further estimated, on March 31, 2013, that the operating costs would "decrease and the profit margins at Ke Aloha should steadily rise" during the second year. (App. RS140). On September 30, 2012, the property tax payment of $3,048.53 was reported as an expense. (App. RS126). On March 31, 2013, the property tax payment of $3,048.53 was reported as an expense. (App. RS138). On July 1, 2013, the property tax expense was listed as N/A (not applicable). (App. RS142). On October 21, 2013, the property tax expense was listed as a semi-annual expense of $4,700.00. (App. RS146).

The Defendants have demonstrated in the past that it is not so difficult to report property tax information. The Defendants should comply with Request No. 5 forthwith.

...

## B. REQUESTS FOR PRODUCTION NOS. 7 AND 8.

The copies of checks transfers or other forms of payment to Glenn and Kim Rudolfsky for profits from the rental of the property are requested. In 2012 and 2013, the Rudolfskys explained how the profits were calculated in the Quarterly Reports. The Plaintiffs are entitled to discovery on the profits paid to the Defendants from Ke Aloha from inception through the present. If the Defendants received the same profit share, 25% each, as the Plaintiffs, that would be evidence of the parties' joint venture agreement through the course of performance.

The profits since 2013, when the Defendants ceased reporting are an important element of Plaintiffs damages claim. The documents are readily available and ought to be produced.

## C. MANAGEMENT FEES

Request for Production No. 9 requests copies of all checks, transfers or other forms of payments made to Glenn Rudolfsky for management fees or any other service provided for and in behalf of the property. Again, the Defendants had no difficulty reporting their management fees in the early years of the joint venture.

Management fees were agreed to be 20% in the "Plans for Ke Aloha" memorandum. (App. RS059). On June 30, 2012, Defendants reported management fees of $16,385.57 (App. RS120) in the Quarterly Report. On September 30, 2012, management fees of $10,138.20 were reported in the Quarterly Report. (App. RS127). On March 31, 2013, management fees of $14,536.10 were reported in the Quarterly Report. (App. RS139). On July 1, 2013, management fees of $11,758.20 in the Quarterly Report. (App. RS147). Defendants have the management fee data readily available and can easily respond to Request for Production No. 9.

## D. REQUEST NO. 10, BOOKKEEPING SERVICES.

Defendant, Kim Rudolfsky, acted as the bookkeeper for Ke Aloha (and House of Dreams, Kauai). As bookkeeper, she should have access to copies of checks or transfers showing her compensation for bookkeeping or any other service.

...

...

### E. REQUEST NO. 11, SCHEDULING CALENDARS.

Scheduling calendars are requested from Defendants. In November 2013, Defendant Glenn Rudolfsky produced the scheduling calendar to Plaintiffs. (See RS110). The calendars are electronic and should be produced.

### F. STATE OF HAWAII GET/TAT TAX DOCUMENTS.

Request for Production of Documents No. 15 requests copies of tax bills and cancelled checks and any other document reflecting the payment of such taxes.

The renters of Ke Aloha are charged $13.42% of rent for a Hawaii State GET/TAT taxes. (App. RS157, Additional Fees). Quarterly Reports submitted by the Defendants in 2012 list GET/TAT taxes collected and set aside for the quarters encompassed in the Quarterly Reports. Five thousand two hundred fifty-six and 10/100 ($5,256.10) in GET/TAT taxes were collected and set aside for the first quarter reported, June 30, 2012. (App. RS120).

For the second quarter, (September 30, 2012), $2,012.40 in GET/TAT taxes were collected and set aside. (App. RS127). For the fourth quarter reported, (March 31, 2013), $2,683.25 in GET/TAT taxes were reportedly collected. (App. RS139). For the first quarter of 2013, the GET/TAT taxes were reported to be $1,945.37. (App. RS143). For the second quarter of 2013, the GET/TAT taxes were reported as $2,2334.71 on October 21, 2013. (App. RS147).

When the Defendants were sending the Plaintiffs quarterly reports in 2012 and 2013, the Defendants had no problem sharing the tax data with Plaintiffs. Such data is readily available in Defendants' bookkeeping system and should be produced as requested.

...
...
...
...
...
...
...

- 11 -

## IV.
## CONCLUSION

The Defendants' Motion for Protective Order should respectfully be denied. Defendants should be ordered to respond individually to each individual discovery request and interrogatory.

DATED this 25 day of July, 2016.

_____
ELIZABETH J. FOLEY
601 So. Rancho Drive, Suite A-1
Las Vegas, Nevada 89106
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that on the 25th day of July, 2016, I caused the document entitled **OPPOSITION TO MOTION FOR PROTECTIVE ORDER** to be served by electronically transmitting the document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

_s/s Debbie Skillin_
An Employee of Elizabeth J. Foley