1    ELIZABETH J. FOLEY
     NEVADA BAR 1509
2    ELIZABETH J. FOLEY LAWYER, LTD.
     601 So. Rancho Drive, Suite A-1
3    Las Vegas, Nevada   89106
     Phone: (702) 363-2323
4    Fax: (702)380-4035
     Email: Efoleylawyer@gmail.com
5    *Attorney for Plaintiffs*

6

7              UNITED STATES DISTRICT COURT

8                DISTRICT OF NEVADA

| | |
|---|---|
| MAX RUHLMANN and ERIC SAMBOLD, | CASE NO.: 2:14-cv-00879-RFB-NJK |
|        Plaintiffs, | |
| v. | |
| GLENN RUDOLFSKY, individually and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII; KIM D. RUDOLFSKY, AKA KIMI DAPOLITO, individually; and DBA HOUSE OF DREAMS KAUAI and HOUSE OF DREAMS HAWAII | |
|        Defendants. | |

**DECLARATION OF ERIC SAMBOLD**

...
...
...

ELIZABETH J. FOLEY
LAWYER, LTD.
601 S. Rancho Drive, Suite A-1
Quail Park II
Las Vegas Nevada 89106
Phone: (702) 363-2323 • Fax: (702) 380-4035

STATE OF NEVADA          )
                         )
COUNTY OF CLARK          )

I, Eric Sambold, declare as follows:

      1.      I am a plaintiff in the above-referenced case, pending in the United States District Court for the District of Nevada.

      2.      In the Statement of Facts set forth in Defendants' Motion for Protective Order, Plaintiff correctly alleges that a threshold issue in this litigation is the question of whether or not the parties ever reached a business arrangement. Plaintiff fails to mention that this issue was dealt with at length in Plaintiffs's Opposition to Defendants' Motion To Dismiss ("Opposition") filed with the Court on November 5, 2015. The Opposition contained extensive documentation proving that from the outset the parties intended to and did enter into a joint venture arrangement regarding the subject matter of this litigation, which is Ke Aloha investment property ("Ke Aloha"), that at the time was the subject of a short sale

      3.      With regard to the purchase of Ke Aloha, and in direct contradiction to the facts, Defendants now allege that:

      "Defendants could have accomplished this on their own-and in fact, did. Mr. Rudolfsky told Plaintiffs he would purchase the home himself; he did not need Plaintiffs' money to purchase Ke Aloha or turn it into a vacation rental." Motion For Protective Order, p. 2.

      Yet by Defendant Glenn Rudolfsky's own admissions he was not capable of providing one-half of the funds required to purchase the investment property:

      "I entered a $1,025,000 for a 5 acre Kalihiwai Ridge Estate. It has a 5-bedroom house and a separate guest cottage. It sold in 2011 for 2.4 million and I believe I am close to being accepted. With furnishings and some necessary repairs to the decking, we would come in at 1.1 or less. In my opinion this home could

produce a solid 10-15% return after management fees and all expenses. If my bid is approved <u>I am looking for investment in 100 K blocks. I am willing to sell up to 50% of the property</u>. Read the PDF enclosed. (emphasis added) <u>Glenn Rudolfsky email to Max Ruhlmann, September 26, 2011</u>. (App. RS019)

"At this time I have 500K in cash that I want to invest. Financing the balance would be a challenge in the current mortgage environment. <u>I would much prefer to have partners in this great and fun opportunity rather than go it alone</u>. Because I have so much at stake, I will work this home tirelessly to make it a success. Please let me know if this is something you would like to be involved in." (emphasis added) <u>Glenn Rudolfsky email to Max Ruhlmann, September 30, 2011</u>. (App. RS 028)

"I am told that the Bank of America can take anywhere from 6 weeks to 3 months to approve the short sale price <u>I would need to have an idea of whether you would be interested only because I would not qualify for financing</u> (emphasis added) As a commodity trader, banks regard my income as speculative, much like gambling an I believe it would be difficult. (emphasis added) <u>Glenn Rudolfsky email to Max Ruhlmann, October 6, 2011</u>. (App RS 029)

"On Friday my bid of $1,025,00 was accepted by the lien holder for the Namahana Plantation . . .

"Funding...

