ELIZABETH J. FOLEY
NEVADA BAR 1509
ELIZABETH J. FOLEY LAWYER, LTD.
601 So. Rancho Drive, Suite A-1
Las Vegas, Nevada  89106
Phone: (702) 363-2323
Fax: (702)380-4035
Email: Efoleylawyer@gmail.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES RUHLMANN and ERIC SAMBOLD,<br><br>     Plaintiffs,<br><br>v.<br><br>GLENN RUDOLFSKY, individually and<br>KIM D. RUDOLFSKY, individually; and<br>HOUSE OF DREAMS KAUAI, INC.,<br>a New York Domestic Business Corporation<br><br>     Defendants. | CASE NO.: 2:14-cv-00879-RFB-NJK<br><br>**FIRST AMENDED<br>COMPLAINT AND<br>JURY DEMAND** |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiffs, JAMES RUHLMANN and ERIC SAMBOLD, by and through their counsel, ELIZABETH J. FOLEY and MARGARET G. FOLEY, ESQ., allege as follows:

**JURISDICTIONAL ALLEGATIONS**

1.

Plaintiff JAMES RUHLMANN is now, and at all times mentioned in this Complaint was, domiciled in and a citizen of the State of Nevada, residing in Clark County in that State.

2.

Plaintiff ERIC SAMBOLD is now, and at all times mentioned in this Complaint was domiciled in and a citizen of the State of California, residing in San Diego County in that State.

3.

Defendant GLENN RUDOLFSKY is now, and at all times mentioned in the Complaint was domiciled in and a resident of the State of New York, residing in Nassau County in that State.

4.

Defendant KIM D. RUDOLFSKY is now, and at all times mentioned in the Complaint was domiciled in and a resident of the State of New York, residing in Nassau County in that State.

5.

Defendant HOUSE OF DREAMS KAUAI, INC. is a Domestic Business Corporation incorporated in the State of New York with the Chief Executive Officer listed with the New York Department of State, Division of Corporations, as GLENN RUDOLFSKY, 2825 Shore Drive, Merrick, New York 11566.

6.

This action is of a civil nature involving exclusive of interest and costs, a sum in excess of seventy-five thousand dollars ($75,000.00) and is wholly between residents of different states.

7.

Jurisdiction is proper under 28 USC 1332 allowing civil actions between residents of diverse states involving matters in controversy, exclusive of interests and costs, in excess of seventy-five thousand dollars ($75,000.00).

8.

Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Defendants sued herein was the agent and employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and employment.

...

- 2 -

**GENERAL FACTUAL ALLEGATIONS**

9.

On or about September 26, 2011, Defendant GLENN RUDOLFSKY contacted Plaintiff JAMES RUHLMANN, a resident of Nevada, and proposed a joint venture to purchase a five acre Kalihiwai Ridge Estate on the Hawaiian Island of Kauai for one million twenty-five thousand dollars ($1,025,000). GLENN RUDOLFSKY stated he was looking for equity investors: "I am willing to sell up to 50% of the property".

10.

On December 26, 2011, Defendant GLENN RUDOLFSKY asked Plaintiff JAMES RUHLMANN if Plaintiff ERIC SAMBOLD would travel to Las Vegas in early January of 2012 to meet the Defendants and their family to formulate a cash deal for the joint purchase of the Ke Aloha property.

11.

The Plaintiffs JAMES RUHLMANN and ERIC SAMBOLD met with the Defendants GLENN RUDOLFSKY and KIM RUDOLFSKY in Las Vegas in January 2012 and agreed in concept to a joint venture in which the parties would purchase, own, renovate, and rent the five acre Kauai estate, which they later named Ke Aloha, with the Plaintiffs owning fifty percent of the joint venture Ke Aloha vacation rental and Defendants GLENN RUDOLFSKY and KIM RUDOLFSKY owning fifty percent of the Ke Aloha joint venture vacation rental.

12.

