Valerie Del Grosso, Esq.
Nevada Bar No. 11103
Del Grosso Law, Ltd.
4974 S. Rainbow, Ste. 100
Las Vegas, NV 89118
(702) 900-1470
Fax: (702) 933-9260
Valerie@DelGrossoLaw.com
Attorney for Defendant Glenn Rudolfsky

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

MAX RUHLMAN and ERIC SAMBOLD,

      Plaintiffs,

vs.

GLENN RUDOLFSKY, individually, and DBA
HOUSE OF DREAMS KAUAI and HOUSE OF
DREAMS HAWAII; KIM D. RUDOLFSKY AKA
KIM DAPOLITO, individually, and DBA HOUSE
OF DREAMS KAUAI and HOUSE OF DREAMS
HAWAII,

      Defendants.

Case No.: 2:14-cv-00879-RFB-NJK

**EMERGENCY MOTION**
**TO ENFORCE AND EXTEND**
**PROTECTIVE ORDER, OR IN THE**
**ALTERNATIVE, TO QUASH**
**SUBPOENAS DUCES TECUM**

COMES NOW Defendants, by and through their attorney of record, Valerie Del Grosso, Esq., of Del Grosso Law, Ltd., and files these Emergency Motions to Enforce and Extend Protective Order, or in the alternative, to Quash Subpoenas Duces Tecum.

This Motion is made pursuant to Local Rules 7-4 and 26-7, the attached memorandum of points and authorities, the pleadings and papers on file herein, and any oral argument which the Court may allow at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  An appropriate basis exists for hearing these Motions on an emergency basis.**

On or about November 3, 2016, Plaintiffs issued a subpoena on Bank of America for records pertaining to House of Dreams Kauai, Inc. *Declaration of Valerie Del Grosso, Esq.,* attached hereto

as Exhibit A. House of Dreams Kauai is a New York corporation not party to this case.[1] The entity is the property manager for the rental property known as Ke Aloha, and manages or refers business to more than 100 homes which are not related to this case.

Defendants did not learn of this subpoena until November 4, 2016, when they received a letter from Bank of America. *Id.* Although later received by mail, the address used to notify defense counsel was incorrect. *Id.* Plaintiffs' counsel has since been notified and has updated their records.

That same day, November 4th, Defense Counsel called and left a message for Plaintiffs' Counsel, which was not returned until Monday, November 7th. *Id.* On that call, counsel met and conferred concerning the Bank of America subpoena, and in particular, the fact that some of the information contained in the bank records was expressly limited by a protective order dated July 29, 2016, issued by Judge Boulware. *Id.* That information includes client names and financial information for Ke Aloha and other properties. *Id.*

On that call, Defense Counsel was also notified that a similar subpoena would be sent imminently to Astoria Bank as well. *Id.* The parties did not reach agreement on that call (although Plaintiffs' counsel did propose a solution, that counsel review the documents together but withhold them from Plaintiffs), but defense counsel promised to follow up on the discovery issues and other matters discussed. *Id.*

Defense counsel sent a letter on Tuesday November 8, 2016, in follow up. *Id.* The letter requested notification from Plaintiffs' counsel whether the proposal offered by Defendants in the letter would be agreeable[2] by November 9th, so that Defendants could file a motion if necessary. *Id.* The timing was important because Bank of America intends to produce documents by November

---

[1] A Motion to Strike the purported Amended Complaint which names House of Dreams Kauai is on file herein as Docket 100, and is based on the fact that Plaintiffs did not have authority to amend. To date, the matter has not been set for hearing.

[2] Noting the fact that counsel for neither party would be able to discern which transactions related to Ke Aloha in particular, an "attorneys eyes only" plan did not make sense under the circumstances. Defendants asked that Plaintiffs not open anything received from the bank, or withdraw the subpoena entirely, until Defendants could provide the exact same statements, only redacted of the transactions unrelated to Ke Aloha and to obscure client names.