"<u>At this time I have 500K-550 K of my own cash to invest</u>. The house plus furnishings are going to be 1,050K. I am figuring 12K to 15K for the beautification, maintenance including repairs to decking, powerwashing and I am assuming undiscovered extras . . . When all is said and done it would be under 1.1 million. I do not want to get others involved as I like things to be simple <u>so depending on what you would be interested in investing</u> (emphasis added), if you still are I would look to finance the rest." <u>Glenn Rudolfsky email to Max Ruhlmann, December 20, 2011</u>. (App RS 034-036)

4.    In a attempt to obfuscate the joint venture issue, and it appears, also in order to mislead the Court, Defendants have quoted out of context and relied

upon the following statement made by me in a March 19, 2013 email to Defendant
Glenn Rudolfsky:

> "Keep in mind that we were discussing things as adults do from time to time
> without making promises but simply with the intent of discussing options
> and ideas to see if we could come up with mutually beneficial ideas. This
> process can be described as "Spitballing" or Brainstorming". We never
> determined for certain how the financing would take place, whether or not
> any of us qualify, and how much a bank would be willing to lend, nor what
> the property appraises for. We certainly never agreed on any terms and
> conditions nor made any promises.
>
> Please help me understand exactly what you are suggesting and we'll see if it
> makes sense to proceed.
>
> I certainly like the idea of a turn key property that Princeville seems to be.
> Would be a nice change from Anahola."" (Emphasis added) (App. RS 096)

Glenn Rudolfsky conveniently omitted the opening paragraphs of this email,
in which he makes it clear that the language he did include had nothing to do with
the joint venture issue. Without a doubt, it refers to the entirely separate issue as to
whether or not the Defendants were interested in refinancing the Ke Aloha
investment property after it was purchased by the Defendants and Max Ruhlmann
and the undersigned, in cash, more than a year earlier, on March 13, 2012.

> "Hi Glenn,
>
> I did not know you were still interested in financing Ke Aloha.
>
> Are you saying that you would like to obtain financing Ke Aloha while
> retaining title in your name?
>
> Are you saying that you would like me to obtain bank financing for Ke Aloha?
>
> Are you saying that we should put the property into an LLC and obtain bank
> financing?" (App. RS 096)

4.     Two things were clear from the outset of the Plaintiffs' involvement
with Defendants: (1) Defendants' solicited funds from Plaintiffs in the form of a joint
venture, rather than as a mortgage loan, (2) never at any time did Plaintiffs indicate
nor intend to indicate to Defendants that the $550,000 they advanced to the

Defendants in the form of cash was intended for any other purpose than as a joint venture in which Plaintiffs were promised and expected to receive a one-half (50%) ownership interest in the Ke Aloha joint venture, along with 50% of the net operating proceeds, and (3) in March 2013, when I wrote the email to Glenn Rudolfsky about refinancing Kea Aloha, with which email the Defendants are attempting to mislead the Court, we had been partners in Ke Aloha for a full year and already had been issued three comprehensive quarterly partnership income, expense, and profit statements accompanied by three profit participation checks. Furthermore, a second investment property had been purchased and discussions were underway with regard to in what manner Glenn Rudolfsky and Max Ruhlmann might pay for their shares in this additional joint venture opportunity.

These facts are clearly established by the following sequence of events:

"I just finished my conversation with the title company. Because it was a short sale they will not allow any names other than Kim and I who made the bid on the deed at closing. For a small fee of $230 we can do a quit claim at the closing transferring title to Eric. Glenn Rudolfsky email to Max Ruhlmann and Eric Sambold, January 27, 2012. (App RS 039)

"Guys,

Just so that we're all on the same page. I've contacted Harvey Cohen, the attorney doing the TVR work, to do the mortgage. This mortgage is simply a bridge until we have a formal structure like an LLC and have decided upon how the title will be held.

The terms I propose are $500,000 for 6 months at 8% interest. The Interest rate is simply there in case we cannot come to agreeable terms. No interest will be due on this mortgage unless we never come up with a new structure." (emphasis added) Eric Sambold email to Max Ruhlmann, February 6, 2012. (App. RS 042)

"See attached. As I said, please get it in writing, probably in an email to Glenn, that we are not in this for a 6% return. We have a verbal understanding that we are partners and will share in the costs and benefits of this property." Eric Sambold

email to Max Ruhlmann, February 22, 2012. (The attachment describes a joint venture structure in the form of a Nevada LLC.)

"Guys,

"I have written a draft of a memo for us to submit to the attorney, so that he can create an LLC agreement for us. Please review it and suggest the changes you feel are appropriate. This is not a contract, be we can hash out between us exactly what we want in the contract when it is written. It should save us some time and money." Max Ruhlmann email to Glenn Rudolfsky and Eric Sambold, February 22, 2012.