The Plaintiffs deposited five hundred fifty thousand dollars ($550,000) into a short sale escrow account on March 28, 2012 to purchase the five acre Kauai estate which would later be called Ke Aloha on the basis of the Defendants' promise that the Plaintiffs would be half owners and share in the profits from the rental of Ke Aloha.

13.

The five acre Kauai joint venture estate was initially titled in the Defendants GLENN RUDOLFSKY and KIM RUDOLFSKYS' names because on January 27, 2012, Defendant

- 3 -

GLENN RUDOLFSKY wrote to the Plaintiffs stating that the title company would only allow the Rudolfskys, who were the original bidders in the short sale, to be on the title at closing, but that title could be transferred to include the Plaintiff, ERIC SAMBOLD, after the closing.

14.

Prior to the closing of the short sale, a bridge mortgage was executed by GLENN RUDOLFSKY and KIM RUDOLFSKY granting Plaintiff ERIC SAMBOLD a mortgage in the amount of five hundred fifty thousand dollars ($550,000) on the five acre Kauai estate payable in six months with six percent interest, pending the formation of a Nevada limited liability company to hold title to the Ke Aloha estate for the joint benefit of the four owners, JAMES RUHLMANN, ERIC SAMBOLD, GLENN RUDOLFSKY and KIM RUDOLFSKY.

15.

It was agreed that cash profit distributions were to be paid quarterly to the four owners of the Ke Aloha joint venture; GLENN and KIM RUDOLFSKY, JAMES RUHLMANN and ERIC SAMBOLD.

16.

On or about March 13, 2012, Defendant GLENN RUDOLFSKY, acting for himself, Defendant KIM RUDOLFSKY, and Defendant HOUSE OF DREAMS KAUAI, INC., agreed to the formation of a Nevada Limited Liability Company which would hold title to the five acre Kauai estate which would be named Ke Aloha.

17.

One or about June 30, 2012, GLENN RUDOLFSKY and KIM RUDOLFSKY forwarded to JAMES RUHLMANN and ERIC SAMBOLD the "Ke Aloha First Quarter Report and Set Up" which included a check for six thousand, two hundred six dollars fifty-two cents ($6,206.52) for each of the Plaintiffs for twenty-five percent (25%) of the remaining capital, or profits for the first quarter of operation, and detailed financial information.

18.

It had been requested by Defendant GLENN RUDOLFSKY that Defendant KIM

RUDOLFSKY serve as the bookkeeper for the Ke Aloha vacation rental joint venture because "Kim currently does all of the bookkeeping for HOD [House of Dreams] and can pay all house related bills as part of our management duties". (RS061, 3/13/12; RS057-065).

19.

Defendant GLENN RUDOLFSKY agreed that: "Information on all rentals of the property will be made available to all members on a (Quarterly) basis as well all financial information". (RS061, 3/13/12; RS057-065).

20.

Defendant GLENN RUDOLFSKY agreed that "cash distribution of profits will take place quarterly to the members proportionally based upon their shares". (RS061, 3/13/12; RS057-065).

21.

Defendant GLENN RUDOLFSKY agreed on March 13, 2012 as follows: "In the event of a sale of the property, proceeds will go first to pay the mortgage and any existing liabilities of the LLC and then divided among the members proportionally based upon their shares". (RS063, 3/13/12; RS057-065).

22.

From June 30, 2012 through September 30, 2013, Defendants issued Quarterly Reports to the Plaintiffs and paid each of the Plaintiffs their twenty-five percent share of the profits of the Ke Aloha vacation rental business venture.

23.

The Quarterly Reports contained information supplied by KIM RUDOLFSKY, who acted as the bookkeeper for the Ke Aloha business venture and the Defendant HOUSE OF DREAMS KAUI, INC. vacation rental business.

24.

The Quarterly Reports were accompanied by checks written and signed by Defendant KIM RUDOLFSKY which were drawn on an account owned by Defendant HOUSE OF DREAMS KAUAI, INC. at Bank of America.