**EMERGENCY MOTION TO ENFORCE AND EXTEND PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO QUASH SUBPOENAS DUCES TECUM**

21st. *Id*; *Flagstar Bank, FSB v. Freestar Bank*, 2009 WL 2706965 (N.D. Ill. Aug. 25, 2009) ("a motion to quash must be made at or before the time of compliance).

On November 9th, Plaintiffs' Counsel's assistant notified Defense Counsel that Ms. Foley had experienced a death in her family, and requested an extension to respond, which of course, was given. *Id*.

On November 10th, Defendants also learned that the subpoena on Astoria Bank had also issued for the same records. *Id*.

On November 10th, Defense Counsel spoke to Ms. Foley's assistant and learned that services were to be held on November 11th and 12th, and by email, notified her that Defendants would wait until Monday the 14th to take further action. *Id*.

Out of respect for Ms. Foley's family emergency, Defendants did not file these Motions on the original date they had proposed to Plaintiffs' counsel (November 9th). *Id*. Instead, they have waited as long as possible in an effort to meet and confer prior to filing, while leaving the Court time to decide the issue. *Id*. As of the date of this filing, only 5 court days remain before Bank of America has stated it will provide the records, and for that reason, Defendants could wait no longer to address this issue. *Id*.

Today, November 14th, counsel conferred one more time regarding the subpoena and a variety of other issues. *Id*. In particular, counsel discussed the fact that tomorrow defendants will deliver redacted bank statements for 2014 from defendants, which comply with the existing protective order and which redact unrelated, irrelevant information. *Id*. That is, the bank statements are specific to Ke Aloha only. *Id*.

Discussion was also had concerning the fac that only five court days remain prior to Bank of America serving responses, and for this reason, Defendants must secure a date for the court to hear this matter, and have waited to do so until the latest possible time under the circumstances to accommodate Ms. Foley's family emergency. *Id*.

Ms. Foley expressed concern that the redacted statements will not provide what she needs, and on that basis would not withdraw the subpoenas. *Id*.

Defense Counsel is aware of the Court's strong caution to meet and confer prior to filing discovery motions and has made as many attempts as possible under the circumstances to resolve this matter without court involvement; counsel will continue to do so this week once the redacted bank statements are served and will notify the Court if the issue has been resolved. *Id.*

In the meantime, Defendants have been producing documents identified in Defendants' October 14, 2016, meet and confer letter to Plaintiffs. That letter provides that Mr. Rudolfsky will be providing, among many other types of documents, the bank statements Plaintiffs seek by subpoena. This is taking time, both because of the huge task it is and also because Defendants trip to Las Vegas for Mrs. Rudolfsky's deposition took time away from the task and the cooling off period agreed by the parties was in effect.

That is, Plaintiffs will receive from Defendants the exact information they are seeking, except "scrubbed" for information protected by court order and which does not pertain to the home at issue. This makes sense in light of the fact that Plaintiffs are would-be competitors on the island of Kauai by virtue of their ownership of the Anahola home (a point they now deny), as the following discusses.

By way of these Motions, Defendants seek to have the Court enforce its existing July 29, 2016, protective Order and extend it to transactions which do not pertain to Ke Aloha (the vast majority of the contents of the bank statements), and in the alternative, to quash the subpoena.

## II. Introduction

The context of the requests is critical to understanding their import. The Hawaiian island of Kauai is a small and humble community that welcomes about 200,000 tourists annually.[3] It is home to Ke Aloha, the property at issue in this case.

Behind the scenes, the local residents make vacation rental businesses which cater to Kauai tourists possible; for this reason, Mr. Rudolfsky has painstakingly built relationships and the House of Dreams brand over the last ten years by showing respect and loyalty to the community. This is consistent with his overall expertise and experience in preparing and managing luxury vacation

---

[3]    *See Hawaii Tourism Authority reports, accessed July 8, 2016,* available here.

rentals in other locations in Kauai, a business model that entails much more than simply finding a house and listing it for rent. Mr. Rudolfsky's entire brand equity is invested in Kauai and it is his livelihood.