"Hi Glenn,
Haven't heard anything from you, specifically with respect to Max's proposal. Need to hear something, we're not in this simply to provide a mortgage." Eric Sambold to Glenn Rudolfsky, March 4, 2012. (App RS 053)

"I discussed some things with Max. I told him I would review it again and have a more in depth conversation. I had understood that the reason for the mortgage was to work out these details after we closed and was not under the impression that that was an issue right now. In my first reading I was very pleased with Max's ideas and do not see much in the way of differences." Glenn Rudolfsky email to Eric Sambold, March 4, 2012. (App RS 053)

"Glenn,

I am happy to hear that we are back on track to get our purchase through and that the bookings are being met with such enthusiasm. However, I am extremely concerned that you have not sent a reply to my memo regarding the organizational side of the project. Since I spoke to you over a week ago and you expressed at least one reservation with the terms I had listed, I believe that we need to get this discussion underway ASAP, so that it does not become a stumbling block to completing the purchase and forming the business." Max Ruhlmann email to Glenn Rudolfsky, March 9, 2012. (App RS 056)

5

"Aloha Gentlemen,

I have reviewed the LLC suggestions from Max and added my input as well. Kindly review my thoughts and share any opinions you have." <u>Glenn Rudolfsky email to Max Ruhlmann and Eric Sambold, March 13, 2012. (App RS 057)</u>

Glenn Rudolfsky memo comments:

"2) Form a Nevada LLC. (Ke Aloha LLC?) <u>Good.</u> (emphasis added)

3) Name Glenn as Manager and Glenn, Eric, and Max as members of the LLC. <u>Good.</u> (emphasis added)  (App RS 059)

"Hi Glenn,

Your letter was quite extensive. I think it's important that I respond to the most important question I have which I believe is driving a lot of your concerns. At this time I do not know how you would like to participate in Anahola. I do not know how to properly involved you absent this answer. Any answer is acceptable. You can be the manager, you can be a part owner, you can be neither. At present ownership is something like Eric 75%, Max 25%. I would be happy to give up a chunk. Given the answer ten we can set responsibilities accordingly and hopefully you will feel more involved . . .

As to Princeville, I don't see any need to address it until the bank accepts the offer. At that point, I would hope we would all contribute 1/3. Again, don't want to focus on this until the bank accepts the offer." <u>Eric Sambold email to Glenn Rudolfsky, March 15, 2013.</u> (App. RS 094)

"Aloha Gentlemen,

"We have been given a closing date of March 28th. I trust you received the wiring instructions from Bea. If we are doing a cash deal do you want me to quit claim and be added to the deed. <u>If we decide to finance at a later date this would work to our advantage as you will already be on the deed.</u>" (emphasis added) <u>Glenn Rudolfsky email to Max Ruhlmann and Eric Sambold, March 16, 2012.  (App. RS 070)</u>

6

"Gentlemen,

We are now the proud owners of the Ke Aloha Estate." (emphasis added) Glenn Rudolfsky email to Max Ruhlmann and Eric Sambold, March 30, 2012. (App. RS 072)

"Hi Glenn,

Seems that you've got everything handled and the place is looking great. When you get a chance please let us know what the total cost of the repairs/upgrades were. We'd like to know what the house cost us total all-in. Then we'd like to get on a monthly schedule of receiving an income statement. All income minus expenses. If you need help with this let me know." Eric Sambold email to Glenn Rudolfsky and Max Ruhlmann, May 23, 2012. (App. RS 083)

"As silly as this question is, I will ask. Seems that LLCs with foreign language names (Ke Aloha LLC) must provide an English translation. My attorney has googled and got a translation of 'the loved one'. Do you want to go with that? Or did you have a different translation in mind when you named the property?" Max Ruhlmann email to Glenn Rudolfsky, September 18, 2012. (App. RS 087)

"So you're OK with that translation?" Max Ruhlmann email to Glenn Rudolfsky, September 19, 2012. (App. RS 087)

"Sure as long as we are not called The Loved One LLC. What about something like GEM for Glenn, Eric & Max or MEG." Glenn Rudolfsky email to Max Ruhlmann, September 19, 2012. (App. RS 088)

"Yesterday we filed the Ke Aloha LLC Articles of Organization (charter) and it is now effective. By the end of October we will file the online annual list of managers and the Nevada business license, after which we will file the IRS EIN number." John Henry Brebbia, Esq. email to Max Ruhlmann, September 30, 2012.

7

"Ke Aloha 2nd Quarter Report – September 30th, 2012

"Enclosed you will find a summary of the 2nd quarter gross revenues, receipts, bills, monthly expenses and a payment check of 25% of net revenue for the 2nd quarter of operation. (App. RS 125)

**$5870.95 Profit Per 25% Share In Ke Aloha**

**Check Enclosed for $5870.95"** (App. RS 127)

"I need your social security number." Max Ruhlmann email to Glenn Rudolfsky regarding the Ke Aloha LLC, February 27, 2013.

"Gentlemen,

"It seems to me that it is time to address some of our unresolved financial issues. I am providing some of my thoughts. Kindly attempt to add your insights as to how we can best work out the money and property ownership issues to every ones benefit.

As it now stands we have three Kauai real estate vacation rental properties/ projects in various states of completion. I will review where we stand on each.

Ke Aloha Estate.