25.

On January 15, 2014, the Ke Aloha Third Quarter Report was issued indicating that Defendant GLENN RUDOLFSKY was giving Defendant KIM RUDOLFSKY a one thousand dollar ($1,000) bonus for doing all the books related to Ke Aloha which was described as a major undertaking on her part to handle the books and dispense all payments related to this property. We also paid our accounting firm thousands of dollars over the last 2 years for work related to the Ke Aloha estate and to teach Kim how to handle the bookkeeping". (RS168)

26.

In the Quarterly Report issued January 15, 2014, the 25% profit was calculated at six thousand nine hundred seventy-three dollars sixty cents ($6,973.60) per Plaintiff, but for the first time, Plaintiff JAMES RUHLMANN's share was combined in a check issued to Plaintiff ERIC SAMBOLD.  (RS167).

27.

On May 27, 2014, Defendant GLENN RUDOLFSKY forwarded to Plaintiff ERIC SAMBOLD a check drawn on an account in the name of Defendant HOUSE OF DREAMS KAUAI, INC., and signed by Defendant KIM RUDOLFSKY in the amount of nineteen thousand seven hundred eighty-five dollars fifteen cents ($19,785.15)  (RS171).

28.

The May 27, 2014 check signed by Defendant KIM RUDOLFSKY attempts to convert the 2012 joint venture in which each Plaintiff received twenty-five percent (25%) of the profits of Ke Aloha for their equity interest, into a different business arrangement under which ERIC SAMBOLD would only receive six percent interest on the Plaintiffs' five hundred fifty thousand dollar ($550,000) investment.

29.

The Defendants, and each of them, attempted to defraud the Plaintiffs out of their twenty-five percent (25%) interest in the Ke Aloha joint venture by issuing the check and letter dated May 27, 2014.

**(FIRST CLAIM FOR RELIEF - BREACH OF JOINT VENTURE AGREEMENT)**

30.

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.

At their January 2012 meeting in Las Vegas, Nevada, the Plaintiffs and the Defendants agreed in principal to invest in a joint venture to acquire the five acre estate on Kauai, later named "Ke Aloha" and to rent the estate vacation rental property with profits to be divided twenty-five percent (25%) to each Plaintiff and fifty percent (50%) to Defendants GLENN and KIM RUDOLFSKY with the Defendants to be paid a twenty percent (20%) of gross rental income management fee as an expense of the joint venture. At the conclusion of the Las Vegas meeting where these terms were agreed upon, the parties shook hands and began substantial performance of the terms of the joint venture.

32.

Plaintiffs began drafting a Memorandum entitled "Plans for Ke Aloha" for the parties to submit to the attorney who would be creating the limited liability company agreement for the joint venture. A draft of the "Plans for Ke Aloha" Memorandum was forwarded to Defendant GLENN RUDOLFSKY on February 22, 2012.

33.

Defendants returned a copy of the "Plans for Ke Aloha" Memorandum with their agreement to many terms annotated in red on March 13, 2012.

34.

Plaintiff ERIC SAMBOLD wrote to Defendant GLENN RUDOLFSKY after receiving the Memorandum annotated by Defendants stating: "Glenn, as long as we have the understanding that we have a partnership interest and are not just providing a low interest loan, I see no problem in proceeding. Do we have a new closing date?"

- 7 -

35.

The "Plans for Ke Aloha" Memorandum was part of the agreement for the joint venture and the operation of the joint venture.

...

36.

The email correspondence between the parties contain agreements concerning the joint venture and the operation thereof.

37.

In February of 2012, a bridge mortgage was executed to provide the Plaintiffs with a security interest in the Ke Aloha five acre real estate from the time of the closing until the limited liability company could be formalized.

38.

The Defendants agreed in the "Plans for Ke Aloha" Memorandum to make information on all rental of the property, as well as all financial information available to all members on a quarterly basis.