This experiential factor on Mr. Rudolfsky's part is what attracted Plaintiffs to Defendants in the first place.[4] When the parties came together in 2011, long before they realized they could not agree upon the terms of their future business relationship, Ke Aloha was just a house. It needed the benefit of Defendant's long-standing personal and business relationships in the Kauai community to transform it into a luxury vacation rental.[5]

Defendants could have accomplished this on their own- and in fact, did. Mr. Rudolfsky told Plaintiffs he would purchase the home himself; he did not need Plaintiffs' money[6] to purchase Ke Aloha or turn it into a vacation rental. Likewise, Plaintiffs had no vacation rental experience to speak of.[7] Instead, Mr. Rudolfsky considered their participation because it seemed Plaintiffs had access to outside financing, which would allow Glenn Rudolfsky to leverage his cash into more than one home.[8] Plaintiffs never provided this financing[9], and thus, the only purpose of the alleged business

---

[4]      "You wanted to invest in my brand and said to me that other agencies were black and white, while I was color." *Email from Glenn Rudolfsky to Plaintiffs dated March 12, 2013,* attached hereto as Exhibit "B."

[5]      *Email from Glenn Rudolfsky to Plaintiffs dated March 12, 2013,* attached hereto as Exhibit "B" ("When I asked to not have Kaleo's competitor do the coconut removal, it may have seemed petty to you both, but in the big picture, **showing loyalty to our local vendors is the backbone of this business**;" "**Our relationship is one of trust** proven by the amazing job and pricing he has given us at Ke Aloha. The people I work with... care more about respect and a handshake than financial gain, and **in the long run, those friendships are the cornerstone of our success.**"; "I am also the only company off island that every rental agency in Kauai is happy to work with; both by booking our homes and allowing me to represent all of theirs as well."; "[Discussing decision to configure the bathrooms] when Melody heard we are having 6, she declined the job. She is paramount to our success.").

[6]      "I took $568,000 of my savings along with $10,000 in additional expenses setting up the home that I personally paid to insure its success."  *Email from Glenn Rudolfsky to Plaintiffs dated March 12, 2013,* attached hereto as Exhibit "B."

[7]      "I... value your input and generally follow your advice knowing that your ideas will generally help maximize rental revenue." *Email from Eric Sambold to Glenn Rudolfsky dated March 15, 2015*, attached hereto as Exhibit "C."

[8]      "Let me explain. When we originally spoke the plan was to pay cash to streamline the purchase of Ke Aloha, since banks are more inclined to accept a cash offer. Eric expressed that he can borrow at competitive rates and we would finance 80% of each purchase including Ke Aloha. We would do this after we closed... To date we have not done this financing at all." *Email from Glenn Rudolfsky to Plaintiffs dated March 12, 2013,* attached hereto as Exhibit "B."

[9]      *Id.*

**EMERGENCY MOTION** TO ENFORCE AND EXTEND PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO QUASH SUBPOENAS DUCES TECUM

venture was never achieved. In fact, Plaintiffs have gone their own direction on the other homes the parties had considered together.[10]

For example, another home considered by the parties was the Anahola beachfront property. But today, Plaintiffs own it alone and have failed so far to bring it to fruition.[11] Plaintiff Eric Sambold made clear his lack of experience in this market when he expressed frustration at the quality of work on the island, something Rudolfsky does not suffer because of his relationships and experience.[12]

Now, through the subpoenas, Plaintiffs will see the most private inner workings of Mr. Rudolfsky's business, single handedly built on his personal relationships on the island. This is true despite the fact that the request is made in the context of a hotly contested threshold issue in this litigation: whether the parties ever reached a business agreement in the first place that would entitle Plaintiffs to profits, and in turn, the information sought by the bank subpoenas.[13]

Thus, the potential for abuse is a real risk under the circumstances, particularly because there is damning evidence that no agreement was ever reached, like this statement of Eric Sambold just prior to litigation:

---

[10]   For example, "We purchased the [Anahola beach front house] early this year with Eric and I providing all funds to date." *Email from Max Ruhlmann to Eric Sambold and Glenn Rudolfsky dated March 5, 2013,* attached hereto as Exhibit "D."