We purchased this early last year with agreement that Glenn owns 50%, Eric owns 25% and Max owns 25%. We each provided proportional amounts of the original investment. We discussed but never finalized an LLC agreement. I contacted my attorney for the LLC. The house was purchased in Glenn's name and remains in his name at this time. A temporary private mortgage was placed on the property to protect Eric's and my interests. We have never finalized the ownership documents so the temporary mortgage is still in existence. Profits have been distributed based upon the ownership percentages. No money has been borrowed from the outside partnership. Results are quite good. Rental rates are as high or higher than projected. Occupancy rates are good." (emphasis added) Max Ruhlmann email to Eric Sambold and Glenn Rudolfsky, March 5, 2013. (App. RS 090-091)

"Aloha Gentlemen,

8

"The letter below is in response to your recent questions and the business decisions regarding Ke Aloha, Anahola, Princeville and House of Dreams Kauai.

Please let me know your thoughts." Glenn Rudolfsky email to Max Ruhlmann and Eric Sambold, March 13, 2013. (App. RS 093)

"Ke Aloha 4th Quarter Report – March 31, 2013

Enclosed you will find a summary of the 4th quarter gross revenues, expenses and net income. This concludes our first year of business.

As we close out the first 12 months, I am happy to say that we have exceeded expectations financially and also, with our occupancy rate. (App. RS 137)

**$9907.89 Profit Per 25% Share in Ke Aloha**

Check enclosed for $9907.89." (App. RS 139)

"Aloha,

Just wanted to follow up. I thought the last payment made would have garnished some kind of response as I blew away all of my first year projections. I guess nobody was impressed and I must do better this year.

Let me know if you have any questions regarding this report.

Glenn." Glenn Rudolfsky email to Max Ruhlmann and Eric Sambold, June 4, 2013. (App RS 099)

"Ke Aloha 1st Quarter Report – July 1st, 2013

Enclosed you will find a summary of the 1st quarter gross revenues, expenses and net income. This begins the second year of business at Ke Aloha.

As we close out the first 12 months, I am happy to say that we have exceeded expectations financially and also, with our occupancy rate.

**$6877.97 Profit Per 25% Share in Ke Aloha**

Check Enclosed For $6877.97." (App. RS 141-143)

"Ke Aloha 2nd Quarter Report – October 21st, 2013

9

Enclosed you will find a summary of the 2nd quarter gross revenues, expenses and a payment check of 25% of net revenue for the 2nd quarter of operation.

**$7,083.30 Profit Per Each 25% Allocation**

Check Enclosed For $7,083.30."

"Ke Aloha 3rd Quarter Report – January 15th, 2014

Enclosed you will find a summary of gross revenues, expenses and a payment check for the 3rd quarter of operation in the calendar year beginning April 1st 2013, ending March 31st 2014.

**$6973.60 Per Each Allocation**

Check Enclosed For $13,947.21."  (App. RS167-171).

5.     In March 2014, without prior notice, Glenn Rudolfsky chose to characterize the latest quarterly profit participation payment as being a payment on the promissory note that accompanied the temporary mortgage document, rather than the usual profit participation payment. In my email response, I notified him as follows:

"Because you characterize this payment as 'towards the note' and state concern that you are 'current with the rate of interest and not in default', I cannot accept this check, I'll send it back to you. This payment is NOT repayment of any loan/interest, this is a partnership distribution reflecting my 25% and Max's 25% ownership in the property. Please redistribute with a note clearly stating this." Eric Sambold email to Glenn Rudolfsky, March 18, 2014.

Mr. Rudolfsky's refusal to acknowledge that the payment in question was made pursuant to his continuing obligation to make quarterly joint venture profit participation payments, rather than as a mortgage payment, coupled with his attempt to unilaterally alter the terms and conditions under which Max Ruhlmann and I invested $550,000 in cash in a joint venture with him, is what forced Max Ruhlmann and me to file this lawsuit.

10

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____25th_____ day of July, 2016.

Eric Sambold

Subscribed and sworn to me on this
_____25th_____ day of July, 2016

NOTARY PUBLIC

DENICE JANAI DYBE
Commission # 2106993
Notary Public - California
San Diego County
My Comm. Expires Apr 13, 2019

11

## ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF                    **CALIFORNIA**

COUNTY OF                   **SAN DIEGO**

CUSTOMER NAME                          **ERIC R. SAMBOLD**


On __7/25/16__ before me,_____**DENICE JANAI DYSE**_____, a Notary Public,
    (DATE)

personally appeared, _____**ERIC R. SAMBOLD**_____,

_____

_____

_____

___ personally known to me    OR    ✗ proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they
executed the same in his/her/their authorized
capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s),
or the entity upon behalf of the which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DENICE JANAI DYSE
Commission # 2106893
Notary Public - California
San Diego County
My Comm. Expires Apr 13, 2019

(NOTARY SIGNATURE)

My Commission Expires: APRIL 13th, 2019