39.

The Defendants have breached their agreement to make all information on the rentals of Ke Aloha, as well las all financial information available to the Plaintiffs on a quarterly basis since 2014, and are continuing such breach as of the date of this First Amended Complaint.

40.

The Defendants agreed to distribute profits to the members of the joint venture quarterly proportionally based on their shares.

41.

The Defendants have breached their agreement to provide quarterly cash distributions of profits to the Plaintiffs based on their twenty-five percent (25%) shares since 2014 and continue to breach such agreement.

...

42.

The parties agreed in the "Plans for Ke Aloha" Memorandum that in the event of a sale of the property, proceeds shall go first to pay the mortgage and any existing liabilities and then be divided among the members proportionally based upon their shares.

43.

The parties agreed to form a Nevada Limited LLC named Ke Aloha LLC, of which Defendant GLENN RUDOLFSKY would be manager and the Plaintiffs and Defendant GLENN RUDOLFSKY would be members.

44.

The Defendants breached the agreement to form the Nevada LLC when Defendant GLENN RUDOLFSKY wrote to the Nevada Secretary of State and claimed that Plaintiffs and the attorney hired to form the Nevada LLC had no authority to do so.

45.

The parties agreed that rents collected prior to the limited liability company being finalized would be considered income to the Ke Aloha LLC and Defendant GLENN RUDOLFSKY was to continue to operate the business for the benefit of the members as if the final structure had been completed.

46.

The Defendants have breached the agreement that rents collected prior to the finalization of the limited liability company would be considered income to the Ke Aloha LLC, and have instead converted the rents for Defendants' own use and benefit.

47.

By virtue of the foregoing breaches of the joint venture agreements, Plaintiffs are entitled to compensatory damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

...

...

- 9 -

**(SECOND CLAIM FOR RELIEF - UNJUST ENRICHMENT)**

48.

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49.

The Defendants have had the use of five hundred fifty thousand dollars ($550,000) of Plaintiffs' funds since or about March 28, 2012.

50.

Since March 30, 2012, when the parties became the owners of the Ke Aloha estate, the estate has generated rental income believed to be in excess of one million dollars ($1,000,000.00).

51.

The Defendants have been unjustly enriched at the expense of the Plaintiffs.

52.

Under the circumstances alleged in this Complaint, it would be against equity and good conscience to permit Defendants to retain the ill gotten benefits which they have received from the utilization of Plaintiffs' funds paid in reliance on the Joint Venture Agreement.

53.

It would be unjust or inequitable for Defendants to retain Plaintiffs' funds and the rentals earned by virtue of the use of Plaintiffs' funds to purchase the Ke Aloha estate without restitution to the Plaintiffs of the Plaintiffs' half of all profits obtained by the Defendants from the utilization of Plaintiffs' funds to purchase the five acre Kauai estate known as Ke Aloha, in addition to the restitution of the five hundred fifty thousand dollars ($550,000) paid by the Plaintiffs for their one-half interest in the Ke Aloha joint venture.

54.

Plaintiffs should additionally be awarded their one-half share of the present value of the Ke Aloha estate which was purchased with their funds.

55.

Plaintiffs should be awarded one-half of the net profits of Ke Aloha since March 30, 2012, one-half of the value of the Ke Aloha estate, and the original five hundred fifty thousand dollars ($550,000) in a judgment for restitution to be secured upon the Ke Aloha estate.

**(THIRD CLAIM FOR RELIEF - FRAUD)**

56.

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.

Defendant GLENN RUDOLFSKY falsely and fraudulently represented to the Plaintiffs that they would receive one-half of the ownership and equity in a Kauai vacation rental estate by paying the amount of five hundred fifty thousand dollars ($550,000) which was to be utilized to purchase the estate through a short sale.

58.