[11]   *Id.*; *see also March 15, 2013 Email from Eric Sambold to Glenn Rudolfsky,* attached hereto as Exhibit "C" ("Every local contractor I have contacted has been an unbelievable disappointment… I just don't have anyone else there."). Plaintiffs' counsel stated on the record at the July 29, 2016 hearing that Plaintiffs intended to have the property available for rent in the next six months; now they claim they intend to sell it. *Transcript,* on file herein, at 36:20-22 with relevant portions attached hereto as Exhibit "E."

[12]   "I certainly like the idea of a turnkey property… Would be a nice change from Anahola." *Email from Eric Sambold to Glenn Rudolfsky dated March 19, 2013*, attached hereto as Exhibit "F"; *see also March 15, 2013 Email from Eric Sambold to Glen Rudolfsky,* attached hereto as Exhibit "C" ("I have come to believe that going with a huge corporation like Home Depot is my only solution to getting things done without being taken advantage of. **Every local company/contractor I have contacted has been an unbelievable disappointment… I just don't have anyone else there.**").

[13]   Defendants have not had the opportunity to file an Answer and Counterclaim in this matter because their Motion to Strike and Motion to Dismiss are currently pending as Dockets 100 and 101. Thus, Defendants include information here to convey the degree of disagreement between the parties as to whether they ever reached an agreement to do business together. Defendants contend that it was nothing more than an unenforceable agreement to agree and that the only obligation between the parties is a written mortgage.

Keep in mind that in Vegas we were discussing things as adults do from time to time **without making promises** but simply with the intent of discussing options and ideas to see if we could come up with mutually beneficial ideas. This process can be described as "**Spitballing" or "Brainstorming**". We never determined for certain how the financing would take place, whether or not any of us would qualify, and how much a bank would be willing to lend, nor what the property appraises for. <u>**We certainly never agreed on any terms and conditions nor made any promises**</u>.

Exhibit "F" (emphasis added).

Moreover, Plaintiffs' access to the innermost workings of a successful vacation rental business on Kauai would be especially damaging in light of three key facts that indicated to the Rudolfsky's once and for all that Plaintiffs were not the type of individuals they should do business with under any circumstances. One example is Plaintiffs' creation of an LLC in the name of Glenn Rudolfsky without his permission or knowledge.[14]

Another is Mr. Sambold's request that Mr. Rudolfsky "step out of security to meet someone at LAX" who would deliver thousands of dollars in what Mr. Sambold called "cashola" so that Mr. Rudolfsky could carry the cash and hand deliver it to a contractor in Kauai, which of course, Mr. Rudolfsky declined to do.[15] This alone demonstrates the parties' divergent purposes for Ke Aloha and their inability to reach a meeting of the minds- on Mr. Rudolfsky's part, to underscore his hard work and brand, and on Plaintiffs' part, as a way to move cash.[16]

---

[14]     Without the Rudolfsky's knowledge or agreement, Plaintiffs caused Attorney John Brebbia (a lawyer unknown to Defendants at that time *and who is counsel in this case*) to form a limited liability company with the State of Nevada on behalf of Defendants and in their name in September, 2012. *Email from Glenn Rudolfsky to Plaintiffs dated October 16, 2013*, attached hereto Exhibit "G" ([after receiving a renewal notice for the LLC from the State of Nevada] I have never seen the final draft or signed any paperwork and would like this LLC dissolved… I have never even seen the LLC agreement and am concerned at what it says."). Mr. Brebbia's participation in this case against Defendants long shadow is cast over the Plaintiffs' reliance on this business entity as proof of the parties' agreement.

[15]     *Email chain between Eric Sambold and Glenn Rudolfsky dated February 15, 2013*, attached hereto as Exhibit "H;" *See also Invoice for $42,765*, attached hereto as Exhibit "I."