Defendant GLENN RUDOLFSKY's representations were false in that Defendants GLENN RUDOLFSKY and KIM RUDOLFSKY never intended to transfer one-half ownership of the Ke Aloha estate to the Plaintiffs.

59.

Neither Defendant GLENN RUDOLFSKY or KIM RUDOLFSKY, who are the record owners of Ke Aloha, have deeded to the Plaintiffs or to the Ke Aloha LLC any of their undivided one-half interest in the Ke Aloha estate.

60.

Defendant KIM RUDOLFSKY knew that the Plaintiffs each owned a twenty-five percent (25%) share in the Ke Aloha estate from her involvement in the bookkeeping for Ke Aloha and the Quarterly Reports issued in 2012-2014.

61.

Yet on May 27, 2014, Defendant KIM RUDOLFSKY signed a check to Plaintiff ERIC

- 11 -

SAMBOLD alone in the amount of nineteen thousand seven hundred eighty-five dollars and fifteen cents ($19,785.15) with the intention of defrauding Plaintiff JAMES RUHLMANN from receiving any return on his investment in the Ke Aloha estate as a twenty-five percent (25%) equity owner.  The May 27, 2014 check and letter were further intended to deprive Plaintiffs of their equity interest in the Ke Aloha estate and the rent revenues generated thereby.

62.

Defendant KIM RUDOLFSKY signed before Notary Public Howard K. Pollack the bridge mortgage for five hundred fifty thousand dollars ($550,000) to ERIC SAMBOLD on or about February 13, 2012 as a mortgagor.

63.

Defendant KIM RUDOLFSKY knew that the five hundred fifty thousand dollar ($550,000) mortgage which she signed was to provide a security interest in Ke Aloha to the Plaintiffs on a temporary basis as the mortgage secured a Promissory Note in the amount of five hundred fifty thousand dollars ($550,000), which was due and payable on September 30, 2012.

64.

At the time when the Defendants made the foregoing representations, Defendants knew them to be false, and these representations were made by the Defendants with the intent to defraud and deceive the Plaintiffs.  At the time Defendants made the foregoing promises to the Plaintiffs, Defendants had no intention of performing them.

65.

Plaintiffs, at the time these representations were made by Defendants, and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and believed them to be true.

66.

At the time when the Plaintiffs forwarded to the Defendants the five hundred fifty thousand dollars ($550,000) to purchase the Ke Aloha estate, Plaintiffs were ignorant of Defendants' secret intention not to perform the joint venture as agreed and Plaintiffs could not in

the exercise of reasonable diligence have discovered Defendants' secret intentions.

67.

In reliance on Defendants representations that the Plaintiffs would own half of the Kauai estate purchased with their five hundred fifty thousand dollars ($550,000), Plaintiffs were induced to and did forward the funds to purchase the Ke Aloha estate and caused the Ke Aloha LLC to be formed in Nevada to hold title to the Ke Aloha estate.

68.

As a proximate result of Defendants' fraud and deceit and the facts alleged herein, Plaintiffs have been damaged in an amount exceeding five hundred fifty thousand dollars ($550,000).

69.

In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiffs are entitled to punitive damages in excess of seventy-five thousand dollars ($75,000).

**(FOURTH CLAIM FOR RELIEF - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

70.

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71.

Nevada law implies a covenant of good faith and fair dealing in all contracts bvetween parties entered into in the State of Nevada.

72.

As a result of the actions of Defendants, and each set forth above, said Defendants have violated the implied covenant of good faith and fair dealing contained in the Joint Venture Agreement as against the Plaintiffs herein, and as a result thereof, Plaintiffs are entitled to damages as prayed.

73.

The actions of the Defendants, and each of them in violation of said implied covenant of good faith and fair dealing have caused the Plaintiffs to suffer damages in an amount in excess of seventy-five thousand dollars ($75,000).

74.

In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiffs are entitled to punitive damages in excess of seventy-five thousand dollars ($75,000).

**(FIFTH CLAIM FOR RELIEF - CONVERSION)**

75.