[16]     *Id.*; *see also Email from Eric Sambold to Glenn Rudolfsky dated July 24, 2013*, attached hereto as Exhibit "J" ("As far as rent, please send all of it to my Las Vegas Banker aka Max."); *see also Email from Eric Sambold to Glenn Rudolfsky dated April 10, 2013*, attached hereto as Exhibit "K" ("Can you include whatever distribution amount for HOD [House of Dreams] you are intending to send me in Max's checks. In other words, double his check, nothing for me."); *See also Email from Glenn Rudolfsky to Max Ruhlmann and Eric Sambold, dated October 21, 2013*, attached hereto as Exhibit "L" ("Max, I have checks ready to go out this week. My memory fails me, so please advise me as to addresses and how you want these made out. Please be specific and if you want a check written to someone else, express that clearly in your email… I have been advised by my accountant that all checks must now be made to Eric Sambold or technically I could end up in default [of the mortgage].").

---

<u>EMERGENCY MOTION</u> TO ENFORCE AND EXTEND PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO QUASH SUBPOENAS DUCES TECUM

Third, Plaintiffs have already proven that they will do anything to jeopardize Defendants' livelihood and reputation in Kauai by spreading false statements to important partners of House of Dreams Kauai and Glenn Rudolfsky,[17] making it all the more critical that this Court consider the requests made herein to protect as much irrelevant and/or sensitive information as possible from disclosure.

The subpoenas not only circumvent the existing protective order, but in covering significant amounts of irrelevant information which pertains to homes that are not at issue in this case and client financial information, they also risk running afoul of consumer protection laws (and raise the question of whether Defendants must notify each individual guest that his or her payment information and name has been provided in this case) and gives Plaintiffs, people who wanted Mr. Rudolfsky's expertise and connections on Kauai in the first place, access to his entire business model- even if they end up losing the case. In short, they still win.

Finally, it cannot be stressed enough that Plaintiffs are already going to receive the bank statements, as promised in writing by Defendants. They are working diligently on this huge task and producing documents on a rolling basis.

In sum, Glenn Rudolfsky's entire business hangs in the balance- not just the asset at issue in this case- if the information sought by subpoena is put into the hands of Plaintiffs. The easy way to avoid these significant risks to Defendants, while still getting Plaintiffs the information they need, is to require them to wait for the redacted bank statements from Defendants.

///

---

[17]    *Email from Glenn Rudolfsky to Ginny at Blue Sky Kauai Vacation Rentals dated October 15, 2015,* attached hereto as Exhibit "M" ("I truly appreciate the phone call. You could only imagine how disheartening it is for Kim and I to be in this very unfortunate position. Just think about how you would feel if someone called a competitor of yours and alleged you are losing your management of Makua Kai and Makana Akua when it is totally unfounded. It's even more disturbing as Ke Aloha is OUR home. Can you tell me if Max Ruhlmann stated this to be a fact or did he say it is a future possibility? If there is anything else he said, Kim and I would appreciate you letting us know. This has been an extremely difficult and poisonous ordeal for our family. We hope our 7 year working relationship with you has been meaningful and you understand how improper that was. Much of our rentals come from outside agencies such as [redacted proprietary information]. This libelous talk could present doubt to agencies considering recommending our home and that would be just so unfair.").

EMERGENCY MOTION TO ENFORCE AND EXTEND PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO QUASH SUBPOENAS DUCES TECUM

**A.      The subpoenas violate the existing July 29, 2016, protective order and seek information which Defendants are already providing.**

Judge Boulware granted, in part, Defendants' original Motion for Protective Order with respect to written discovery requests Plaintiffs served. Those requests sought discovery of third parties' confidential information, such as names of guests (Interrogatory 6), names of potential guests who inquired about a rental (Interrogatory 8); and financial information for these guests which appears on payment information (Requests for Production 2, 11, and 12).[18]

Defendants moved for a protective order, and it was granted, in part. In that Order (which is memorialized in the hearing transcript), the Judge stated:

> If you want to protect the lists [of customers and vendors], **you don't have to give them the names**, but you have to give them dates, times, how much was paid, when people stayed in the property, what other people serviced that property. So if you had to pay vendors, all of that type of information would have to be provided, right, because no one's name is listed, right? … **You would have to list the category**, right? Landscaping, right. Cleaning, right. I don't know. Whatever the category would be, right, you know, renter. You could just put that as a placeholder and then you could simply provide the information[.]