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76.

On or about March 28, 2012, Plaintiffs were in possession of five hundred fifty thousand dollars ($550,000) which they deposited into escrow to purchase half of the Ke Aloha estate.

77.

On or about March 30, 2012, the Defendants took possession of the entire Ke Aloha estate and converted the same to their own use.

78.

As a proximate result of Defendants' conversion, Plaintiffs have been damaged in an amount in excess of five hundred fifty thousand dollars ($550,000) which are the natural, reasonable and proximate results of the Defendants' conversion.

79.

The aforementioned acts of conversion were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud and justify the awarding of punitive damages in excess of five hundred fifty thousand dollars ($550,000).

**(SIXTH CLAIM FOR RELIEF - RECEIVER AND SEQUESTRATION OF FUNDS)**

80.

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 79 as if

- 14 -

fully set forth herein.

81.

The Defendants have mingled the rental income of the Ke Aloha estate with rental income of numerous properties rented and managed by Defendant HOUSE OF DREAMS KAUAI in a bank account owned by Defendant HOUSE OF DREAMS KAUAI, INC., of which Defendant GLENN RUDOLFSKY is the controlling officer and of which account Defendant KIM RUDOLFSKY is a signator.

82.

A receiver should be appointed to manage the rental funds of Ke Aloha and prevent the Defendants from distributing profits to which the Plaintiffs are entitled to themselves.

83.

The rents from Ke Aloha should be deposited into an account controlled by a receiver or other person appointed by the court to prevent the Defendants from continued conversion of Ke Aloha funds for the sale use and benefit.

84.

A receiver or other person appointed by the Court should sell the Ke Aloha estate and deposit the sale proceeds with the Court for distribution.

WHEREFORE, Plaintiffs pray for relief and demand judgment as follows:

1. Damages in excess of five hundred fifty thousand dollars ($550,000) for Defendants' Breaches of the Joint Venture Agreement; and

2. For damages in excess of five hundred fifty thousand dollars ($550,000) for the Unjust Enrichment of Defendants at Plaintiffs' expense and restitution therefor; and

3. For compensatory damages by virtue of Defendants' Fraud including restitution and punitive damages; and

4. For damages resulting from Defendants' Breach of the Implied Covenant of Good Faith and Fair Dealing contained in the Joint Venture Agreement including punitive damages;

and

    5. For the value of the property converted in the amount of five hundred fifty thousand dollars ($550,000); and

    6. For interest at the legal rate from and after March 28, 2012; and

    7. For damages for the proximate and foreseeable loss resulting from Defendants' conversion in a sum in excess of seventy-five thousand dollars ($75,000).

    8. For punitive damages in an amount in excess of five hundred fifty thousand dollars ($550,000); and

    9. For an order appointing a receiver and the sequestration of funds in an amount in excess of five hundred fifty thousand dollars ($550,000); and

    10. For an order requiring Defendants to provide an accounting for rentals obtained by virtue of the conduct complained of herein, and for an order imposing a constructive trust upon all monies received from the Defendants stemming from the Ke Aloha estate purchased with the Plaintiffs' funds; and

    11. For an order requiring the sale of the Ke Aloha estate with the proceeds to be deposited with the Court for division between the parties; and

    12. For the reasonable and necessary expenses, costs and disbursements by Plaintiffs in connection with this action including reasonable attorneys' fees; and

    13. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

DATED this 11th day of August, 2016.

                                              /s/ *Elizabeth J. Foley*
                                           ELIZABETH J. FOLEY
                                           601 So. Rancho Drive, Suite A-1
                                           Las Vegas, Nevada  89106
                                           *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that on the 11th day of August, 2016, I caused the document entitled **FIRST AMENDED COMPLAINT AND JURY DEMAND**, to be served by electronically transmitting the document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*s/s Debbie Skillin*
An Employee of Elizabeth J. Foley

- 17 -