*July 29, 2016 Hearing Transcript*, on file herein as Docket 90 (emphasis added) ("The motion is denied except with respect to the customer names. Defendants have the option of either providing **source documents with the customer names redacted** or providing a summary report of the information. If Defendants provide a summary, they shall be prepared to provide the underlying documents for verification purposes…IT IS FURTHER ORDERED that the transcript of the hearing shall serve as the written Opinion and Order of the Court.").

In response to the Order, Defendants opted to produce client summaries showing the month of a guest's stay, the deposit, and the number of nights stayed, along with an identifier for the guest's name. They likewise provided expense summaries by category.

Thereafter, the parties met and conferred with respect to these summaries, and Defendants stated that they would provide, among many other things, "receipts and/or **bank statements** for each [guest] (with financial information redacted) to substantiate the information already provided." *Response to Meet and Confer*, attached hereto as Exhibit "O."

---

[18] The Requests are attached hereto as Exhibit "N."

Defendants have already fulfilled part of this, by providing tax returns, invoices, and redacted credit card statements. As of November 15, 2016, Plaintiffs will also receive redacted bank statements and receipts for the year 2014. Defendants are producing the documents on a rolling basis as they are complete. This is a huge task, which underscores the point that the majority of the information on the bank statements does not pertain to the home at issue and would serve no purpose to Plaintiffs in proving their case, but would expose Glenn Rudolfsky's entire business model.

**That is, the information sought by the subpoena is already being provided by Defendants, *except that* the subpoena runs afoul of the Court's existing limitation on discovery of client information, while the documents Defendants produce do not.**

It is well-settled that federal courts have jurisdiction to enforce their own prior orders. *Travelers Indem. Co. v. Bailey*, 557 US 137, 151 (2009); *see also US Lines, Inc. v. GAC Marine Fuels*, 68 BR 690, 695 (Bankr. SDNY 1986)("[courts] have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order"). Defendants ask that the Court enforce its existing protective Order to protect this client name and financial information from Plaintiffs by ordering them to withdraw the subpoenas.

**B.     The vast majority of information sought by the subpoenas does not pertain to this action and the protective order should be extended to avoid discovery of irrelevant, but private, information.**

House of Dreams Kauai is a property manager and broker for more than 100 other homes which have nothing to do, and have never had anything to do, with the parties in this case or the Ke Aloha residence. Its bank records provide a roadmap to running a vacation rental business on the island of Kauai, because they naturally include the names of owners of properties which use a property manager, the name of vacation rental agencies with which Defendants have relationships, and even vendor relationships that make the rental business possible.

The limits of discovery under the Federal Rules are broadly defined by relevance. Fed. R. Civ. P. 26(b). There is no cognizable reason why information on a bank statement or check print out that does not pertain to the home Ke Aloha would be relevant in this action. For that reason,

Defendants ask the Court to extend its existing protective order to include all irrelevant information on the bank statements, particularly when Defendants are already providing the *relevant* information on the redacted bank statements.

The Court has "substantial latitude" to issue such protective orders. *Phillips ex rel. Estates of Byrd v. GM Corp.*, 307 F. 3d 1206, 1212 (9th Cir. 2002); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984) (acknowledging the "extensive intrusion into the affairs of both litigants and third parties" which can often result under Rule 26(b)).

The Courts weigh their experience "that pretrial discovery by depositions and interrogatories has a significant potential for abuse" (including delay, expense, and intrusion into private matters) against the need to prepare for trial. *Id.* Specifically, Courts use a good cause analysis to balance the burden of production and privacy interests of the producing party against the opposing party's right to obtain information. *Id.*

Good cause may be shown by examining non-mandatory, non-exhaustive factors such as the requesting party's need for information from this particular source; its relevance to the litigation; the burden of producing the sought after material; and the harm which disclosure would cause to the party seeking protection. *Burka v. United States Dep't of HHS*, 87 F.3d 508, 517 (D.C. Cir. 1996); *see also Phillips*, 307 F.3d at 1210-11 (protecting litigants from discovery which imposes specific prejudice or harm).

In this instance, much of the information in the bank subpoenas is not relevant to this case. This case involves only one home, Ke Aloha, and the revenue earned from the guests who stay there and the costs associated with running it, including the providers of those services. However, the bank information contains that same information for a multitude of other homes and exposes a variety of other relationships Mr. Rudolfsky has on the island.

This is information that- even if Plaintiffs could prove that they were ever his partners- they would not have been exposed to or entitled to see. There is no reason why, by virtue of this case, that they should receive the entirety of transactions for Mr. Rudolfsky's business for a four year period, even though most of it does not pertain to the home at issue. This is especially true as Plaintiffs noted

1    at the July 29, 2016, hearing that they fully expect to have the Anahola beach home on Kauai

2    available for rental within six months, and for the reasons which call Plaintiffs motives into question

3    (e.g., spreading rumors about Mr. Rudolfsky to his important partners on the island). *See Exhibits*

4    *"E" and "M."*

5          Mr. Rudolfsky has a substantial privacy right to the information unrelated to Ke Aloha on the

6    basis of his personal efforts in building those vendor and client relationships. This is in addition to

7    the Court's concerns regarding private client names and financial information already addressed

8    above. This privacy right outweighs Plaintiffs' need for that information (i.e., there is no need

9    because it does not relate to their claims whatsoever).

10         Furthermore, limiting Plaintiffs' access to these "raw" bank statements does not prejudice

11   them at all, in that *they are receiving the exact bank statements already,* simply redacted to show

12   only information specific to Ke Aloha and which obscures client names. There is no reason that

13   Plaintiffs need the un-redacted statements.

14         Therefore, the current subpoena far exceeds even the liberal discovery rules and should be

15   limited by extending the existing protective order.

16   **C.    The Rudolfskys have a protectable privacy interest in the information sought by**

17   **the subpoenas against House of Dreams Kauai, Inc.**

18         Finally, to the extent Defendants have an interest in the Bank of America and Astoria Bank

19   documents, they move to quash the subpoenas as improper for all of the reasons discussed above.

20   The court has discretion whether to quash or modify a subpoena. *Wedgewood Vill. Pharmacy v.*

21   *United States*, 421 F.2d 263, 268 n.5 (3d Cir. 2005). A party other than the one to whom the

22   subpoena is directed nevertheless has standing to quash it if he or she claims a privilege or privacy

23   interest in the subpoenaed information. *See Thomas v. Marina Associates,* 202 FRD 433, 434-435

24   (ED Pa. 2001).

25         Mr. Rudolfsky, as the sole owner of House of Dreams Kauai, asserts a personal privilege and

26   privacy right in the information contained in the bank records for the company. The transactions

27   identify the vendors and clients with whom he has established relationships personally; given the

28   <u>EMERGENCY MOTION</u> TO ENFORCE AND EXTEND PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO
     QUASH SUBPOENAS DUCES TECUM

very small community in which the business operates, and the fact that Plaintiffs are taking steps to compete in that community, the information is privileged and private. This interest is sufficient to provide him standing to move to quash. *See Wells Fargo Bank, N.A. v. Iny,* 2014 U.S. Dist. LEXIS 62381 (D. Nev. May 6, 2014); *Schmulovich v. 1161 Rt. 9 LLC,* 2008 WL 4572537 at *4 (D.N.J. October 14, 2008). On that basis, he requests an Order of the Court quashing these subpoenas and directing Bank of America and Astoria Bank not to respond.

**III. Conclusion**

Based on the foregoing, Defendants respectfully request an Order on an emergency basis enforcing the existing protective order and extending it to irrelevant information from transactions which do not pertain to Ke Aloha estate, or in the alternative, quashing the subpoenas in their entirety.

DATED this 14th day of November, 2016.

VALERIE DEL GROSSO, ESQ.
Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies under penalty of perjury that the foregoing Emergency Motion to Enforce and Extend Protective Order, or in the alternative, to Quash Subpoenas Duces Tecum, was served on November 14, 2016, via CM/ECF system.